**YOUNG & NEWSOM, P.C.**
Jeremi K. Young 24013793
1001 S. Harrison, Suite 200
Amarillo, Texas 79101
Telephone: (806) 331-1800
Facsimile: (806) 398-9095
Email: jyoung@youngfirm.com

Jeff Carruth (TX SBN: 24001846)
**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**
3030 Matlock Rd. Suite 201
Arlington, Texas 76105
Telephone: (713) 341-1158
Fax: (866) 666-5322
E-mail: jcarruth@wkpz.com

**ATTORNEYS FOR GALMOR FAMILY LIMITED PARTNERSHIP
DEFENDANT**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| MICHAEL STEPHEN GALMOR, | § | CASE NO. 18-20209 |
| | § | |
| DEBTOR. | § | |
| | § | |
| AND | § | |
| | § | |
| GALMOR'S / G&G STEAM SERVICE, INC., | § | CASE NO. 18-20210 |
| | § | |
| DEBTOR | § | |
| | § | |
| KENT RIES, TRUSTEE | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | ADVERSARY NO. 19-02006 |
| | § | |
| MICHAEL STEPHEN GALMOR, RANDY MARK GALMOR, LESLIE DONNETTE GALMOR PRITCHARD, TRACI MARIE GALMOR COLEMAN, GALMOR FAMILY LIMITED PARTNERSHIP and GREAT PLAINS BANK | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| Defendants. | § | |

## ANSWER OF GALMOR FAMILY LIMITED PARTNERSHIP TO PLAINTIFF'S ORIGINAL COMPLAINT (RE: DOCKET NO. 1)

TO THE HONORABLE ROBERT L. JONES, U.S. BANKRUPTCY JUDGE:

Galmor Family Limited Partnership, Defendant herein ("Defendant"), files this answer to the *Original Complaint* (Docket No. 1) (the "Complaint") filed herein by Kent Ries, Chapter 7 Trustee ("Ries" or the "Trustee"), and in support of such answer would show to the Court the following.

1.      Defendant is without sufficient information to admit or deny the allegations in Paragraph No. 1 of the Complaint and thus denies such Paragraph.

2.      Defendant is without sufficient information to admit or deny the allegations in Paragraph No. 2 of the Complaint and thus denies such Paragraph.

3.      Defendant admits Paragraph No. 3 of the Complaint.

4.      Defendant admits Paragraph No. 4 of the Complaint.

5.      Paragraph No. 5 of the Complaint is merely a definition to which no response is necessary.

6.      Defendant denies Paragraph No. 6 of the Complaint.  Leslie Pritchard now is the general manager of the general partner of the FLP (defined herein as "GFLP" to maintain consistency with prior pleadings), and thus Leslie Pritchard speaks for GFLP.

7.      Defendant admits Paragraph No. 7 of the Complaint.  Defendant would note also that Galmor SPE 2019-1 LLC is the successor in interest to the Bank.

8.      Defendant denies Paragraph No. 8 of the Complaint.

9.      Defendant admits in part and denies in part Paragraph No. 9 of the Complaint. Defendant admits the procedural history to date; the remainder of such Paragraph is denied.

10.      Defendant admits in part and denies in part Paragraph No. 10 of the Complaint.

     a.   Defendant admits that GFLP owns substantial real estate and other assets.

     b.   Defendant denies that GFLP presently owes any money to the Bank.

c. Defendant denies that the GFLP owes any amounts to the either estate. As will be demonstrated in this action, the GFLP was grossly mismanaged by the underlying Debtor, Michael Stephen Galmor ("MSG"), and the supposed $2.4 MM payable is a fictitious, poison pill entry made by MSG to attempt to set off the claims of his siblings and the decedents' estates their parents, and which fictitious claim the Trustee has elected to pursue instead of conducting investigation and pursuit of other claims of the MSG and G&G estates. *See* **Exhibit 001**, Adv. No. 18-0210 Complaint.

d. Defendant admits that a settlement exists. *See* **Exhibit 002**, settlement agreement with addendum.

11. Defendant admits in part and denies in part Paragraph No. 11 of the Complaint.

a. A sale that was to occur in August 2019 failed to occur due to the refusal of MSG as the former manager of the GFLP general partner to execute the instruments necessary to close the sale, and following the failure and refusal of the Ries to take any position in any of the litigation to dislodge MSG as the manager of the general partner of the GFLP as sought by Defendant and in spite of the comprehensive breaches of fiduciary duty by MSG in these cases and with respect to the Galmor family assets, including MSG post-petition and post-conversion decreasing the assets of GFLP and encumbering the assets of GFLP in favor of third parties.

b. Galmor SPE purchased the Great Plains note and stopped the foreclosure sale.

12. Defendant admits in part and denies in part Paragraph No. 12 of the Complaint.

a. Defendant admits that the schedules filed by MSG contain the entry asserting a debt owed by GFLP.

b. Defendant denies the validity of the entry as described above and in Exhibit 001, and Defendant would show that GFLP and/or the Defendant possesses setoffs against the amount(s) claimed in the entry.

13. Defendant admits in part and denies in part Paragraph No. 13 of the Complaint.

a. Defendant admits that the schedules filed by MSG contain the entry asserting a debt owed by GFLP.

b. Defendant denies the validity of the entry as described above and in Exhibit 001, and Defendant would show that GFLP and/or the Defendant possesses setoffs against the amount(s) claimed in the entry.

14. Defendant denies Paragraph No. 14 of the Complaint.

15.     Defendant denies Paragraph No. 15 of the Complaint.  The debts scheduled by MSG in both sets of schedules are a fabrication.  The Trustee might be in a position to bind the estate of MSG and/or G&G by the schedules, but the Trustee is not in a position to bind third parties and their stakeholders with the schedules.

16.     Defendant denies Paragraph No. 16 of the Complaint.  Although Count 2 is moot because of the settlement reached among the family members, Exhibit 002, the request for relief in Count 2 by a bankruptcy trustee is astonishing taking into consideration the substantial questions raised in all of the other pending litigation, including the 18-02010 Complaint, Exhibit 001, and the fact that, prior to the filing of the instant Complaint by the Trustee the Trustee was informed that MSG had used GFLP resources to pay for post-petition, post-conversion attorneys' fees and expenses.  *See* **Exhibit 003**, Deed of Trust in favor of attorneys for MSG.

17.     Defendant denies Paragraph No. 17 of the Complaint.  Although the Trustee could have but failed and refused to weigh in to the litigation to remove MSG as the manager of the general partner of GFLP, no basis exists in fact or law to permit the Trustee at this point to assert control over GFLP as sought in the instant Complaint.

18.     Defendant denies Paragraph No. 18 of the Complaint.  The prior circumstances that potentially justify injunctive relief have changed substantially since the filing of the instant Complaint.

19.     Defendant denies Paragraph No. 19 of the Complaint.  The prior circumstances that potentially justify injunctive relief have changed substantially since the filing of the instant Complaint.

20.     Defendant denies Paragraph No. 20 of the Complaint.  The prior circumstances that potentially justify injunctive relief have changed substantially since the filing of the instant Complaint.

## AFFIRMATIVE DEFENSES

21.     By way of affirmative defense, Defendant would show that the Trustee is entitled to no recovery based upon at lease the following:  accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations; and waiver, forgery, and any other matter constituting an avoidance or affirmative defense.

## RESERVATION OF RIGHTS

22.     Defendant reserves the right to amend and supplement this answer, and to request a trial by jury and/or withdrawal of the reference.

## CONCLUSION AND PRAYER

WHEREFORE, Defendant respectfully requests that the Court deny the relief requested in the Complaint. Defendant respectfully requests such other and further relief to which Defendant is entitled at law or in equity.

*{continued on following page}*

Dated: November 18, 2019

Respectfully submitted:

YOUNG & NEWSOM, P.C.
Jeremi K. Young
State Bar No. 24013793
1001 S. Harrison, Suite 200
Amarillo, Texas 79101
Telephone: (806) 331-1800
Facsimile: (806) 398-9095
Email: jyoung@youngfirm.com


By: /s/ Jeremi K. Young*
Jeremi K. Young

- and -

WEYCER, KAPLAN, PULASKI & ZUBER, P.C.

By: /s/ Jeff Carruth
    JEFF CARRUTH (TX SBN:. 24001846)
    3030 Matlock Rd., Suite 201
    Arlington, Texas 76105
    Telephone: (713) 341-1158
    Fax: (866) 666-5322
    E-mail: jcarruth@wkpz.com

**ATTORNEYS FOR GALMOR FAMILY
LIMITED PARTNERSHIP
DEFENDANT**

*\* Signature by permission by /s/ Jeff Carruth*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of the foregoing was served upon all registered ECF users in this case on November 18, 2019.


_____
/s/ Jeff Carruth
One of Counsel

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSAR~~~~~~~~~~~~~~~~ |
|---|---|
| | (Court Use Only) **EXHIBIT 001** |

**PLAINTIFF**
Leslie Pritchard, individually and/or derivatively on behalf of Estate of Shirley Jo Galmor, Galmor Family Limited Partnership, Galmor Management LLC, Bobby Don and Shirley Jo Galmor Living Trust, Galmor Family Trust, and Galmor Contribution Trust

**DEFENDANTS**
Stephen Michael Galmor and Galmor's/G&G Steam Service, Inc.

**ATTORNEYS** (Firm Name, Address, and Telephone No.)

| | | |
|---|---|---|
| YOUNG & NEWSOM, P.C.<br>Jeremi K. Young 24013793<br>Collin J. Wynne 24068815<br>1001 S. Harrison, Suite 200<br>Amarillo, Texas 79101<br>(806) 331-1800 / Fax (806) 398-9095<br>jyoung@youngfirm.com/<br>collin@youngfirm.com | Jeff Carruth 24001846<br>WEYCER, KAPLAN, PULASKI & ZUBER, P.C.<br>3030 Matlock Rd., Suite 201<br>Arlington, TX 76015<br>713-341-1158 Fax: (866) 666-5322<br>jcarruth@wkpz.com | |

**ATTORNEYS** (If Known)

| | |
|---|---|
| Max Ralph Tarbox<br>Tarbox Law, P.C.<br>2301 Broadway<br>Lubbock, TX 79401<br>(806)686-4448<br>jessica@tarboxlaw.com | MCWHORTER COBB & JOHNSON, LLP<br>Todd J. Johnston<br>1722 Broadway<br>Lubbock, Texas 79401<br>806/762-0214; 806/762-8014 (FAX)<br>tjohnston@mcjllp.com |

**PARTY** (Check One Box Only)
- [ ] Debtor
- [ ] U.S. Trustee/Bankruptcy Admin
- [x] Creditor
- [ ] Other
- [ ] Trustee

**PARTY** (Check One Box Only)
- [x] Debtor
- [ ] U.S. Trustee/Bankruptcy Admin
- [ ] Creditor
- [ ] Other
- [ ] Trustee

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUES INVOLVED)
Fraud, objection to homestead exemption, nondischargeability, denial of discharge

**NATURE OF SUIT**

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) - Recovery of Money/Property**
[ ] 11-Recovery of money/property - §542 turnover of property
[ ] 12-Recovery of money/property - §547 preference
[x] 13-Recovery of money/property -§548 fraudulent transfer
[x] 14-Recovery of money/property - other

**FRBP 7001(2) - Validity, Priority or Extent of Lien**
[x] 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) - Approval of Sale of Property**
[ ] 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) - Objection/Revocation of Discharge**
[ ] 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) - Revocation of Confirmation**
[ ] 51-Revocation of confirmation

**FRBP 7001(6) - Dischargeability**
[ ] 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
[ ] 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
[x] 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) - Dischargeability (continued)**
[ ] 61-Dischargeability - §523(a)(5), domestic support
[ ] 68-Dischargeability - §523(a)(6), willful and malicious injury
[ ] 63-Dischargeability - §523(a)(8), student loan
[ ] 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
[ ] 65-Dischargeability - other

**FRBP 7001(7) - Injunctive Relief**
[ ] 71-Injunctive relief - imposition of stay
[ ] 72-Injunctive relief - other

**FRBP 7001(8) Subordination of Claim or Interest**
[ ] 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
[x] 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
[ ] 01-Determination of removed claim or cause

**Other**
[ ] SS-SIPA Case - 15 U.S.C. §§78aaa et.seq.
[ ] 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

- [ ] Check if this case involves a substantive issue of state law
- [ ] Check if this is asserted to be a class action under FRCP 23
- [ ] Check if a jury trial is demanded in complaint
- Demand **$1,000,000 (estimated / not less than)**

Other Relief Sought: Constructive trust.

1489002.DOCX

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Stephen Michael Galmor and<br>Galmor's/G&G Steam Service, Inc. | | BANKRUPTCY CASE NO.<br>**18-20209, 18-20210** |
| DISTRICT IN WHICH CASE IS PENDING<br>**Northern District of Texas** | DIVISION OFFICE<br>**Fort Worth** | NAME OF JUDGE<br>**Robert L. Jones** |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br>**/s/ Jeff Carruth**<br><br>**Jeff Carruth 24001846** | | |
| DATE<br>**September 4, 2018** | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>**Jeff Carruth 24001846** | |

1489002.DOCX

**YOUNG & NEWSOM, P.C.**
Jeremi K. Young 24013793
Collin J. Wynne 24013793
1001 S. Harrison, Suite 200
Amarillo, Texas 79101
Telephone: (806) 331-1800
Facsimile: (806) 398-9095
Email: jyoung@youngfirm.com
collin@youngfirm.com

Jeff Carruth (TX SBN: 24001846)
**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**
3030 Matlock Rd. Suite 201
Arlington, Texas 76105
Telephone: (713) 341-1158
Fax: (866) 666-5322
E-mail: jcarruth@wkpz.com

**ATTORNEYS FOR LESLIE PRITCHARD
ET AL., PLAINTIFFS**

## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 18-20209 |
| STEPHEN MICHAEL GALMOR, | § | |
| | § | |
| | § | |
| Debtor. | § | |
| | § | |
| LESLIE PRITCHARD, INDIVIDUALLY | § | |
| AND/OR DERIVATIVELY ON BEHALF | § | |
| OF ESTATE OF SHIRLEY JO GALMOR, | § | |
| GALMOR FAMILY LIMITED | § | |
| PARTNERSHIP, GALMOR | § | |
| MANAGEMENT LLC, BOBBY DON | § | ADV. PROC. NO. 18-____ |
| AND SHIRLEY JO GALMOR LIVING | § | |
| TRUST, GALMOR FAMILY TRUST, | § | |
| AND GALMOR CONTRIBUTION | § | |
| TRUST | § | |
| PLAINTIFF(S), | § | |
| | § | |
| VS. | § | |
| | § | |
| MICHAEL STEPHEN GALMOR AND | § | |
| GALMOR'S/G&G STEAM SERVICE, | § | |
| INC. | § | |
| | § | |
| DEFENDANTS. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................1

JURISDICTION, VENUE, AND CONSTITUTIONAL
AUTHORITY TO ENTER FINAL ORDERS ....................................................2

PARTIES ...............................................................................................................2

FACTUAL BACKGROUND ................................................................................3

    Bankruptcy Case History ...............................................................................3

    Overview of G&G, Galmor-FLP, Galmor-GP, the various trusts,
    and the decedent estate of SJG ......................................................................3

    Facts Supporting the Standing of Pritchard ..................................................6

    Fiduciary duties and trust placed in Stephen Galmor ...................................9

    Fraudulent transfer of the Homeplace to Stephen Galmor .........................10

    Fraudulent transfer of the Gin Yard and Miller Property
    to Stephen Galmor .......................................................................................12

    Failure of G&G to pay Galmor- FLP for extraction of rock and gravel ....15

    Misinformation regarding and/or misappropriation of oil
    and gas royalty proceed ...............................................................................16

    Breaches of duty as Trustee of the Trusts by Stephen Galmor ..................17

    Material failures to disclose on Schedules and/or
    Statements of Financial Affairs ...................................................................19

CAUSES OF ACTION ........................................................................................22

    Count 1—Statutory fraud regarding the Homeplace, against MSG ...........22

    Count 2—Common law fraud regarding the Homeplace, against MSG ....23

    Count 3—Statutory fraud, Gin Yard and Miller Property, against MSG ...23

    Count 4—Common law fraud, Gin Yard and Miller Property, against MSG ...........25

    Count 5—Forgery and undue influence, against MSG ...............................26

    Count 6—Ineffective conveyance/declaratory judgment, against MSG ...................27

### TABLE OF CONTENTS (continued)

Count 7—Declaratory judgment regarding the Homeplace property .......................27

Count 8—Declaratory judgment regarding the Gin Yard and Miller Property .........28

Count 9—Breach of trust/breach of fiduciary duty, against MSG ...........................28

Count 10—Common law theft regarding Gravel Property and
Extracted Materials, against MSG and/or G&G........................................................30

Count 11—Texas Theft Liability Act (CPRC Chapter 134) regarding
Gravel Property and Extracted Materials, against MSG and/or G&G ......................31

Count 12—Common law theft regarding transfers of other
money and/or property Galmor- FLP and/or the Trusts to MSG and/or GG ............32

Count 13—Texas Theft Liability Act (CPRC Chapter 134) common
law theft regarding transfers of other money and/or property
Galmor- FLP and/or the Trusts to MSG and/or G&G  ...........................................33

Count 14—Money had and received, against MSG and/or G&G ............................34

Count 15—Objection to Claim of Exemption regarding
Homeplace, against MSG ........................................................................................34

Count 16—Objection to discharge, Code § 523(a)(2), against MSG ......................35

Count 17—Objection to discharge, Code § 523(a)(4), against MSG......................35

Count 18—Objection to discharge, Code § 523(a)(6), against MSG......................35

Count 19—Denial of discharge Code § 727(a), against MSG..................................36

Count 20—Attorney Fees, against MSG and G&G..................................................36

CONDITIONS PRECEDENT....................................................................................37

CONCLUSION AND PRAYER ................................................................................37

## INDEX OF EXHIBITS

| Exhibit ## | Exhibit Set Page ## | Description |
|---|---|---|
| 001 | 1 | Trust Instrument — Bobby Don and Shirley Jo Galmor Living Trust, Galmor Family Trust, Galmor Contribution Trust |
| 002 | 52 | Certificate of Merger of Galmor's/G&G Steam Service, Inc. |
| 003 | 55 | *Last Will and Testament of Bobby Don Galmor* with *Order Admitting Will and First Codicil to Probate as Muniment of Title* |
| 004 | 70 | Registration Galmor Family Limited Partnership |
| 005 | 77 | Registration Galmor Management, LLC with Company Agreement |
| 006 | 118 | Agreement of Limited Partnership of Galmor Family Limited Partnership |
| 007 | 176 | Property Transfers to Galmor Family Limited Partnership |
| 008 | 258 | Transfer of Limited Partnership Interests |
| 009 | 267 | Farm and Ranch Contract |
| 010 | 293 | Homeplace — Warranty Deed |
| 011 | 297 | Homeplace — Deed of Trust |
| 012 | 305 | Gin Yard and Miller Property — Unanimous Consent |
| 013 | 309 | Gin Yard and Miller Property — Warranty Deed |
| 014 | 313 | Gin Yard and Miller Property — Deed of Trust |
| 015 | 323 | Gin Yard and Miller Property — Release(s) |
| 016 | 324 | Removal of Traci Galmor Coleman as Manager |
| 017 | 325 | Schedules filed by Michael Stephen Galmor, Case No. 18-20209 |
| 018 | 358 | Statement of Financial Affairs filed by Michael Stephen Galmor, Case No. 18-20209 |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE ROBERT L. JONES, U.S. BANKRUPTCY JUDGE:**

Leslie Pritchard ("Pritchard") individually and on behalf of decedent Shirley Jo Galmor ("SJG"), and individually and/or derivatively on behalf of the behalf of Estate of Shirley Jo Galmor, Deceased, Galmor Family Limited Partnership, a Texas limited partnership ("Galmor-FLP"), Galmor Management LLC, a Texas limited liability company ("Galmor-GP"), the Bobby Don and Shirley Jo Galmor Living Trust, the Galmor Family Trust, and the Galmor Contribution Trust, (collectively, the "Plaintiffs") file this *Plaintiff's Original Complaint* (the "Complaint") against Defendants Michael Stephen Galmor ("MSG") and Galmor's/G&G Steam Service, Inc. , a Texas corporation ("G&G," and together with MSG the "Defendants"), and in support thereof would show the Court the following.

### INTRODUCTION

1.      This is an action to recover the fruits of the lifelong labors of Bobby Don Galmor and Shirley Jo Galmor and to ensure that their assets are distributed according to their wishes and in accordance with the planning that they provided before their deaths.   This litigation is necessary to correct the undue influence, fraud, and systematic conspiracy of Michael Stephen Galmor to manipulate Shirley Jo Galmor following the death of Bobby Don Galmor in order to control all of the assets of Bobby Don Galmor and Shirley Jo Galmor for his own exclusive use and benefit and to the exclusion of his three siblings who are the intended heirs.

2.      The nature and extent of the scheme implemented by Michael Stephen Galmor still is being unraveled, and discovery likely will reveal additional actionable conduct.   For the time being, this Complaint includes claims to address:

> a.   the fraudulent acquisition of the purported homestead of Michael Stephen Galmor from the Family Trust (as defined below);

      b.  the fraudulent acquisition by Michael Stephen Galmor of two other tracts of real property conveyed in one deed and referred to as the Gin Yard and Miller Property by the forgery of the signature of Shirley Jo Galmor on one or more necessary instruments and then the failure to pay any consideration for such property;

      c.  the theft of dirt, sand, rock, and/or gravel by Michael Stephen Galmor from land owned by Galmor-FLP; and

      d.  the recovery of funds for Galmor-FLP used for the direct and personal benefit of Michael Stephen Galmor and/or his business.

3.      This Complaint further objects to the Texas homestead exemption claimed by Michael Stephen Galmor with respect to his current residence, objects to the discharge of any damages that are owed by Michael Stephen Galmor to the Plaintiffs and/or the relevant trusts, and seeks the denial the discharge of Michael Stephen Galmor.

## JURISDICTION, VENUE, AND CONSTITUTIONAL AUTHORITY TO ENTER FINAL ORDERS

4.      The Court has jurisdiction over this action pursuant to Rule 7001(a)(2) and/or (10) of the Federal Rules of Bankruptcy Procedure and, without limitation, 11 U.S.C. §§105, 502, 541, 544, and/or 548.

5.      Venue action is proper in this Court pursuant to 28 U.S.C. § 1409.

6.      The Court may try this action to a conclusion and enter final orders under *Stern v. Marshall*, 131 S. Ct. 2594 (U.S. 2011).

## PARTIES

7.      Pritchard is an individual residing in Dallas County, Texas. Pritchard may receive notice in this action through the undersigned.

8.      MSG is the Debtor in the underlying Chapter 11 bankruptcy case. The last known address of MSG according to the filings of MSG in this Chapter 11 case is 6535 Highway 83, Shamrock, Texas 79079.

9. G&G is the Debtor in a related Chapter 11 bankruptcy case currently pending in this Court, Case No. 18-20210. The last known address of G&G according to the filings of G&G in Case No. 18-20210 is P.O. Box 349 Shamrock, TX 79079.

## FACTUAL BACKGROUND

**Bankruptcy case history.**

10. On June 19, 2018 (the "Petition Date"), MSG commenced the underlying bankruptcy case by filing a voluntary petition under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. (the "Code").

11. Also on the Petition Date, G&G commenced Case No. 18-20210 in this Court by filing a voluntary petition under Chapter 11 of the Code.

**Overview of G&G, Galmor-FLP, Galmor-GP, the various trusts, and the decedent estate of SJG.**

12. Pritchard and MSG are two of the four children of Bobby Don Galmor and SJG.

13. The series of facts underlying this action include the formation and disposition of three trusts established by Bobby Don Galmor and SJG.

14. The Bobby Don and Shirley Jo Galmor Living Trust (the "Living Trust") was created by trust instrument dated July 20, 2005, and as amended by amendments on February 2, 2007, December 20, 2010, and October 28, 2011. *See* **Exhibit 001.**[1]

15. The Galmor Family Trust (the "Family Trust") was created on April 3, 2013, upon the death of Bobby Don Galmor, pursuant to Part Three, Article Second of the Trust Instrument of the Living Trust as Amended. *See* Exhibit 1.

---

[1] All exhibits are incorporated by reference herein as if fully set forth verbatim. See Fed. R. Civ. P. 10.

16.    The Galmor Contribution Trust (the "Contribution Trust") was created on April 3, 2013, upon the death of Bobby Don Galmor, pursuant to Part Three, Article Second of the Trust Instrument of the Living Trust as Amended. *See* Exhibit 1.

17.    The Living Trust, the Family Trust, and the Contribution Trust are referred to hereinafter collectively as the "Trusts."

18.    On April 3, 2013, Bobby Don Galmor died in Shamrock, Wheeler County, Texas.

19.    Bobby Don Galmor had worked in the oil and gas industry for more than 40 years and founded G&G as an oil field services company operating in the eastern Texas Panhandle and western Oklahoma.

20.    Prior to the death of Bobby Don Galmor, MSG merged his prior business, G&G Steam Service, Inc. with Bobby Don Galmor's business, Galmor's Inc., on August 25, 2011, by which merger the resulting and current company of G&G was formed. *See* **Exhibit 002.**

21.    Upon the death of Bobby Don Galmor, all of his interest in all jewelry, wearing apparel, personal automobiles, household furniture, furnishings and equipment and other tangible property of a household or personal nature, was transferred to SJG by operation of the *Last Will and Testament of Bobby Don Galmor*.  *See* **Exhibit 003.**

22.    The *Last Will and Testament of Bobby Don Galmor* left the residue of his estate to the Bobby Don and Shirley Jo Galmor Living Trust Dated July 20, 2005.

23.    On March 24, 2017, SJG died in Shamrock, Wheeler County, Texas.

24.    The Galmor Family Limited Partnership (the "Galmor-FLP") was formed on December 1, 2010. *See* **Exhibit 004.**

25.    On August 5, 2011, Galmor Management, LLC was formed and the Company Agreement was executed.  *See* **Exhibit 005.**

26.     An Agreement of Limited Partnership of Galmor Family Limited Partnership was executed on or about August 16, 2011 acknowledging that Galmor Management, LLC was the General Partner of the Galmor-FLP. *See* **Exhibit 006.**

27.     SJG and Bobby Don Galmor transferred and assigned certain real and personal property to the Galmor FLP during their lifetimes. *See* **Exhibit 007.**

28.     Following the death of Bobby Don Galmor, the Limited Partnership Interests of Bobby Don Galmor and Shirley Jo Galmor were purportedly transferred to the Trusts. *See* **Exhibit 008.**

29.     As of the Petition Date, the limited partners of the Galmor-FLP consisted of the Family Trust, the Contribution Trust, and Galmor-GP.[2]

30.     As of the Petition Date, the members of the General Partner of the Galmor-FLP, Galmor-GP, consisted of the Galmor Contribution Trust and Galmor Family Trust.[3]

31.     The Last Will and Testament of Bobby Don Galmor was admitted into probate as a muniment of title on January 7, 2014, and left all of his property to the Living Trust. See Exhibit 3, *supra.*

32.     Pursuant to Part Three, Article Second of the Trust Instrument of the Living Trust as Amended, the Living Trust split into two trusts upon the death of Bobby Don Galmor—the Family Trust (with Bobby's ½ community interest in the Trust property), and the Contribution Trust (with Shirley's ½ community interest in the Trust property).

---

[2] This is according to MSG, Pritchard asserts that the Family Trust and Contribution Trust terminated pursuant to the Trust Instrument as Amended, and were transferred by operation of law to the Trust Beneficiaries upon the death of Shirley Jo Galmor.

[3] See footnote No. 2, *supra.*

33.     The Trusts are the limited partners in the Galmor-FLP with the Family Trust and the Contribution Trust each owning 49.5%, and Galmor-GP (the general partner of Galmor-FLP) owning 1%.

34.     The Contribution Trust and Family Trust each own half of the membership interest in Galmor-GP.

35.     Following the death of Bobby Don Galmor on April 3, 2013, MSG acted as co-trustee with SJG over the Family Trust and the Contribution Trust.

36.     Following the death of SJG, MSG has since acted as sole trustee of the Family Trust and the Contribution Trust.

37.     As of the filing of this Complaint, MSG remains as the sole trustee of the Family Trust and the Contribution Trust.

38.     MSG has served as officer and manager of Galmor-GP since at least 2011, and as of 2017 and continuing through and until the present.

**Facts supporting the standing of Pritchard.**

39.     The following facts establish the standing of Pritchard to prosecute this action.

40.     By the various rights and interests of Pritchard referenced and described below, and the claims and causes of action set forth in this Complaint, Pritchard is a creditor of both of the relevant Debtors, MSG and G&G.

41.     Pritchard is a beneficiary of the Living Trust.

42.     Pritchard is a beneficiary of the Family Trust.

43.     Pritchard is a beneficiary of the Contribution Trust.

44.     First, Pritchard prosecutes this action on behalf of the decedent estate of SJG (the "SJG Estate"). Pritchard possesses standing to prosecute this action because, *inter alia*, (1) no administration of the SJG Estate is pending, (2) no personal representative has been appointed

for the SJG Estate, (3) the *Application for Letters Testamentary* presented my MSG and filed by MSG in Case No. 13,507, in the 31st District Court, Wheeler County, Texas has been contested and opposed,[4] and (4) the purported *Last Will and Testament of Shirley Jo Galmor* is contested and has not been admitted to probate, and such will is believed to be fraudulent and/or a forgery. MSG is unable and unwilling to pursue such claims on behalf of the SJG Estate, and demand for him to do so would be futile due to the material conflict of interest of MSG.[5] Accordingly, Pritchard possesses standing to prosecute this action on behalf of the SJG Estate as heir-at-law.

45. Second, Pritchard also possesses individual standing to prosecute this action as beneficiary of each of the Trusts at all material times. SJG was beneficiary of the Trusts from their inception and during her lifetime, and Pritchard brings such claims on behalf of the SJG Estate and/or as an heir-at-law of the SJG Estate. Texas Property Code Section 114.001(c) specifically allows any beneficiary to seek derivative damages to the trust estate of a trust in any case where a trustee's breach of trust causes damage to such trust estate.

46. Third, Pritchard also possesses standing to prosecute this action on behalf of Galmor-FLP, because, at all material times, Galmor-FLP and its general partner Galmor-GP

---

[4] Contemporaneously with the filing of this Complaint, Pritchard has filed a motion for relief from the automatic stay to continue the prosecution of the will contest in Case No. 13,507 in Wheeler County and to commence a new action in state court to remove MSG as the trustee of the Trusts.

[5] Generally, the executor or administrator of the decedent's estate has the exclusive right to bring suits for the recovery of real and personal property belonging to the estate. *Chandler v. Welborn*, 294 S.W.2d 801, 806 (Tex. 1956). Accordingly, while administration is pending, the heirs are generally not entitled to maintain a suit for the recovery of property belonging to the estate, unless "it appears that the administrator will not or cannot act, or that his interest is antagonistic to that of the heirs desiring to sue." *Id.* (emphasis added); *see also Mayhew v. Dealey*, 143 S.W.3d 356, 371 (Tex.App.—Dallas 2004, pet. denied)(*"The second exception provides that heirs may bring suit when the personal representative cannot, or will not, bring the suit or when the personal representative's interests are antagonistic to those of the estate."*).

have been owned by the Trusts to which Pritchard is a beneficiary. Following the death of SJG, Pritchard is the rightful owner of 25% of each of Galmor-FLP and Galmor-GP, even though MSG as Trustee of the Trusts has failed and refused to distribute such limited partnership interest(s) and membership interest(s) (as applicable) to Pritchard pursuant to the operative trust instrument(s).

47.     Fourth, Pritchard also possesses standing to prosecute this action on behalf of SJG who was a limited partner of Galmor-FLP and/or a beneficiary of the Trusts owning Galmor-FLP from the time of the creation of Galmor-FLP through and until the death of SJG.

48.     Fifth, Pritchard also possesses standing to prosecute this action on behalf of the Trusts because Pritchard and SJG each were beneficiaries of the Trusts, which Trusts were limited partner(s) of Galmor-FLP at the time of the various transactions that are the subject of the action.

49.     Furthermore, the status of Pritchard as a limited partner of Galmor-FLP has arisen by operation of law and/or under the terms of the partnership agreement under which the Trusts were limited partners of Galmor-FLP at the time of the transactions that are subject of this action.

50.     It is necessary for Pritchard to bring this action on behalf of Galmor-FLP because the general partner, Galmor-GP, is controlled by MSG who is acting as president, officer, director, and sole manager of Galmor-GP, and MSG is otherwise in complete control of Galmor-FLP and Galmor-GP. Galmor-FLP and/or Galmor-GP have failed and refused to bring the action, and an effort to cause Galmor-FLP and/or Galmor-GP to bring the action is not likely to succeed. Under Texas law, a limited partner may step into the general partner's shoes to sue a

third party. Tex. Bus. Orgs. Code § 153.401; *see also id.* at §§ 101.452, 101.463, 101.1115 (for a limited liability company).

51. Pritchard has not attempted to secure initiation of this action by Galmor-GP because Galmor-GP is controlled by MSG who is president, officer, director, and sole manager managing of Galmor-GP, and MSG is otherwise in complete control of Galmor-FLP and Galmor-GP. MSG is unlikely to initiate a lawsuit against himself through the general partner which he controls on behalf of Galmor-FLP which he also controls.

**Fiduciary duties and trust placed in Stephen Galmor.**

52. Following the death of her husband, Bobby Don Galmor, SJG placed her trust and confidence in her son MSG in all matters related to finance and business. This trust and confidence regarding her finances and the property owned by her in her name, or that she and/or Bobby Don Galmor had put into their family business, the Galmor-FLP, and the Trusts, was absolute.

53. SJG relied on and trusted MSG to manage and inform her of all matters related to such property at all material times.

54. MSG owed fiduciary duties to SJG by as beneficiary of the Trusts and owner or beneficial owner of the interests in Galmor-FLP and Galmor-GP.

55. MSG also owed to SJG an informal fiduciary duty to act in her best interest with regards to the property owned by her and the property to which she held a beneficial interest.

56. MSG also exerted undue influence over the affairs of SJG.

57. Prior to the death of Bobby Don Galmor, SJG relied upon Bobby Don Galmor for all business financial dealings and even with respect to all household financial dealings, including management of the household checking account and bank balances, and making sure that sufficient funds existed each month to pay bills and monthly expenses of the household.

58.    Following the death of Bobby Don Galmor, MSG assumed this role with respect to his mother SJG.

**Fraudulent transfer of the Homeplace to Stephen Galmor.**

59.    Sometime after the death of Bobby Don Galmor which occurred on April 3, 2013, SJG and the Galmor Family Trust purportedly executed the *Farm and Ranch Contract* with a purported contract date of September 10, 2014 or September 11, 2014 (the "Farm and Ranch Contract"). *See* **Exhibit 009**.

60.    The Farm and Ranch Contract purported to convey from the Living Trust to MSG the certain real property consisting of a 175 acre tract of land and improvements thereon and commonly referred to as 6535 Highway 83, Shamrock, Texas 79079 (the "Homeplace") and which tract is more fully described in the Farm and Ranch Contract.

61.    The Homeplace had been the residence of Bobby Don Galmor and SJG for several decades and was the homestead of SJG prior to her death.

62.    MSG has listed in the Homeplace in schedules, and MSG claims a homestead exemption under Texas law with respect to the Homeplace.[6]

63.    The Farm and Ranch Contract was purportedly signed by SJG and MSG as Co-Trustees of the Family Trust. *See* Exhibit 9.

64.    Under the Farm and Ranch Contract, the purchase price for the transaction was to be in the amount of $225,000.00.

65.    On information and belief, such purchase price was substantially below the market value of the Homeplace (which artificially low valuation is admitted in the Schedules filed by MSG which shows a market value of $500,000).

---

[6] *See* Case No. 18-20209, Docket No. 19.

66.     In addition, the Farm and Ranch Contract itself was fraudulent because as of the purported date of the Farm and Ranch Contract (September 10, 2014 of September 11, 2014), SJG was living and the signature of SJG either individually and/or as trustee of one or more of the Trusts would have been necessary to convey the Homeplace.

67.     On or about December 10, 2014 the Living Trust apparently in furtherance of the purported Farm and Ranch Contract, and SJG as Sellers purportedly executed a *Warranty Deed with Vendor's Lien* that conveyed the Homeplace to MSG (the "Homeplace Deed"). *See* **Exhibit 010**.

68.     Also around the time of the execution of the Homeplace Deed, MSG executed a *Deed of Trust* (the "Homeplace DOT") for the benefit of the Family Trust that purported to secure the purchase price to be paid by SMG to the Family Trust. *See* **Exhibit 011.**

69.     To date, Plaintiffs have been unable to locate a promissory note with respect to the disputed Homeplace transaction and/or MSG has failed and refused to produce any such note in connection with discovery conducted to date in Case No. 13,507 in Wheeler County.

70.     The absence of a promissory note to accompany the Homeplace DOT is another indication of fraud with respect to this transaction.

71.     The Farm and Ranch Contract was purportedly signed by SJG individually, MSG individually, and MSG and SJG as co-trustees of the Family Trust. The Homeplace Deed was purportedly signed by SJG individually, and MSG and SJG as co-trustees of the Living Trust, and the Homeplace DOT was purportedly signed by MSG individually.

72.     On information and/or belief, the necessary signatures of SJG on the Farm and Ranch Contract and the Homeplace Deed were forged and/or were obtained by fraudulent representations, undue influence, and/or other malfeasance on the part of MSG.

73.     Furthermore, at the time of the signature of SJG on the instruments effectuating the Homeplace transaction (and as further described below), SJG was under the false impression that SJG had insufficient funds for personal living expenses and that she was otherwise destitute because of false information that MSG had supplied routinely and systematically to SJG following and since the death of Bobby Don Galmor in 2013.  Furthermore, the Homeplace Deed was erroneously signed in the name of the Living Trust when the Family Trust would have been the property party to execute a deed had the transaction possessed any legitimacy.

74.     MSG never paid for nor otherwise provided any consideration for the conveyance of the Homeplace.

**Fraudulent transfer of the Gin Yard and Miller Property to Stephen Galmor.**

75.     Prior to 2012, Galmor-FLP acquired two tracts of real property in Wheeler County, Texas referred to as the "Gin Yard and Miller Property."

76.     On or about September 11, 2014, MSG caused a *Unanimous Written Consent of Managers of Galmor Management, L.L.C. A Limited Liability Company* (the "Unanimous Consent") to be drafted for execution by the managers of Galmor-GP, purportedly approving the sale of the Gin Yard and Miller Property by Galmor-FLP to MSG individually.  *See* **Exhibit 012**.

77.     On or about October 7, 2014, MSG on behalf of Galmor-FLP and Galmor-GP executed a *Warranty Deed with Vendor's Lien* (the "GY-MP Deed") that conveyed the Gin Yard and Miller Property from Galmor-FLP to MSG individually.  *See* **Exhibit 013**.

78.     Also on or about October 7, 2014, MSG executed a Deed of Trust (the "(the "GY-MP Deed of Trust") granting a security interest in the Gin Yard and Miller Property in favor of Galmor-FLP to secure the payment of the consideration to be paid by MSG for such sale. See **Exhibit 014**.

79. On information and belief, such purchase price reflected in the applicable note and/or the GY-MP Deed of Trust was below the market value of the Gin Yard and Miller Property.

80. Unlike his fraudulent acquisition of the Homeplace, MSG dispensed with the rouse of a land sale contract with respect to the fraudulent acquisition of the Gin Yard and Miller Property and went directly to the purported deed and financing instruments.

81. To date, Plaintiffs have been unable to locate a promissory note with respect to the disputed Gin Yard and Miller Property transaction and/or MSG has failed and refused to produce any such note in connection with discovery conducted to date in Case No. 13,507 in Wheeler County.

82. The absence of a promissory note to accompany the GY-MP Deed of Trust is another indication of fraud with respect to this transaction.

83. The sale of the Gin Yard and Miller Property was not approved and authorized by Galmor-FLP and was not approved and authorized by Galmor-GP.

84. The sale of the Gin Yard and Miller Property was for substantially below the fair market value of such property.

85. MSG never paid for and/or never provided any other consideration for the Gin Yard and Miller Property.

86. On or about July 7, 2015 MSG executed a *Release of Lien* and on or about July 7, 2015 MSG executed a *Corrected Release of Lien* (together, the "GY-MP Releases") related to the GY-MP Deed of Trust, thus leaving title of the Gin Yard and Miller Property in the name of MSG free and clear. *See* **Exhibit 015**.

87.     Again, without approval or authorization of Galmor-FLP or Galmor-GP, MSG executed and recorded the two GY-MP Releases to advance his fraudulent acquisition of the Gin Yard and Miller Property.

88.     The consideration purportedly paid by MSG to Galmor-FLP in order to release the lien under the GY-MP Deed of Trust was never actually paid.

89.     MSG otherwise never provided any or sufficient consideration to Galmor-FLP to justify the conveyance of the Gin Yard and Miller Property to MSG, even if such conveyance had been duly authorized by Galmor-FLP and/or Galmor-GP.

90.     Galmor-GP never authorized the conveyance of the Gin Yard and Miller Property to MSG.

91.     At the time of the purported conveyance of the Gin Yard and Miller Property from Galmor-FLP to MSG, Galmor-GP was governed by three managers MSG, SJG, and Traci Galmor Coleman (the sister of Pritchard and MSG).

92.     Pritchard previously has obtained a copy of the purported Unanimous Consent. *See* Exhibit 012.

93.     The Unanimous Consent was never signed by SJG, who was one of the two managers at the time of the purported Gin Yard–Miller Property Transaction.

94.     Although the 'Waiver of Notice and Consent' page of the Unanimous Consent contains the notation of "Date Signed: 9-11-2014" the Unanimous Consent was not signed on such date.

95.     Furthermore, MSG misled Traci Galmor Coleman (another daughter of Bobby Don Galmor and SJG and the sister of each of MSG and Pritchard) as to the nature and purpose of the Unanimous Consent.

**PLAINTIFF'S ORIGINAL COMPLAINT — Page 14 of 39**
1489002.DOCX

96.     MSG fraudulently caused and directed Traci Galmor Coleman to forge the signature of SJG onto the Unanimous Consent.

97.     MSG as Trustee of the Trusts and Manager of Galmor-GP, removed his sister Traci Galmor Coleman as a manager on or about June 17, 2017, and from then forward MSG has purported to act as sole manager of Galmor-GP and thus exert total control over Galmor-FLP. *See* **Exhibit 016.**

**Failure of G&G to pay Galmor-FLP for extraction of rock and gravel.**

98.     Another of the assets of Galmor-FLP is a tract of real property in Wheeler County, Texas separate ("Gravel Property") from the Homeplace, the Gin Yard, and the Miller Property and for which tract the Glamour–FLP owns fee simple title to the surface and all minerals.

99.     The Gravel Property contains sand, dirt, rock, gravel, and/or other materials from the ground (the "Extracted Materials") owned by Galmor-FLP and Extracted Materials have been mined and removed from the Gravel Property by SMG and/or G&G for several years.

100.    SMG and/or G&G have sold such Extracted Materials to third parties or have used such Extracted Materials in other business operations of SMG and/or G&G, which operations from time to time include preparing pad sites for oil and gas well and/or wind turbine locations, and possibly including various work on roads and access points to locations.

101.    SMG and/or G&G has provide no consideration or insufficient consideration to Galmor-FLP any of the Trusts, or any beneficiaries of any of the Trusts for the Extracted Materials.

102.    The removal of the Extracted Materials continues to the current time.

103.    Accordingly, Galmor-FLP has been damaged by the value of all such materials removed from the Gravel Property by SMG and/or G&G.

**Misinformation regarding and/or misappropriation of oil and gas royalty proceeds.**

104. Prior to the death of SJG, MSG intentionally misled and lied to SJG as to the payment of certain mineral royalties (the "Subject Royalties") payable from Barker Production Co. and/or Shamrock Texas Partners and others and derived from various properties which over time Bobby Don Galmor, SJG, Galmor-FLP and/or the Living Trust had acquired a royalty interest and/or other mineral interests. (the "Subject Royalty Interests").

105. These actions and/or omissions caused misbelief on the part of SJG that she had no money and was in poor financial condition.

106. MSG failed to inform SJG as to the financial condition and assets of Galmor-FLP and the Trusts so that SJG would believe MSG was paying her living expenses personally and that she was reliant on him when neither circumstance actually existed or need to have existed.

107. In fact, MSG knew that the Subject Royalties were being paid to SJG, Galmor-FLP, and/or the Trusts, but contrary to such payment MSG misled and failed to inform SJG that the Subject Royalties were being paid. Instead MSG led SJG to believe that the financial condition of SJG was dire and that MSG was taking care of SJG with separately derived personal funds of MSG.

108. Contrary to the misrepresentations of MSG to SJG, the Trusts and the property held in trust were more than adequate to support SJG at all relevant times.

109. MSG began acting as a Co-Trustee of the Trusts immediately following Bobby Don Galmor's death on April 3, 2013.

110. MSG represented to friends and family that the Trusts had failed and that the Trusts had not been set up properly and had failed and did not exist.

111.    On information and belief, MSG caused the Subject Royalties to be transferred to MSG and/or G&G and contrary to the interests of the Trust Beneficiaries and/or the interests of SJG in the Subject Royalties.

**Breaches of duty as Trustee of the Trusts by Stephen Galmor.**

112.    MSG has never informed any of the beneficiaries of the Trusts of the existence and financial condition of the Trusts or the Limited Partnership it owns.

113.    MSG caused the funds of the Trusts to be paid to himself or for the benefit of himself or related businesses and entities, to the detriment of the Trusts and in violation of his fiduciary duty.

114.    The Trusts bank accounts were quickly drained of funds following deposits of the Subject Royalties, and were never distributed to the Trust beneficiaries.

115.    MSG also has caused Galmor-FLP to pay for his personal expenses including amounts for improvements to the Galmor Homeplace after the purported conveyance of the Homeplace to MSG.

116.    MSG has failed to make distributions of the Trusts as required under the terms of the trust instrument following the death of SJG.

117.    By the terms of the Trust instruments, following the death of SJG, the Trusts were supposed to be dissolved and distributed to the Trust beneficiaries.

118.    One or more of the Trusts were limited partners and owners of Galmor-FLP at all material times following the death of Bobby Don Galmor on April 3, 2013.

119.    MSG has controlled and managed Galmor-FLP and its general partner as Trustee of the Trusts that own the limited partner interest of Galmor-FLP and that own the member interest in Galmor-GP.

120.    MSG has served as President or other officer of Galmor-FLP and manager and President of its general partner, Galmor-GP at all material times.

121.    To date, and without complete discovery, Plaintiffs have identified at least the following payments caused to be made from Galmor-FLP to G&G without explanation or benefit to Galmor-FLP, highlighted by several large around number transfers as shown in the figure below.

| Transfers from Galmor-FLP to G&G | |
|---|---|
| Date | Transfer Amount ($) |
| 4/30/2015 | 978.00 |
| 7/5/2016 | 20,000.00 |
| 6/30/2013 | 3,164.00 |
| 5/23/2016 | 60,000.00 |
| 9/20/2016 | 20,000.00 |
| 10/31/2014 | 1,050.00 |
| 10/25/2017 | 20,000.00 |
| TOTAL | 125,192.00 |

122.    Plaintiff's sought extensive discovery in connection with Case No. 13,507 regarding the assets and finances of SJG, Galmor-GLP, and the Trusts.  Much of the discovery was not completed and remained in dispute by MSG through and until the Petition Date.  In fact, the commencement of the underlying bankruptcy case stayed the scheduled deposition of MSG and/or G&G's key employee and effective CFO and/or controller, Deena Carter.  Plaintiffs anticipate prosecuting further discovery under Bankruptcy Rule 2004 or under this Adversary Proceeding in order to obtain the bank records, check registers, invoices, and other source documents in order to identify and evaluate all of the transactions that have occurred with respect to the Estate of SJG, Galmor-GLP, and the Trusts since the death of Bobby Don Galmor.

123.    Furthermore, at the time of the signature of SJG on the instruments effectuating the Homeplace transaction, SJG was under the false impression that SJG had insufficient funds

for personal living expenses and that she was otherwise destitute, because of false information that MSG had supplied routinely and systematically to SJG following and since the death of Bobby Don Galmor.

**Material failures to disclose on Schedules and/or Statement of Financial Affairs.**

124. On July 2, 2018, MSG filed his Schedules and Statement of Financial Affairs ("SOFA") in the underlying Bankruptcy Case.[7] *See* **Exhibit 017** and **Exhibit 018.**

125. To date, MSG has not filed any amendments to the Schedules or to the

126. On information and/or belief, MSG has made material misrepresentations and/or omissions in the Schedules and SOFA.

127. For example, and without limitation, MSG in the Schedules states that MSG owns the Homeplace which is not correct which purported ownership is only a result of the malfeasance of MSG.

128. MSG in the Schedules states that MSG owns the Gin Yard and Miller Property (noted in the Schedule A/B as Item Nos. 1.3 and 1.8) which is not correct and which purported ownership is only a result of the malfeasance of MSG.

129. MSG failed to itemize the household goods and furnishings required to be disclosed by Schedule A/B-6 and instead made a single listing of "furniture and household goods at all locations" in the amount of $5,000.

130. MSG failed to itemize the electronics required to be disclosed by Schedule A/B-7 and instead made a single listing of "TVs, phones, etc." in the amount of $600.

131. MSG failed to itemize the jewelry required to be disclosed by Schedule A/B-12 and instead made a single listing of "Mother's jewelry" in the amount of $1,000.

---

[7] *See* Case No. 18-20209, Docket Nos. 19. 22.

132.    Accordingly, MSG has intentionally failed to disclose the contents of the personal property required by Schedule A/B and intentionally failed to itemize the various pieces of information.

133.    The issue of the personal property itemization was discussed at the Code § 341 meeting of creditors held in the underlying Backups in Case, and in spite of such discussions MSG has taken no action to provide the information that is required by the Schedules, normal bankruptcy practice throughout Texas, and/or applicable law.

134.    Schedule A/B-19 lists several different entities in which MSG is represented to be the 100% equity interest owner: SGM Leasing, LLC, SGM Management, LLC, SGM Real Estate, LLC, MSG Oil and Gas, and Galmor Land and Cattle (the "MSG Entities").

135.    The value of the MSG Entities is listed as unknown.

136.    No other information is provided with respect to the MSG Entities.

137.    On information and belief, one or more of the MSG Entities is used as a vehicle to avoid the disclosure of assets owned and controlled by the MSG Entities and/or by MSG individually, which assets directly benefit MSG and/or G&G.

138.    On information and belief, the value of the MSG Entities is not zero and/or is known to MSG contrary to the listing on Schedule A/B, and should have been disclosed on the Schedules.

139.    MSG also is known to own and/or operate a luxury motor home; however, the luxury motor home nowhere appears on schedules, or is hidden within the MSG Entities.

140.    In addition, in spite of the accumulated malfeasance of MSG since the death of Bobby Don Galmor, MSG has included in Schedule A/B-30 two purported payables owed by Galmor-FLP ($1,310,007.00) and G&G ($2,470,135.03) to MSG individually.

141.    On information and/or belief, no legitimate debts whatsoever are owed from Galmor-FLP to MSG.

142.    On information and/or belief, no legitimate debts whatsoever are owed from G&G to MSG.

143.    Accordingly, because the purported debts owed by Galmor-GP and/or G&G do not exist, MSG has overstated the assets disclosed on the Schedules with fraudulent intent.

144.    Schedule J does not list a spouse for MSG but does list one grandson as a dependent.    On information and/or belief, the grandson is not actually or functionally a dependent of MSG, and the grandson is used as a fraudulent device in order to inflate the expenses on Schedule J.

145.    Schedule J-6 lists an amount of $1,801.25 per month for electricity, heat and natural gas which amount is believed to be grossly overstated with fraudulent intent.

146.    Schedule J-7 lists an amount of $1,400 per month for food and household supplies which amount is believed to be grossly overstated with fraudulent intent.

147.    On information and/or belief, MSG has omitted one or more presently open bank accounts from the Schedules and/or one or more recently closed bank accounts from the SOFA.

148.    On information and/or belief, MSG has omitted one or more safe deposit boxes from disclosure in the SOFA.

149.    Additional errors, omissions, and other defects in the Schedules and/or the Statement of Financial Affairs may be identified as discovery further investigation occurs.

### CAUSES OF ACTION

150.    Plaintiffs assert the following claims and causes of action against the Defendants.

**Count 1 — Statutory fraud regarding the Homeplace, against MSG.**

151.    Plaintiffs incorporate the foregoing paragraphs of this Complaint into this section of the Complaint as if fully set forth verbatim herein.

152.    MSG made one or more false representations of material fact with actual awareness and knowledge of the falsity of such representations for the purpose of inducing the Trusts and/or SJG to enter into the Homeplace Contract and to sell and convey the Homeplace to MSG and then later to release the liens with respect to the Homeplace DOT.

153.    SJG and/or the Trusts relied on the promises in entering in the Farm and Ranch Contract and purporting to sell the Homeplace, and Plaintiffs and/or the Trusts have suffered actual damages based upon such reliance.

154.    Pursuant to Texas Business & Commerce Code § 27.01(b), Plaintiffs request that Plaintiffs and/or the Trusts be awarded a judgment from and against MSG for all actual damages suffered as a result of the false representations of MSG in an amount to be established at trial, but in an amount not less than the difference between the value of the Homeplace at the time of purchase and the value actually paid by MSG (if any).

155.    The false representations by MSG were made with actual awareness of their falsity, and therefore, pursuant to Texas Business & Commerce Code § 27.01(c), Plaintiffs and/or the Trusts are entitled to recover exemplary damages from MSG.

156.    Pursuant to Texas Business & Commerce Code § 27.01(e), Plaintiffs and/or the Trusts are entitled to recover from MSG the reasonable and necessary attorney's fees, expert witness fees, costs of copies for depositions, costs of court, and all other expenses of representation, and Plaintiffs request that Plaintiffs and/or the Trusts be awarded a judgment from and against MSG for all such amounts.

157. In the alternative to Plaintiffs' claim for damages, Plaintiffs request rescission of each of the instruments by which the purported Homeplace transaction was effectuated and/or that a constructive trust be imposed upon the Homeplace and awarded to the Contribution Trust and the Family Trust, or alternatively to the beneficiaries of the Trusts excluding MSG.

**Count 2 — Common law fraud regarding the Homeplace, against MSG.**

158. Plaintiffs incorporate the foregoing paragraphs of this Complaint into this section of the Complaint as if fully set forth verbatim herein.

159. MSG made false representations of material fact for the purpose of inducing the Trusts and SJG into entering into the Farm and Ranch Contract and selling and conveying the Homeplace to MSG.

160. The Plaintiffs and/or the Trusts have suffered actual damages in reliance upon the misrepresentations of MSG, and Plaintiffs seek a judgment from and against MSG and in favor Plaintiffs and/or the Trusts for actual damages in an amount to be established at trial.

161. MSG's misrepresentations were made with the type of fraud and malice for which the law allows recovery of exemplary damages, and Plaintiffs seek a recovery from and against MSG for exemplary damages in an amount to be determined at trial.

162. Plaintiffs request rescission of each of the instruments by which the purported Homeplace transaction was effectuated and/or that a constructive trust be imposed upon the Homeplace and awarded to the Contribution Trust and the Family Trust, or alternatively to the beneficiaries of the Trusts excluding MSG.

**Count 3 — Statutory fraud, Gin Yard and Miller Property, against MSG.**

163. Plaintiffs incorporate the foregoing paragraphs of this Complaint into this section of the Complaint as if fully set forth verbatim herein.

164. MSG made one or more false representations of material fact with actual awareness and knowledge of the falsity of such representations for the purpose of inducing Galmor-FLP to authorize and enter into the contract and to sell and convey the Gin Yard and Miller Property, and then to release the liens related to such transaction.

165. Galmor FLP and/or Galmor-GP relied on the promise in entering into the contracts and selling the Gin Yard and Miller Property, and Plaintiffs, Galmor FLP, Galmor-GP and/or the Trusts have suffered actual damages based upon such reliance.

166. Pursuant to Texas Business & Commerce Code § 27.01(b), Plaintiffs request that Plaintiffs, Galmor FLP, Galmor-GP and/or the Trusts be awarded a judgment from and against MSG for all actual damages suffered as a result of MSG's false representations in an amount to be established at trial, but in an amount not less than the difference between the value of the Gin Yard and Miller Property at the time of purchase and the value actually paid by MSG.

167. The false representations by MSG were made with actual awareness of their falsity, and therefore, pursuant to Texas Business & Commerce Code § 27.01(c), and Plaintiffs, Galmor FLP, Galmor-GP and/or the Trusts are entitled to recover exemplary damages.

168. Pursuant to Texas Business & Commerce Code § 27.01(e), Plaintiffs, Galmor FLP, Galmor-GP and/or the Trusts are entitled to recover from MSG the reasonable and necessary attorney's fees, expert witness fees, costs of copies for depositions, and costs of court, and all costs and expenses of representation, and Plaintiffs request that Plaintiffs, Galmor FLP, Galmor-GP and/or the Trusts be awarded a judgment from and against MSG for all such amounts.

169. In the alternative to Plaintiffs' claim for damages, Plaintiffs request rescission of each of the instruments by which the purported Gin Yard and Miller Property transaction was

effectuated and/or that a constructive trust be imposed upon the Gin Yard and Miller Property and awarded to the Contribution Trust and the Family Trust, or alternatively to the beneficiaries of the Trusts excluding MSG, or that the Gin Yard and Miller Property be awarded to Galmor-FLP.

**Count 4 — Common Law Fraud, Gin Yard and Miller Property, against MSG.**

170.    Plaintiffs incorporate the foregoing paragraphs of this Complaint into this section of the Complaint as if fully set forth verbatim herein.

171.    MSG made false representations of material fact for the purpose of inducing Galmor-FLP into entering into the Gin Yard and Miller Property transaction and selling and releasing the property.

172.    Plaintiffs, Galmor FLP, Galmor-GP and/or the Trusts have suffered actual damages in reliance upon MSG's misrepresentations and Plaintiffs seek a judgment from and against MSG for such actual damages in an amount to be established at trial.

173.    The misrepresentations of MSG were made with the type of fraud and malice for which the law allows recovery of exemplary damages, and Plaintiffs seek for Plaintiffs, Galmor FLP, Galmor-GP and/or the Trusts a recovery from and against MSG for exemplary damages in an amount to be determined at trial.

174.    In the alternative to Plaintiffs' claim for damages, Plaintiffs request rescission of each of the instruments by which the purported Gin Yard and Miller Property transaction was effectuated and/or that a constructive trust be imposed upon the Gin Yard and Miller Property and awarded to the Contribution Trust and the Galmor Family Trust, or alternatively to the beneficiaries of the Trusts excluding MSG, or that the Gin Yard and Miller Property be awarded to Galmor-FLP.

**Count 5 — Forgery and undue influence, against MSG.**

175.    Plaintiffs incorporate the foregoing paragraphs of this Complaint into this section of the Complaint as if fully set forth verbatim herein.

176.    SJG never signed the Farm and Ranch Contract, the Homeplace Deed, or the Unanimous Consent.

177.    The signatures on the Farm and Ranch Contract, the Homeplace Deed, or the Unanimous Consent that purport to be the signature of SJG are not the signature of SJG in any capacity.

178.    The Farm and Ranch Contract, the Homeplace Deed, and the Unanimous Consent were never executed by SJG.

179.    The purported signatures of SJG on the Farm and Ranch Contract, the Homeplace Deed, or the Unanimous Consent in each instance is a forgery.

180.    Accordingly, Plaintiffs request the instruments that effectuated the Homeplace transaction and the Gin Yard and Miller Property transaction be set aside and declared null and void as a result of such forgery.

181.    Alternatively, MSG and those acting in concert with him, exerted undue influence over SJG and such influence undermined and overpowered the mind of SJG at the time she purportedly signed the Farm and Ranch Contract, the Homeplace Deed, and the Unanimous Consent.

182.    SJG would not have signed the instruments that effectuated the Homeplace transaction and the Gin Yard and Miller Property transaction but for such undue influence.

183.    Accordingly, Plaintiffs request the instruments that effectuated the Homeplace transaction and the Gin Yard and Miller Property transaction be set aside and declared invalid and the result of undue influence exerted by MSG and those acting in concert with MSG, and

that ownership and title to the Homeplace and the Gin Yard and Miller Property be awarded to the Contribution Trust and Family Trust, or alternatively to the beneficiaries of the Trusts excluding MSG, or in the case of the Gin Yard and Miller Property, awarded to Galmor-FLP.

**Count 6 — Ineffective conveyance / declaratory judgment, against MSG.**

184.    Plaintiffs incorporate the foregoing paragraphs of this Complaint into this section of the Complaint as if fully set forth verbatim herein.

185.    Alternatively, Plaintiffs request judgment determining that the Homeplace Deed, did not convey title to MSG because grantors SJG individually and the Living Trust did not hold title to the Homeplace, and instead at such time the Family Trust and the Contribution Trust held title to the Homeplace and not the grantors listed in the Homeplace Deed.

186.    Accordingly, pursuant to 28 U.S.C. 2201 and/or Code §§ 105 and 541, Plaintiffs request the Court enter judgment declaring ownership and title of the Homeplace to be vested in the Family Trust and the Contribution Trust, and that the Court impose a constructive trust on the Homeplace and award the Homeplace to the beneficiaries of the Contribution Trust and Family Trust excluding MSG.

**Count 7 — Declaratory judgment regarding the Homeplace property.**

187.    Plaintiffs incorporate the foregoing paragraphs of this Complaint into this section of the Complaint as if fully set forth verbatim herein.

188.    Accordingly, pursuant to 28 U.S.C. 2201 and/or Code §§ 105 and 541, Plaintiffs request the Court enter judgment declaring ownership and title of the Homeplace to be vested in the Family Trust and the Contribution Trust, and that the Court impose a constructive trust on the Homeplace and award the Homeplace to the beneficiaries of the Contribution Trust and Family Trust excluding MSG.

**Count 8 — Declaratory judgment regarding the Gin Yard and Mille Property.**

189.   Plaintiffs incorporate the foregoing paragraphs of this Complaint into this section of the Complaint as if fully set forth verbatim herein.

190.   Accordingly, pursuant to 28 U.S.C. 2201 and/or Code §§ 105 and 541, Plaintiffs request the Court enter judgment declaring ownership and title of the Gin Yard and Mille Property to be vested in the Galmor-FLP, and that the Court impose a constructive trust to the Contribution Trust and the Galmor Family Trust, or alternatively to the beneficiaries of the Trusts excluding MSG, or that the Gin Yard and Miller Property be awarded to Galmor-FLP.

**Count 9 — Breach of trust / breach of fiduciary duty, against MSG.**

191.   Plaintiffs incorporate the foregoing paragraphs of this Complaint into this section of the Complaint as if fully set forth verbatim herein.

192.   At all material times, MSG owed to SJG an informal fiduciary duty and a formal fiduciary duty as MSG was Trustee of the Trusts to which SJG was a beneficiary.

193.   At all material times, MSG as Trustee of the Trusts owed and continues to owe the Trusts, the beneficiaries of the Trusts, and/or the Plaintiffs a fiduciary duty.

194.   At all material times. MSG owed Galmor-GP a fiduciary duty as a manager and officer of Glamor-GP.

195.   At all material times. MSG owed fiduciary duties to Galmor-FLP and its limited partners as manager and officer of Galmor-GP.

196.   MSG breached his fiduciary duties by failing to inform the beneficiaries of the Trusts and/or Plaintiffs as to matters concerning the Trusts and the assets of the Trusts.

197.   MSG breached his fiduciary duty by engaging in self-dealing and failing to put the interests of the beneficiaries of the Trusts and/or Plaintiffs ahead of his own.

198. MSG breached his fiduciary duty to the beneficiaries of the Trusts and/or Plaintiffs by entering into the Farm and Ranch Purchase Contract for less than fair market value, and failing to pay fair market value regarding the Homeplace.

199. MSG breached his fiduciary duty owed to the beneficiaries of the Trusts and/or Plaintiffs by entering into the transaction for the sale of the Gin Yard and Miller Property for less than fair market value, forging SJG's name and the date of the Unanimous Consent, lying and misleading Traci Galmor Coleman into signing the name of SJG to the Unanimous Consent, and failing to pay fair market value for the Gin Yard and Miller Property.

200. MSG has engaged in self-dealing and transferred property out of the Trusts for his own benefit and to the detriment of the Trusts' beneficiaries and Plaintiffs.

201. MSG has engaged in self-dealing and transferred property by removing sand, dirt, rock and/or gravel from the Gravel Property but not paying for the extracted product.

202. MSG has transferred property out of Galmor-FLP for his own benefit and to the detriment of Galmor-FLP and the limited partners and beneficiaries of the limited partners, including the Plaintiffs.

203. Other instances of breach of duty and self-dealing may be discovered as Plaintiffs continue to investigate the conduct of MSG and G&G.

204. Such breaches of fiduciary duty have benefitted MSG and caused injury and damages to the beneficiaries of the Trusts and/or Plaintiffs.

205. Such injury and/or damages from these and other breaches of fiduciary duty by MSG resulted from the fraud, malice, and/or gross negligence of MSG.

206. Accordingly, Plaintiffs seek a recovery from and against MSG in favor of Plaintiffs, Galmor FLP, Galmor-GP and/or the Trusts for actual and exemplary damages in an

amount within the jurisdictional limits of this court to be determined at trial of the breaches of fiduciary duty of MSG.

207.    Plaintiffs also request rescission of the instruments that effectuated the Homeplace transaction and the Gin Yard and Miller Place Transaction, and/or that a constructive trust be imposed upon the Homeplace and the Gin Yard and Miller Property and awarded to the Galmor Contribution Trust and Galmor Family Trust, or alternatively to the beneficiaries of the Trusts excluding MSG, or in the case of the Gin Yard and Miller Property, awarded to Galmor-FLP.

**Count 10 — Common law theft regarding Gravel Property and Extracted Materials, against MSG and/or G&G.**

208.    Plaintiffs incorporate the foregoing paragraphs of this Complaint into this section of the Complaint as if fully set forth verbatim herein.

209.    The removal of the Extracted Materials from the Gravel Property occurred without G&G and/or MSG providing no and/or insufficient consideration to the owner of the Gravel Property, namely Galmor-FLP.

210.    Such use of the Extracted Materials was beyond the effective consent of Galmor-FLP and/or the Trusts.

211.    Such use of the Extracted Materials was undertaken by MSG and/or G&G with the intention of depriving Galmor-FLP and/or the Trusts of such Extracted Materials on a permanent basis.

212.    Such removal without sufficient consideration constituted the common law theft of the Extracted Materials.

213.    Galmor-FLP has suffered injury and damages as a result of the failure to pay for the Extracted Materials including the loss of the value of the Extracted Materials and the decrease in the overall value of the Gravel Property.

214.    Accordingly, Plaintiffs respectfully request that the Court enter judgment, jointly and severally, against MSG and/or G&G for common law theft for such damages.

215.    Furthermore, Plaintiffs request that a constructive trust be imposed on any traceable funds derived from the Extracted Materials that remain in the possession of MSG and/or G&G.

**Count 11 — Texas Theft Liability Act (CPRC Chapter 134) regarding Gravel Property and Extracted Materials, against MSG and/or G&G.**

216.    Plaintiffs incorporate the foregoing paragraphs of this Complaint into this section of the Complaint as if fully set forth verbatim herein.

217.    The removal of the Extracted Materials from the Gravel Property occurred without G&G and/or MSG providing no and/or insufficient consideration to the owner of the Gravel Property, namely Galmor-FLP.

218.    Such use of the Extracted Materials was beyond the effective consent of Galmor-FLP and/or the Trusts.

219.    Such use of the Extracted Materials was undertaken by MSG and/or G&G with the intention of depriving Galmor-FLP and/or the Trusts of such Extracted Materials on a permanent basis.

220.    Such removal without sufficient consideration constituted theft of the Extracted Materials within the meaning of Chapter 134 of the Texas Civil Practice and Remedies Code, also known as the Texas Theft Liability Act.

221.    Galmor-FLP has suffered injury and damages as a result of the failure to pay for the Extracted Materials including the loss of the value of the Extracted Materials and the decrease in the overall value of the Gravel Property.

222.    Accordingly, Plaintiffs respectfully request that the Court enter judgment, jointly and severally, against MSG and/or G&G for such damages pursuant to of Chapter 134 of the Texas Civil Practice and Remedies Code.

**Count 12 — Common law theft regarding transfers of other money and/or property Galmor-FLP and/or the Trusts to MSG and/or G&G.**

223.    Plaintiffs incorporate the foregoing paragraphs of this Complaint into this section of the Complaint as if fully set forth verbatim herein.

224.    On information and belief, MSG and/or G&G have caused one or more transfers of money or other interests in property from Galmor-GP and/or one or more of the Trusts and transferred such money and/or property to MSG and/or G&G or used such property for the benefit of MSG and/or G&G and without consideration to the source of such money and/or property.

225.    Such use of the money and/or property was unauthorized and made in a manner inconsistent with the purposes of the Galmor-FLP and/or the Trusts and contrary to the scope of whatever control and/or authority that MSG and/or G&G might have exerted legitimately over the Galmor-FLP and/or the Trusts.

226.    Such use of the money and/or property was beyond the effective consent of Galmor-FLP and/or the Trusts.

227.    Such use of the money and/or property was undertaken by MSG and/or G&G with the intention of depriving Galmor-FLP and/or the Trusts of such money and/or property on a permanent basis.

228. Galmor-FLP has suffered injury and damages as a result of Such use of the money and/or property including the loss of the value of the money and/or property.

229. Accordingly, Plaintiffs respectfully request that the Court enter judgment, jointly and severally, against MSG and/or G&G for common law theft for such damages.

**Count 13 — Texas Theft Liability Act (CPRC Chapter 134) Common law theft regarding transfers of other money and/or property Galmor-FLP and/or the Trusts to MSG and/or G&G.**

230. Plaintiffs incorporate the foregoing paragraphs of this Complaint into this section of the Complaint as if fully set forth verbatim herein.

231. On information and belief, MSG and/or G&G have caused one or more transfers of money or other interests in property from Galmor-GP and/or one or more of the Trusts and transferred such money and/or property to MSG and/or G&G or used such property for the benefit of MSG and/or G&G and without consideration to the source of such money and/or property.

232. Such use of the money and/or property was unauthorized and made in a manner inconsistent with the purposes of the Galmor-FLP and/or the Trusts and contrary to the scope of whatever control and/or authority that MSG and/or G&G might have exerted legitimately over the Galmor-FLP and/or the Trusts.

233. Such use of the money and/or property constituted theft of the Extracted Materials within the meaning of Chapter 134 of the Texas Civil Practice and Remedies Code, also known as the Texas Theft Liability Act.

234. Galmor-FLP has suffered injury and damages as a result of the loss the money and/or property.

235.    Accordingly, Plaintiffs respectfully request that the Court enter judgment, jointly and severally, against MSG and/or G&G for such damages pursuant to of Chapter 134 of the Texas Civil Practice and Remedies Code for such damages.

**Count 14 — Money had and received, against MSG and/or G&G.**

236.    Plaintiffs incorporate the foregoing paragraphs of this Complaint into this section of the Complaint as if fully set forth verbatim herein.

237.    Alternatively, Plaintiffs request judgment for funds transferred from the Estate of SJG, the Trusts, and/or Galmor-FLP to MSG and/or G&G for which MSG and/or G&G and no right to receive and/or retain such funds.

238.    Furthermore, Plaintiffs request that a constructive trust be imposed on any traceable funds derived from that remain in the possession of MSG and/or G&G.

**Count 15 — Objection to Claim of Exemption regarding Homeplace, against MSG.**

239.    Plaintiffs incorporate the foregoing paragraphs of this Complaint into this section of the Complaint as if fully set forth verbatim herein.

240.    MSG has listed in his Schedule C the Homeplace as his exempt homestead under Texas law.[8]

241.    Plaintiffs object to the homestead exemption because the Homeplace does not constitute the property of the MSG as set forth above and thus MSG possesses no interest which may be subject to the exemption under Tex. Const. art. XVI, §§ 50, 51 or Tex. Prop. Code §§ 41.001-.002

---

[8] *See* Case No. 18-20209, Docket No. 19, at pp. 18.

242.    Accordingly, Plaintiffs respectfully request that an order and/or judgment be entered by the Homeplace does not constitute the homestead of MSG and that the claim of homestead exemption be denied.

243.    Furthermore, to the extent that additional evidence reveals that any conveyance that is determined to valid but which occurred within the 1215-day window of Code § 522(p)-(q), then Plaintiffs request that the claim of exemption be adjusted accordingly.

**Count 16 — Objection to discharge, Code § 523(a)(2), against MSG.**

244.    Plaintiffs incorporate the foregoing paragraphs of this Complaint into this section of the Complaint as if fully set forth verbatim herein.

245.    Accordingly, Plaintiffs request that the damages that are to be awarded to the Plaintiffs, Galmor-FLP, Galmor-GP, and/or the Trusts on account of the statutory and/or common Law fraud committed by MSG should be determined to be nondischargeable pursuant to Code § 523(a)(2) applicable in this case under Code § 1141(d)(2).

**Count 17 — Objection to discharge, Code § 523(a)(4) , against MSG.**

246.    Plaintiffs incorporate the foregoing paragraphs of this Complaint into this section of the Complaint as if fully set forth verbatim herein.

247.    Additionally and/or alternatively, Plaintiffs request that the damages that are to be awarded to the Plaintiffs, Galmor-FLP, Galmor-GP, and/or the Trusts on account of the breaches of fiduciary duty committed by MSG as a trustee of one or more of the Trusts should be determined to be nondischargeable pursuant to Code § 523(a)(4) ) applicable in this case under Code § 1141(d)(2).

**Count 18 — Objection to discharge, Code § 523(a)(6) , against MSG.**

248.    Plaintiffs incorporate the foregoing paragraphs of this Complaint into this section of the Complaint as if fully set forth verbatim herein.

249.    MSG intended to inflict injury and damage Pritchard, SJG, the Plaintiffs, Galmor-FLP, Galmor-GP, and/or the Trusts by the actions and/or omissions referenced and described above.

250.    The conduct of MSG and one or more regards was willful and malicious with respect to the injury and damages caused to Pritchard, SJG, the Plaintiffs, Galmor-FLP, Galmor-GP, and/or the Trusts.

251.    Additionally and/or alternatively, Plaintiffs request that the damages that are to be awarded to the Plaintiffs, Galmor-FLP, Galmor-GP, and/or the Trusts on account of the breaches of fiduciary duty committed by MSG as a trustee of one or more of the Trusts should be determined to be nondischargeable pursuant to Code § 523(a)(6) applicable in this case under Code § 1141(d)(2).

## Count 19 — Denial of discharge Code § 727(a), against MSG.

252.    Plaintiffs incorporate the foregoing paragraphs of this Complaint into this section of the Complaint as if fully set forth verbatim herein.

253.    MSG has undertaken one or more of the offenses described in Code § 727(a)(2),(3) and/or (4).

254.    Accordingly, the Court should deny the discharge of MSG pursuant to Code § 727(a) and applicable in this case under Code § 1141(d)(3)(C).

## Count 20 — Attorney Fees, against MSG and G&G.

255.    Defendant's actions necessitated Pritchard retaining an attorney and Pritchard has incurred and continues to incur attorney fees and expenses. Plaintiffs are entitled to recover reasonable and necessary attorney fees and costs under the Uniform Declaratory Judgments Act, § 37.001 to 37.011 of the Texas Civil Practice and Remedies Code, Texas Property Code § 114.064, and Texas Business Organizations Code § 153.405, and Plaintiffs are entitled to

recover from Defendant its reasonable and necessary attorney's fees, expert witness fees, costs of copies for depositions, and costs of court under Texas Business & Commerce Code § 27.01(e).

256.    Plaintiffs otherwise request that the Court award attorneys' fees and expenses to the extent permitted by applicable law.

## CONDITIONS PRECEDENT

257.    All conditions precedent to Pritchard's claim for relief have been performed or have occurred.

## CONCLUSION AND PRAYER

WHEREFORE, Plaintiffs respectfully request that the Defendants be cited to appear and answer, and Plaintiffs request upon final adjudication by the Court that the Court enter judgment in favor of Plaintiff's and order, adjudged, and decree that:

1. actual damages and exemplary damages be awarded to Plaintiffs, Galmor-FLP, Galmor-GP, and/or the Trusts against Michael Stephen Galmor actual damages and exemplary damages with respect to the Homeplace transaction;

2. the rescission of the instruments that effectuated the Homeplace transaction;

3. the imposition of a constructive trust with respect to the Homeplace transaction as requested above;

4. actual damages and exemplary damages be awarded to Plaintiffs, Galmor-FLP, Galmor-GP, and/or the Trusts against Michael Stephen Galmor actual damages and exemplary damages with respect to the Gin Yard and Miller Property transaction;

5. the rescission of the instruments that effectuated the Gin Yard and Miller Property transaction;

6. the imposition of a constructive trust with respect to the Gin Yard and Miller Property transaction as requested above;

7. alternatively, that the instruments effectuating the Homeplace transaction Gin Yard and Miller Property transaction, and the transactions themselves, are void due to forgery and/or undue influence;

8. alternatively, that the instruments effectuating the Homeplace transaction Gin Yard and Miller Property transaction, and the transactions themselves, are void due to the breaches of fiduciary duty of Michael Stephen Galmor;

9.      alternatively, that the purported conveyance of the Homeplace property was not effective;

10.     that the Homeplace does not constitute property of the estate of Michael Stephen Galmor;

11.     Michael Stephen Galmor is not entitled to exempt the Homeplace as his homestead under the Code and/or under Texas law;

12.      actual damages and exemplary damages be awarded to Plaintiffs, Galmor-FLP, Galmor-GP, and/or the Trusts against Michael Stephen Galmor due to the breaches of fiduciary duty of Michael Stephen Galmor;

13.     actual damages be awarded to Plaintiffs, Galmor-FLP, Galmor-GP, and/or the Trusts against Michael Stephen Galmor and Galmor's/G&G Steam Service, Inc., Jointly and severally, on account of the Extracted Materials, theft (both, law theft and liability under the Texas Theft Liability Act), and when he had received as set forth above;

14.     that the discharge of Michael Stephen Galmor be accepted with respect to the damages awarded herein pursuant to Code § 523 as set forth above;

15.     that the discharge of Michael Stephen Galmor be denied overall pursuant to Code § 727 as set forth above;

16.     Plaintiffs are entitled to an award attorneys' fees and all expenses of representation against Michael Stephen Galmor and Galmor's/G&G Steam Service, Inc. as set forth above; and

17.     Plaintiffs otherwise entitled to judgment as requested in the various claims and/or causes of action set forth above, and that the Plaintiffs are entitled to the various remedies requested above.

Plaintiffs respectfully request that the Court award to Plaintiffs such other and further relief to which they are entitled otherwise at law or in equity.

*{remainder of page intentionally blank}*

Dated: September 4, 2018

Respectfully submitted:

YOUNG & NEWSOM, P.C.
Jeremi K. Young
State Bar No. 24013793
Collin J. Wynne
State Bar No. 24068815
1001 S. Harrison, Suite 200
Amarillo, Texas 79101
Telephone: (806) 331-1800
Facsimile: (806) 398-9095
Email: jyoung@youngfirm.com
collin@youngfirm.com


By: /s/ Jeremi K. Young* _____
Jeremi K. Young

- and -

WEYCER, KAPLAN, PULASKI & ZUBER, P.C.

By: ___/s/ Jeff Carruth_____
   JEFF CARRUTH (TX SBN:. 24001846)
   3030 Matlock Rd., Suite 201
   Arlington, Texas 76105
   Telephone: (713) 341-1158
   Fax: (866) 666-5322
   E-mail: jcarruth@wkpz.com

**ATTORNEYS FOR LESLIE PRITCHARD
ET AL. PLAINTIFFS**

*\* Signature by permission by /s/ Jeff Carruth*

**SEE ADV. NO. 18-02010, DOCKET NO. 1 FOR INTERNAL EXHIBITS TO THE COMPLAINT, EXHIBIT 001 TO THIS ANSWER**

**EXHIBIT 002**

## AMENDMENT AND RATIFICATION OF
## COMPROMISE AND SETTLEMENT AGREEMENT

The undersigned agree to amend and supplement the Compromise and Settlement Agreement ("Settlement Agreement") originally signed over August 3-7, 2019, attached hereto, as follows:

1. The Settlement Agreement will be binding on and fully effective between and among the undersigned parties who signed the Settlement Agreement between August 3-7, 2019, who agree to this Amendment and Ratification;

2. The undersigned parties agree that the Settlement Agreement is amended to delete any and all references to Randy Mark "Rudas" Galmor in the Settlement Agreement including but not limited to in the following Sections of the Settlement Agreement: 1.03; 2.41; 2.42; 4.04b, 4.04c; however, Rudas shall retain his right to an equal distribution as a remaining beneficiary of the Galmor Trusts under Section 4.03;

3. The Effective Date of the Settlement Agreement and this Amendment and Ratification shall be September 13, 2019;

4. The releases in the Settlement Agreement are effective between the parties as of the Effective Date in this affirmation. The releases in the Settlement Agreement shall apply to and fully release the parties' for acts, omissions, claims and causes of action arising after the original signing of the Settlement Agreement and up to the Effective Date;

5. All the transactions that are to be accomplished by the Settlement Agreement itself are effective as of the Effective Date in this affirmation;

6. Effective as of the signing of this Affirmation by Leslie Pritchard and Traci Coleman, Michael Stephen Galmor resigns as manager of Galmor Management, LLC and from his other capacities as stated in the Settlement Agreement;

7. The undersigned consent to Kent Ries managing the liquidation of GFLP property in the manner described in the Settlement Agreement under the supervision of the Bankruptcy Court and consent to Kent Ries executing any documents necessary to close such sales of GFLP property

_____     Date: _____
Michael Stephen Galmor,
In all his capacities under the Settlement Agreement

_____     Date: 10/8/19
Leslie Pritchard

_____     Date: _____
Traci Coleman

# AMENDMENT AND RATIFICATION
# COMPROMISE AND SETTLEMENT AGREEMENT

The undersigned agree to amend and supplement the Compromise and Settlement Agreement ("Settlement Agreement") originally signed over August 3-7, 2019, attached hereto, as follows:

1  The Settlement Agreement will be binding on and fully effective between and among the undersigned parties who signed the Settlement Agreement between August 3-7, 2019, who agree to this Amendment and Ratification;

2  The undersigned parties agree that the Settlement Agreement is amended to delete any and all references to Randy Mark "Rudas" Galmor in the Settlement Agreement including but not limited to in the following Sections of the Settlement Agreement: 1.03; 2.41; 2.42; 4.04b, 4.04c; however, Rudas shall retain his right to an equal distribution as a remaining beneficiary of the Galmor Trusts under Section 4.03;

3  The Effective Date of the Settlement Agreement and this Amendment and Ratification shall be September 13, 2019;

4  The releases in the Settlement Agreement are effective between the parties as of the Effective Date in this affirmation. The releases in the Settlement Agreement shall apply to and fully release the parties' for acts, omissions, claims and causes of action arising after the original signing of the Settlement Agreement and up to the Effective Date;

5  All the transactions that are to be accomplished by the Settlement Agreement itself are effective as of the Effective Date in this affirmation;

6  Effective as of the signing of this Affirmation by Leslie Pritchard and Traci Coleman, Michael Stephen Galmor resigns as manager of Galmor Management, LLC and from his other capacities as stated in the Settlement Agreement;

7  The undersigned consent to Kent Ries managing the liquidation of GFLP property in the manner described in the Settlement Agreement under the supervision of the Bankruptcy Court and consent to Kent Ries executing any documents necessary to close such sales of GFLP property

_____     Date: 10-30-19

Michael Stephen Galmor,
In all his capacities under the Settlement Agreement


_____     Date: _____

Leslie Pritchard

_____     Date: 10-8-19
Traci Coleman

# AMENDMENT AND RATIFICATION OF
## COMPROMISE AND SETTLEMENT AGREEMENT

The undersigned agree to amend and supplement the Compromise and Settlement Agreement ("Settlement Agreement") originally signed over August 3-7, 2019, attached hereto, as follows:

1.  The Settlement Agreement will be binding on and fully effective between and among the undersigned parties who signed the Settlement Agreement between August 3-7, 2019, who agree to this Amendment and Ratification;

2.  The undersigned parties agree that the Settlement Agreement is amended to delete any and all references to Randy Mark "Rudas" Galmor in the Settlement Agreement including but not limited to in the following Sections of the Settlement Agreement: 1.03; 2.41; 2.42; 4.04b, 4.04c; however, Rudas shall retain his right to an equal distribution as a remaining beneficiary of the Galmor Trusts under Section 4.03;

3.  The Effective Date of the Settlement Agreement and this Amendment and Ratification shall be September 13, 2019;

4.  The releases in the Settlement Agreement are effective between the parties as of the Effective Date in this affirmation. The releases in the Settlement Agreement shall apply to and fully release the parties' for acts, omissions, claims and causes of action arising after the original signing of the Settlement Agreement and up to the Effective Date;

5.  All the transactions that are to be accomplished by the Settlement Agreement itself are effective as of the Effective Date in this affirmation;

6.  Effective as of the signing of this Affirmation by Leslie Pritchard and Traci Coleman, Michael Stephen Galmor resigns as manager of Galmor Management, LLC and from his other capacities as stated in the Settlement Agreement;

7.  The undersigned consent to Kent Ries managing the liquidation of GFLP property in the manner described in the Settlement Agreement under the supervision of the Bankruptcy Court and consent to Kent Ries executing any documents necessary to close such sales of GFLP property

_____                     Date: 10-30-19
Michael Stephen Galmor,
In all his capacities under the Settlement Agreement

_____                     Date: 10|8|19
Leslie Pritchard

_____                     Date: _____
Traci Coleman

## AMENDMENT AND RATIFICATION OF
## COMPROMISE AND SETTLEMENT AGREEMENT

The undersigned agree to amend and supplement the Compromise and Settlement Agreement ("Settlement Agreement") originally signed over August 3-7, 2019, attached hereto, as follows:

1       The Settlement Agreement will be binding on and fully effective between and among the undersigned parties who signed the Settlement Agreement between August 3-7, 2019, who agree to this Amendment and Ratification;

2       The undersigned parties agree that the Settlement Agreement is amended to delete any and all references to Randy Mark "Rudas" Galmor in the Settlement Agreement including but not limited to in the following Sections of the Settlement Agreement: 1.03; 2.41; 2.42; 4.04b, 4.04c; however, Rudas shall retain his right to an equal distribution as a remaining beneficiary of the Galmor Trusts under Section 4.03;

3       The Effective Date of the Settlement Agreement and this Amendment and Ratification shall be September 13, 2019;

4       The releases in the Settlement Agreement are effective between the parties as of the Effective Date in this affirmation. The releases in the Settlement Agreement shall apply to and fully release the parties' for acts, omissions, claims and causes of action arising after the original signing of the Settlement Agreement and up to the Effective Date;

5       All the transactions that are to be accomplished by the Settlement Agreement itself are effective as of the Effective Date in this affirmation;

6       Effective as of the signing of this Affirmation by Leslie Pritchard and Traci Coleman, Michael Stephen Galmor resigns as manager of Galmor Management, LLC and from his other capacities as stated in the Settlement Agreement;

7       The undersigned consent to Kent Ries managing the liquidation of GFLP property in the manner described in the Settlement Agreement under the supervision of the Bankruptcy Court and consent to Kent Ries executing any documents necessary to close such sales of GFLP property

_____                    Date: _____
Michael Stephen Galmor,
In all his capacities under the Settlement Agreement


_____                    Date: _____
Leslie Pritchard

_Traci Coleman_                                     Date: 10-8-19
Traci Coleman

## COMPROMISE AND SETTLEMENT AGREEMENT

### I. Parties

The following are the parties (collectively, the "Parties") to this Compromise, Settlement, and Release Agreement.

1.01    Michael Stephen Galmor, a natural person ("MSG");

1.02    Traci Marie Galmor Wilson ("Traci");

1.03    Randy Mark "Rudas" Galmor ("Rudas");

1.04    Leslie Donnette Galmor Pritchard ("Pritchard");

1.05    The Galmor Trusts, as defined below, by and through Michael Stephen Galmor, Trustee;

1.06    Estate of Shirley Jo Galmor, Deceased;

1.07    Galmor Family Limited Partnership, a Texas limited partnership ("GFLP");

1.08    Galmor Management, LLC, a Texas limited liability company ("Galmor GP").

### II. Rules of Construction and Definitions

2.01    Party names and terms are defined under Article I of this Agreement.

2.02    All exhibits referenced and described in this Agreement are incorporated by reference herein as if fully set forth verbatim.

2.03    Defined terms which are not a proper noun need not be capitalized in order to carry the meaning provided in this Article II of this Agreement.

2.04    Unless otherwise defined herein, word shall have the same meaning as used in Code § 101 (as "Code" is defined below).

2.05    "Adversary Proceeding" shall mean and refer to Adv. No. 18-02010, *Leslie Pritchard, Individually and/or Derivatively on behalf of Estate of Shirley Jo Galmor, Galmor Family Limited Partnership, Galmor Management LLC, Bobby Don and Shirley Jo Galmor Living Trust, Galmor Family Trust, and Galmor Contribution Trust, Plaintiff(s) v. Michael Stephen Galmor and Galmor's/G&G Steam Service, Inc.,* in the in the United States Bankruptcy Court for the Northern District of Texas, Amarillo Division, and including if and when applicable any appeals or derivative proceedings.

2.06    "Agreement" shall mean and refer to this Compromise, Settlement, and Release Agreement.

2.07      "<u>Bankruptcy Cases</u>" shall mean and refer to the MSG Case and the G&G Case.

2.08      "<u>Bankruptcy Court</u>" shall mean and refer to the United States Bankruptcy Court for the Northern District of Texas, Amarillo Division, which Court presided over the Bankruptcy Cases.

2.09      "<u>Claim</u>" or "<u>Claims</u>" shall mean and refer to any "claim" as defined in Code § 101(5)[1] and includes any Setoff, right, remedy, fact, issue, or defense with respect to any such Claim.

2.10      "<u>Code</u>" shall mean and refer to the United States Bankruptcy Code, Title 11 of the United States code, 11 U.S.C. § 101 et seq.

2.11      "<u>Combined Assets</u>" shall mean and refer to all property, Claims, and/or interests of any kind or nature of the Probate Estates, the Galmor Trusts, GFLP, and Galmor GP.

2.12      "<u>Combined Interests</u>" shall mean and refer to the Combined Assets, the Probate Estates, the Galmor Trusts, GFLP, and Galmor GP.

2.13      "<u>Designated Auctioneer</u>" shall mean and refer to Assiter Auctioneers.

2.14      "<u>Designated Broker</u>" shall mean and refer to the broker to which the parties agree by August 12, 2019.

2.15      "<u>Document</u>" shall mean and refer to shall mean and include all documents and tangible things to the very broadest extent included within the scope of the Rules, including, but not limited to, the originals and all drafts and copies, together with any annotations or highlighted copies containing all or part of the information requested, in the possession, custody or control of a party, a party's attorneys, representative, employees, agents, or any other natural person or business or legal entity acting or purporting to act for or on a party's behalf, or their respective Personnel as the case may be. Also, the term "Document" or "writing" means any medium whatsoever, including all electronic, recorded and digital media of any kind, upon which intelligence or information can be recorded, or retrieved, and includes, without limitation, the original and each copy, regardless of origin and location, of any written material, correspondence, electronic mail, text or SMS messages, chat sessions, note file, book, pamphlet, printout, chart, record, report, periodical, letter, memorandum, (including any memorandum or report of a meeting or conversation), invoice, bill, order form, receipt, financial statement, accounting entry, diary, draft, working paper,

---

[1] Code § 101(5) defines "claim" as:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

chart, paper, print, drawing, sketch, graph, index, list, and any written, recorded, transcribed, punched, taped, filmed or graphic matter whatsoever, however produced or reproduced, which is in your possession, custody, or control or which was, but is no longer, in Your possession, custody, or control.   The term "Document" or "writing" shall also include all copies or drafts of Documents by whatever means made, including specifically but not exclusively, those copies bearing commentary or notations not appearing on the original.

2.16    "<u>Effective Date</u>" shall mean and refer to the first date of execution of this Agreement by all Parties to this Agreement.

2.17    "<u>External Claims</u>" shall mean and refer to any Claims of any party asserted against the Combined Assets or the Combined Interests, or any combination or subset thereof, including any Claims relating to or asserted against the G&G Estate and/or the MSG Estate that relate to and/or could affect in any way the Combined Assets and/or the Combined Interests.

2.18    "<u>G&G Case</u>" shall mean and refer to Case No. 18-20210, *In re Galmor's/G&G Steam Service, Inc.*, pending in the Bankruptcy Court.

2.19    "<u>G&G Estate</u>" shall mean and refer to bankruptcy estate created under the Code with respect to Galmor's/G&G Steam Service, Inc. and/or the G&G Case.

2.20    "<u>Galmor GP</u>" shall mean and refer to Galmor Management, LLC, a Texas limited liability company and the general partner of GFLP.

2.21    "<u>Galmor Trusts</u>" shall mean and refer to the (i) The Bobby Don and Shirley Jo Galmor Living Trust, created by trust instrument dated July 20, 2005, and as amended by amendments on February 2, 2007, December 20, 2010, and October 28, 2011; (ii) The Galmor Family Trust created on April 3, 2013, upon the death of Bobby Don Galmor, pursuant to Part Three, Article Second of the Trust Instrument of the Living Trust as Amended; (iii) The Galmor Contribution Trust created on April 3, 2013, upon the death of Bobby Don Galmor, pursuant to Part Three, Article Second of the Trust Instrument of the Living Trust as Amended, and as set forth in the Exhibits to the Original Complaint; and any other trust created pursuant to The Bobby Don and Shirley Jo Galmor Living Trust, as amended.

2.22    "<u>Galmor Trust Mineral Interests</u>" shall mean and refer to any Mineral Interests owned by the Galmor Trusts.

2.23    "<u>GFLP</u>" shall mean and refer to Galmor Family Limited Partnership, a Texas limited partnership, and when the context requires shall also include and/or mean and refer to its general partner, Galmor Management, LLC, a Texas limited liability company.

2.24    "<u>GFLP Mineral Interests</u>" shall mean and refer to any Mineral Interests owned by GFLP.

2.25    "<u>Homeplace</u>" shall mean and refer to certain real property consisting of a 175 acre tract of land and improvements thereon and commonly referred to as 6535 Highway 83, Shamrock, Texas 79079.

2.26    "<u>Homeplace Debt</u>" shall mean and refer to that debt owed by MSG to the Galmor Trusts arising from his purchase of an interest in the Homeplace, secured by the December 10, 2014 Deed of Trust recorded at Volume 697, Pages 92-99 of the Wheeler County Texas property records.

2.27    "<u>Lis Pendens Suit</u>" shall mean and refer to Cause No. 13854, *Galmor Family Limited Partnership v. Leslie Pritchard,* in the 31st District Court, in and for Wheeler County, Texas

2.28    "<u>Mineral Interests</u>" shall mean and refer to any interest in any severed mineral interest or severed oil and gas interest including any lease, royalty, well, working interest, well bore interest, overriding royalty interest, or equity position and all current receivables arising from such interests.

2.29    "<u>MSG Case</u>" shall mean and refer to Case No. 18-20209, *In re Michael Stephen Galmor*, pending in the Bankruptcy Court.

2.30    "<u>MSG Estate</u>" shall mean and refer to bankruptcy estate created under the Code with respect to Michael Stephen Galmor and/or the MSG Case.

2.31    "<u>MSG</u>" shall mean and refer to Michael Stephen Galmor.

2.32    "<u>MSG Mineral Interests</u>" shall mean and refer to any Mineral Interests devised or distributed to MSG by the Galmor Trusts or the Estate of Shirley Jo Galmor, Deceased, or devised to MSG by the Last Will and Testament of Shirley Jo Galmor dated June 14, 2014 under a power of appointment.

2.33    "<u>Original Complaint</u>" shall mean and refer to Docket No. 1 in the Adversary Proceeding.

2.34    "<u>Petition Date</u>" shall mean and refer to June 19, 2019, the date that both Bankruptcy Cases commenced.

2.35    "<u>Post-Petition</u>" or "<u>Postpetition</u>" shall refer to the individual rights and interests of MSG existing after the Petition Date.

2.36    "<u>PPOC</u>" or "<u>PPOCs</u>" shall mean and refer to the proofs of claims filed by Pritchard in the MSG Case (Proof of Claim No. 15) and the G&G Case (Proof of Claim No. 32), and any amendments and/or supplements thereto.

2.37    "<u>Pritchard Parties</u>" shall mean and refer to (i) Pritchard, (ii) Traci, and (iii) Leslie Pritchard on behalf of decedent Shirley Jo Galmor, and individually and/or derivatively on behalf of the behalf of Estate of Shirley Jo Galmor, Deceased, Galmor Family Limited Partnership, a Texas limited partnership, Galmor Management LLC,

a Texas limited liability company, the Bobby Don and Shirley Jo Galmor Living Trust, the Galmor Family Trust, and the Galmor Contribution Trust.

2.38 "Probate" shall mean and refer to Cause No. 13,507, *In the Estate of Shirley Jo Galmor, Deceased*, pending in the 31st District Court of Wheeler County, TX.

2.39 "Probate Estates" shall mean the decedent estates of Bobby Don Galmor and/or Shirley Jo Galmor.

2.40 "Quarry Property" shall mean and refer to all interest in real property and locations from which the Combined Interests at any time prior to the Effective Date have extracted rock, sand, gravel, and other materials including particularly the rock quarry property in Wheeler County legally described as "All of Section Five (5), Block A-8, H&GN Ry. Co. Survey, Wheeler County, Texas."

2.41 "Released Parties" shall mean and refer to MSG, Pritchard, Traci, Rudas, the Probate Estates, the Galmor Trusts, GFLP, Galmor GP, and the G&G Estate and each of their respective successors and assigns, partners, parents, subsidiaries, affiliates, agents, attorneys, representatives, servants, officers, directors, employees, heirs, personal representatives, and all persons, natural or corporate, in privity with each or any thereof (whether or not specifically listed by name herein).

2.42 "Releasing Parties" shall mean and refer to MSG, Pritchard, Traci, Rudas, the Probate Estates, the Galmor Trusts, GFLP, and Galmor GP, and each of their respective successors and assigns. For the avoidance of doubt, the Parties agree that MSG is authorized to effectuate the releases herein on behalf of the Probate Estates, the Galmor Trusts, GFLP, and Galmor GP.

2.43 "Rule" shall mean and refer to the Federal Rules of Bankruptcy Procedure or a rule under the Federal Rules of Bankruptcy Procedure.

2.44 "Setoff" shall mean and refer to any Claim, counterclaim, crossclaim, third party claim, recoupment, setoff, or any other matter which may be used to reduce any External Claim.

2.45 "Subject Litigation" shall mean and refer to the Probate, the Will Contest, the Trustee Removal Action, the Adversary Proceeding, and the Lis Pendens Suit.

2.46 "Subject Mineral Interests" shall mean and refer to the MSG Mineral Interests, GFLP Mineral Interests, and Galmor Trusts Mineral Interests.

2.47 "Subject Real Property" shall mean and refer to the tracts of real property of the GFLP referenced and described in **Exhibit 001** attached hereto and incorporated by reference herein.

2.48 "Trustee Removal Action" shall mean and refer to Cause No. 13,765, *Leslie Pritchard, Individually and on behalf of Shirley Jo Galmor v. Michael Stephen Galmor, as Trustee of The Bobby Don and Shirley Jo Galmor Living Trust, as Trustee*

*of The Galmor Family Trust, and as Trustee of Galmor Contribution Trust* pending in the 31st District Court of Wheeler County, Texas.

2.49    "<u>Trustee Ries</u>" shall mean and refer to Kent Ries, the Chapter 7 Trustee under the Code appointed in the MSG Case and the G&G Case, and any successor trustee(s) who may be appointed in the either Bankruptcy Case

2.50    "<u>Will Contest</u>" shall mean and refer to the First Amended Answer and General Denial and Opposition to Issuance for Letters Testamentary, and claims therein, filed in Cause No. 13,507, *In the Estate of Shirley Jo Galmor, Deceased*, pending in the 31st District Court of Wheeler County, TX.

## III.    <u>Recitals</u>

3.01    This Agreement is the result of a mediation that occurred in Amarillo, Texas on June 11, 2019. Although each Party wishes to include and could include voluminous recitals, in the interest of time in effectively memorializing the substantive agreements reached at mediation, and in light of the substantial procedural history, the Parties have limited the Recitals.

3.02    The Parties wish to resolve all past and present disputes regarding the Combined Interests as set forth herein.

## IV.    <u>Acknowledgments and Agreement</u>

NOW THEREFORE, in consideration of the promises and agreements set forth in this Agreement, the Parties hereby agree to the following.

4.01.    <u>Disposition of Subject Litigation</u>

a.    ***<u>Dismissal of Will Contest and the Trustee Removal Action, and Disposition of the Probate and the Estate of Shirley Jo Galmor</u>***. The Parties shall enter this Agreement into the Will Contest, the Probate, and the Trustee Removal Action as a family settlement agreement and cause the dismissal with prejudice of the Will Contest and the Trustee Removal Action. The Parties agree that the Combined Interests will be distributed as if the Will Contest had never been filed, and pursuant to the terms herein rather than pursuant to any Will of Shirley Jo Galmor offered for probate.

b.    ***<u>Family Settlement Agreement Offered in Lieu of Probate of Will</u>***. The parties agree that no administration of the Estate is necessary and that the Last Will and Testament of Shirley Jo Galmor dated June 14, 2014, shall <u>not</u> be admitted to probate.

i.    As an alternate plan of distribution, the parties agree that the rest, residue, and remainder of the Estate of Shirley Jo Galmor shall be distributed in accordance with the terms of the Last Will and Testament of Shirley Jo Galmor dated June 14, 2014 as though set forth herein, with the sole

exception that any Mineral Interests shall be distributed to the Trustee of the Galmor Trusts as though in accordance with a valid Will of Shirley Jo Galmor admitted to probate and no testamentary power of appointment will be given effect as to Mineral Interests.

ii. The Parties to this Agreement expressly agree to not probate any other Will or Codicil of Shirley Jo Galmor other than the Last Will and Testament of Shirley Jo Galmor dated July 20, 2005 and the First Codicil thereto dated May 19, 2009, as may be necessary to effectuate the distribution of Mineral Interests to the Trustee of the Galmor Trusts in accordance with this Agreement or the Last Will and Testament of Shirley Jo Galmor dated June 14, 2014 as may be necessary to effectuate the distribution of property other than the Mineral Interests in accordance with this Agreement.

c. ***Dismissal of Adversary Proceeding.*** Pritchard and/or the Pritchard Parties shall take the steps necessary and dismiss the Adversary Proceeding with prejudice and to amend the PPOCs consistent with this Agreement and the approval of the Parties. Pritchard will withdraw or dismiss any objections to discharge, objections to exemptions, or other filings in the Bankruptcy Cases, all with prejudice, except for the amendment of the PPOCs as set forth above.

d. ***Removal of notices of Lis Pendens and Nonsuit of Lis Pendens Suit.*** Pritchard and/or the Pritchard Parties as applicable shall promptly remove any previously filed notice of lis pendens relating to the Subject Litigation, including but not limited to those notices of lis pendens recorded in vol. 741 page 214-216 of the Wheeler County property records. The parties will cause the dismissal with prejudice of the Lis Pendens Suit.

4.02. **Disposition of Homeplace Debt.**

a. In full and final satisfaction of the Homeplace Debt, MSG assigns, without recourse, to the Galmor Trusts the following: (1) any interest he may have in said Galmor Trusts, save for any interest received as a result of the Family Settlement Agreement contained within this Agreement; (2) any interest he may have in the MSG Mineral Interests; (3) any interest he may have in the GFLP; and (4) any Post-Petition claim he may have for compensation or reimbursement from the Galmor Trusts or GFLP, except as otherwise provided for in this Agreement. In the event any spendthrift provision in the Galmor Trusts prevents the above assignment of MSG's interest in the Galmor Trusts from being effective, MSG agrees to assign and does assign any distribution he receives from the Galmor Trusts back to the Galmor Trusts.

b. To whatever extent is necessary, the Parties authorize MSG to execute and record any deed to record his ownership of the Homeplace or release of liens necessary to release any liens of the Galmor Trusts in, to, and/or against the Homeplace, and hereby ratify MSG's actions on behalf of the Galmor Trusts in that regard. The

Parties shall execute any power of attorney reasonably requested by MSG to effectuate such releases.

c. The Parties shall not seek to charge MSG or the Homeplace for any External Claims asserted or sustained against the Combined Interests. The Pritchard Parties do not dispute that the Homeplace is the property and homestead of MSG.

d. The Parties need not defend nor indemnify MSG and/or the Homeplace with respect to any External Claims.

4.03. **Disposition of Trust Assets.** Upon full execution of the transactions provided for herein, all assets presently belonging to the Galmor Trusts, including such assets acquired by the Galmor Trusts pursuant to this Agreement and less any assets disposed of by the Galmor Trusts pursuant to this Agreement, are to then be immediately distributed to the beneficiaries of the Trusts as follows.

| 25% | Pritchard |
|-----|-----------|
| 25% | Rudas |
| 25% | Traci |
| 25% | Used by the Pritchard Parties for purposes of the defending and/or funding of a settlement of any External Claims, including any External Claims asserted by Trustee Ries, and any remainder of such 25% shall be distributed equally to Pritchard, Rudas, and Traci, and, if necessary, prosecuting any Claims against any third parties who are not Parties to this Agreement, with remaining funds being distributed equally to Pritchard, Traci, and Rudas. |

The Parties agree that due to MSG's assignment of any present or future interest he may have in the Galmor Trusts back to the Galmor Trusts, and his agreement to assign any distribution he receives back to the Galmor Trusts, the eventual distribution of the remaining property in the Galmor Trusts will be equally between Pritchard, Traci, and Rudas. This interest is subject to an External Claim that such trust interest is property of the MSG Estate and is to be defended by Pritchard and/or any of the Pritchard Parties pursuant to the following section of this Agreement.

4.04. **Continued Administration of the Combined Interests.**

a. ***Resignation of MSG from capacities within Combined Interests.*** Once all transactions provided for in this Agreement have been fully closed and executed, MSG shall resign and withdraw from his capacity as trustee of the Galmor Trusts, manager, partner, officer and/or director of GFLP, manager and/or officer of

Galmor GP, and any and all other similar capacities with respect to the Combined Interests.

b. ___*Management of Combined Interests*___. MSG, Pritchard, Traci, and Rudas agree to the terms of the governing documents of GFLP and Galmor GP and, but to the extent such governing documents conflict with this Agreement this Agreement shall control, and MSG, Pritchard, Traci, and Rudas amend such governing documents as necessary to comply with the terms of this Agreement. MSG, Pritchard, Traci, and Rudas agree that until the liquidation and winding up of the Combined Interests is accomplished, the Combined Interests will be managed in accordance with this Agreement. Pritchard is appointed as Manager of Galmor GP with the limited authority to take actions required under this Agreement. Pritchard is authorized and directed to wind up the GFLP and Galmor GP, and effectuate the distributions and transactions required under this Agreement.

c. ___*Management and Defense of Claims.*___ Pritchard is authorized and in her business judgment may investigate, defend, and/or compromise any Claims and/or External Claims asserted by any party against any of the Combined Interests and/or Combined Assets, and may investigate, prosecute , and/or compromise any Claims against any third parties who are not Parties to this Agreement. Any proposed settlement of such Claims and/or External Claims must be unanimously approved by Pritchard, Traci, and Rudas, and authorization for Pritchard to undertake any other actions not authorized herein must be unanimously granted by Pritchard, Traci, and Rudas.

d. ___*Books and Records of the Combined Interests*___. All Documents, books, records, computers, and other information of or relating to the Combined Interests shall be made available and/or turned over to Pritchard, including particularly without limitations all such things that have been or that currently exist at the Quarry Property. MSG hereby authorizes any party in possession of any books and records of or relating to the Combined Interests to provide such books and records to Pritchard. MSG will execute any documents necessary for any third parties to release Documents and information to Pritchard.

e. ___*Records Relating to Subject Mineral Interests*___. By this agreement, MSG authorizes and directs all operators and similar parties to provide to Pritchard and/or otherwise cause Pritchard to receive any and all books, records, and Documents relating to the Subject Mineral Interests. MSG will execute any documents necessary for any third parties to release Documents and information to Pritchard.

f. ___*Notice of Claims Against the Combined Interest, etc*___.

    i. Promptly upon learning of any lawsuit or other legal action against the Combined Interests, formally or informally, MSG shall notify the other parties herein of any lawsuit or other action or proceeding that is

commenced against or relating any of the Combined Interests, the Subject Real Property, and/or the Subject Mineral Interests.

    ii.  MSG warrants and represents that to date MSG has disclosed to Pritchard any pending lawsuits relating to Combined Interests, the Subject Real Property, and/or the Subject Mineral Interests known by MSG as of the Effective Date hereto.

  g.  ***Global Cooperation of MSG.***

    i.  MSG shall cooperate with Pritchard and/or the Pritchard Parties in the investigation and/or defense of the External Claims.

    ii.  MSG shall continue to perform any duties required of MSG under the Code with respect to the Bankruptcy Cases and/or the Bankruptcy Estates. These duties take precedence over MGS's cooperation with Pritchard in the event of a conflict.

4.05.    **Disposition of GFLP and Galmor GP Assets.** It is agreed by the Parties that the GFLP and Galmor GP shall wind up and terminate. Net proceeds of such winding up will be distributed to the interest-holders of GFLP and Galmor GP as such interest-holders exist after distribution of the property of the Galmor Trusts in accordance with this Agreement. Such distribution will be in accordance with their interests and governing documents for GFLP and Galmor GP. Assets of GFLP and Galmor GP will be disposed of in the following manner:

  a.  ***Disposition of Subject Real Property.***

    i.  The Designated Broker shall market and seek to sell the Subject Real Property for a period of six (6) months from the Effective Date (the "Marketing Period"), except for properties among the Subject Real Property for which a buyer has been identified prior to the Effective Date.

    ii.  Any contract presented by the Designated Broker to the Parties may be rejected only upon the combined veto of both MSG and Pritchard expressed in writing to the Designated Broker within five (5) calendar days of the presentation of any contract to MSG and Pritchard (the "Veto Procedures").

    iii.  If either, but not both, of MSG or Pritchard object to the contract presented by the Designated Broker, the Designated Broker may only proceed with the contract if the Designated Broker, in the Designated Broker's sole discretion, determines that such sale is commercially reasonable.

    iv.  Upon conclusion of the Marketing Period, any Subject Property not otherwise sold under this Agreement shall be submitted to the Designated Auctioneer for Auction according to the discretion of the auctioneer to

maximize value of the property, provided however, the Veto Procedures shall apply to any actions of the Designated Auctioneer.

v. MSG and Pritchard are designated as the co-representatives of the GFLP to execute and conclude any contracts between the GFLP and the Designated Broker and/or the Designated Auctioneer as are necessary to fulfill this Agreement.

vi. **<u>Neither MSG nor Pritchard may separately contract or execute any instrument without the other. THUS, EACH CONTRACT AND ANY OTHER INSTRUMENT RELATING TO THE SUBJECT REAL PROPERTY MUST INCLUDE THE SIGNATURES OF BOTH MSG AND PRITCHARD TO BE VALID AND BINDING.</u>**

vii. *IN THE EVENT OF ANY DISAGREEMENT AS TO THE ACCEPTANCE OF ANY BONA FIDE AND GOOD FAITH OFFERS AS TO ANY OF THE SUBJECT PROPERTY, THEN THE DESIGNATED BROKER SHALL CAST A TIE-BREAKING VOTE AND DECIDE THE QUESTION AS BETWEEN MSG AND PRITCHARD.*

viii. Should either the Designated Broker and/or the Designated Auctioneer resign or otherwise cease performance of their roles, MSG and Leslie, through their attorneys, shall appoint a replacement.

ix. MSG shall undertake any and all reasonable actions in order to obtain a forbearance of any action by any secured lender, lien holder, and/or judgment holder from taking any further action against any of the GFLP and/or the Subject Real Property in order to permit the disposition of the Subject Real Property under this Agreement. The Parties acknowledge that MSG has no control over the parties who might bring such claims or actions and that he makes no guarantees regarding what forbearance might be obtained.

x. Before any sales proceeds from the sale of the Subject Real Property are distributed to the parties herein, Great Plains Bank shall receive all available proceeds of the sale of the Subject Real Property until principal, interest, and late fees are paid in full for Notes 8411, 6145, 9900, and 3447, as more fully described in the Notice of Foreclosure Sale letter, dated July 15, 2019, from Johnathan H. Hinders, counsel for Great Plains Bank. Great Plains Bank's right to such proceeds from the sale of the Subject Real Property includes proceeds from the sale of all Subject Real Property and is not limited to Subject Real Property securing Notes 8411, 6145, 9900, and 3447.

b. ***Disposition of Cash of the Combined Interests.*** Cash currently in the possession of the Combined Interests may be used for the following purposes (the "Cash Distributions").

   i. An additional $25,000 to pay and fully satisfy any and all remaining attorney's fees owed or potentially owed, after the application of any retainer, by any of the Combined Interests to Lovell, Lovell, Isern & Farabough, LLP ("LLIF"). MSG is authorized to make this distribution. Any and all additional and/or subsequent attorney's fees of LLIF and/or Patrick Swindell relating to MSG and/or the matters addressed herein shall be the sole and exclusive individual responsibility of MSG. Upon receipt of this additional $25,000, LLIF agrees to release any liens on property of the Combined Interests. LLIF agrees to cooperate in any sale of property and satisfaction of prior liens.

   ii. $9,000 to MSG relating to activities of GFLP from March 18, 2019 to June 1, 2019. MSG is authorized to make this distribution.

   iii. A fee of three dollars per head per month to MSG cost to care for cattle on the gain currently situated on GFLP property, for the period from June 1, 2019 until the cessation of such cattle operation or August 31, 2019, whichever occurs first. Pritchard will cause the GFLP to make this distribution to MSG within 15 days of his submission of an invoice for this labor.

   iv. **AFTER AND BEYOND THE EXPENDITURES AUTHORIZED ABOVE, ANY AND ALL OTHER PRESENT OR FUTURE CASH, PROCEEDS, AND/OR OTHER FUNDS OR ASSETS OF THE COMBINED INTERESTS MAY BE USED ONLY IN ACCORDANCE WITH THIS AGREEMENT.**

c. **Disposition of GFLP Mineral Interests.** The GFLP Mineral Interests shall be distributed in-kind. Any distribution of such GFLP Mineral Interests distributed to Galmor GP shall also be distributed in kind.

d. **Letter Jackets.** MSG warrants that he does not possess or know the location of the high school letter jackets of Bobby Don Galmor and Shirley Jo Galmor. MSG agrees that should these jackets be found, he will give them to the Pritchard Parties.

4.06.    **Releases.** Each of the Releasing Parties hereby releases and forever discharges each of the Released Parties from any and all Claims, demands, debts, liabilities, accounts, costs, expenses, liens, causes of action, verdicts and judgments of any kind whatsoever, at common law or in equity, statutory, or otherwise, known or unknown, that each of the Releasing Parties have or might have, prior to the Effective Date against the Released Parties; *provided*, however,

a. the Releasing Parties do not hereby waive, relinquish, or release any rights or any of the obligations of the Released Parties arising out of this Agreement or any instruments executed in connection with this Agreement; and

b. **Notwithstanding the above releases or any other part of this Agreement, the Parties specifically agree that the facts on which the Subject Litigation was based remain in dispute, that this Agreement does not preclude any Party from asserting any legal or factual defense against any External Claim, and does not preclude any Party from asserting that any External Claim is, in whole or in part, invalid or subject to recoupment. Except as otherwise stated herein, this Agreement does not ratify any prior actions that may have been taken by any of the Parties on behalf of another Party. The above release is limited in scope to the extent necessary to make the provisions of this paragraph effective among the Parties only.**

4.07. **Notices.** Any notices that are required by this Agreement or that may otherwise be given regarding the subject matter of the Agreement shall be given to each of the parties at each party's last known addresses and to their respective attorney(s). Any notice to the attorneys may accomplished by email if also accompanied by a writing sent by fax and/or regular mail.

4.08. **Binding Effect**. This Agreement is fully integrated and contains the entire agreement of the parties with respect to the subject matter addressed herein and may not be contradicted except by a writing signed by the parties. The parties acknowledge that this Agreement is executed after negotiations between and among representatives of the parties hereto. The parties agree that: (a) each party and its attorneys have conducted their own investigation concerning the facts surrounding the matters covered by this Agreement and in voluntarily choosing to execute this Agreement, have relied upon their own analyses of such facts and not on any information furnished by any other party or their representatives; (b) there are no oral or other written agreements concerning the subject matter of this Agreement; and (c) any right to rely on any oral or written statement of any party or any failure of any party to state any fact is expressly waived and released, it being the intent of the parties hereto to waive any claims for fraudulent inducement. If an ambiguity or question of intent or interpretation arises, the Agreement will be construed as if drafted jointly by the parties and no presumption or burden of proof will arise favoring or disfavoring any party because of the authorship of any provision of the Agreement. This Agreement is binding upon and inures to the benefit of each of the parties and their respective partners, parents, subsidiaries, affiliates, agents, attorneys, representatives, servants, officers, directors, employees, heirs, and personal representatives. This Agreement and the releases hereby granted are personal to the parties hereto and are not intended to create any right in any person who is not a party to this Agreement, except as otherwise set forth herein. The parties are legally competent to execute this Agreement.

4.09. **Miscellaneous.** Each Party shall bear, pay, and discharge all of their own expenses (including, but not limited to, attorneys' fees, court costs and other expenses) incurred

in connection with, arising from and relating to the disputes, litigation referenced herein, the additional transactions referenced in this Agreement, and the negotiation, execution, and performance of this Agreement. Each of the parties shall execute and deliver (and shall cooperate in the execution and delivery of) all the documents reasonably necessary to evidence or perfect the terms of this Agreement. This Agreement shall be construed under and governed by the laws of the State of Texas. Venue for any dispute arising out of this Agreement shall be the Courts of Wheeler County, Texas. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which shall constitute one Agreement. The parties further agree that copies of this Agreement and any of the attached Exhibits, including any facsimile copies or .pdf file copies with signatures, shall be binding and treated as original agreements. The paragraph headings contained in this Agreement are for convenience only. Whenever appropriate, the masculine gender may include the feminine or neuter, the singular, the plural, and vice versa. Should any portion(s) of this Agreement be declared to be illegal or unenforceable by a court of competent jurisdiction, then the remaining portions of this Agreement not affected by such judicial declaration shall remain in full force and effect and thereby bind the parties. Any deadline falling on a Saturday, Sunday, or state or federal legal holiday shall be extended to the immediate next day which is not a Saturday, Sunday, or legal holiday.

4.10. **Attorneys' Fees in Future Disputes.** Notwithstanding anything herein to the contrary, the parties acknowledge and agree that should any party to this Agreement be required to institute legal proceedings to enforce or interpret any of the provisions of this Agreement, the prevailing party in such legal proceeding shall recover from the non-prevailing party reasonable attorneys' fees, including fees on appeal, as well as court costs and expenses.

4.11. **Further Assurances.** Following the execution of this Agreement, the Parties covenant and agree to execute such other and further documents as may be necessary to evidence, fulfill, implement, and/or execute the obligations of this Agreement.

4.12. The terms of this Agreement are contractual and are not mere recitals.

*{continued on following sheet}*

MICHAEL STEPHEN GALMOR

Dated: __8/5/19_____, 2019


LESLIE GALMOR PRITCHARD                    TRACI MARIE GALMOR WILSON


Dated: _____, 2019       Dated: _____, 2019

RANDY MARK "RUDAS" GALMOR


Dated: _____, 2019


*{continued on following sheet}*

GALMOR FAMILY LIMITED PARTNERSHIP, a Texas limited partnership

BY: GALMOR MANAGEMENT, LLC, a Texas limited liability company, its General Partner

By: _____

Title: _Manager/Managing Member_

Dated: _8/5/19_____, 2019

GALMOR MANAGEMENT, LLC, a Texas limited liability company

By: _____

Title: _Manager/Managing Member_

Dated: _8/5/19_____, 2019

THE BOBBY DON AND SHIRLEY JO GALMOR LIVING TRUST

By: _____

Title: _Trustee_

Dated: _8/5/19_____, 2019

THE GALMOR FAMILY TRUST

By: _____

Title: _Trustee_

Dated: _8/5/19_____, 2019

THE GALMOR CONTRIBUTION TRUST

By: _____

Title: _Trustee_

Dated: _8/5/19_____, 2019

_{continued on following sheet}_

MICHAEL STEPHEN GALMOR

Dated: _____, 2019

LESLIE GALMOR PRITCHARD

TRACI MARIE GALMOR WILSON

Dated: _____8/3/19_____, 2019

Dated: _____, 2019

RANDY MARK "RUDAS" GALMOR

Dated: _____, 2019

*{continued on following sheet}*

DRAFT SUBJECT TO REVIEW, REVISION, WITHDRAWAL, AND CLIENT APPROVAL

MICHAEL STEPHEN GALMOR

By: _____
Title: _____
Dated: _____, 2018

LESLIE GALMOR PRITCHARD

By: _____
Title: _____
Dated: _____, 2018

TRACI MARIE GALMOR ~~WILSON~~ *Coleman*

By: *Traci Galmor Coleman*
Title: _____
Dated: _____8-7-19_____, 2018

RANDY MARK "RUDAS" GALMOR

By: _____
Title: _____
Dated: _____, 2018

*{continued on following sheet}*

**MICHAEL STEPHEN GALMOR**

_____

Dated: _____, 2019


**LESLIE GALMOR PRITCHARD**                    **TRACI MARIE GALMOR WILSON**


_____              _____

Dated: _____, 2019            Dated: _____, 2019


**RANDY MARK "RUDAS" GALMOR**


_____

Dated: _____, 2019


_{continued on following sheet}_

**EXHIBIT 001 — SCHEDULE OF SUBJECT REAL PROPERTY**

Section 4, Block A-8 (560 acres, "The Flats)
Section 5, Block A-8 (640 acres, "The Flats")
North of Twitty: Section 9, Block A-8 (299.45 acres, "North of Twitty") in and in
Section 10, Block A-8 (283.88 acres, "North of Twitty")
Section 11, Block A-8 (318 acres, "The Pitcock")
Section 59, Block 17 (640 acres, "The Bradley")
Section 67, Block A-5 (160 acres, "The Turnbow")
Section 76, Block A-5 (100 acres, "Mobeetie Property"

**EXHIBIT 003**

**Jeff Carruth**

| | |
|---|---|
| **From:** | Collin Wynne <collin@youngfirm.com> |
| **Sent:** | Friday, May 31, 2019 11:49 AM |
| **To:** | Kent Ries |
| **Cc:** | Jeff Carruth; Jeremi Young |
| **Subject:** | Fwd: Mobeetie/Hancock |
| **Attachments:** | scan0262.pdf; ATT00001.htm |

Kent,

Please see attached Deed of Trust from Galmor FLP to MSG's lawyers, that we just became aware of. Thanks.

Sent from my iPhone

Begin forwarded message:

1

55692

## ABSTRACT OF JUDGMENT

THE STATE OF TEXAS

COUNTY OF RANDALL      VOL .745 PAGE 38

I, attorney of record for Judgment Plaintiff, FIRST STATE BANK OF MOBEETIE, certify that judgment was rendered in favor of FIRST STATE BANK OF MOBEETIE, against GALMOR FAMILY LIMITED PARTNERSHIP, of which judgment the following is a true and correct abstract:

| | |
|---|---|
| Name of each plaintiff in judgment: | FIRST STATE BANK OF MOBEETIE |
| Plaintiff's address is: | c/o REUBEN L. HANCOCK 7460 Golden Pond Place, Suite 200 Amarillo, Texas 79121 |

For each defendant in judgment:

| | |
|---|---|
| Name: | GALMOR FAMILY LIMITED PARTNERSHIP |
| Birth date: | N/A |
| Driver's license number: | N/A |
| If the address of each defendant is not shown in the suit, the nature of citation and the date and place of service of citation for each defendant: | N/A |
| Address: | Unknown |
| If the judgment is for child support, the social security number: | N/A |
| Number of suit and Court in which judgment was rendered: | CAUSE NO. 13759; IN THE 31st DISTRICT COURT, WHEELER COUNTY, TEXAS |
| Date when judgment rendered: | March 18, 2019 |
| Amount for which judgment was rendered: | $73,857.84 |

160158 ABSTRACT OF JUDGMENT (Galmor Family Limited Partnership).wpd
2026 9.08.23                                                          1

| | | |
|---|---|---|
| Balance due upon judgment: | $73,857.84 as of March 18, 2019, plus additional post judgment interest and costs of court. | VOL .745 PAGE 39 |
| Rate of interest specified in judgment: | 18% per annum | |
| If the judgment is for arrearages in child support, the name and social security number, if any, of each child: | N/A | |

REUBEN L. HANCOCK
Attorney of Record for Plaintiff
State Bar No.: 08888520
Reuben L. Hancock, P.C.
7480 Golden Pond Place, Suite 200
Amarillo, Texas 79121
Tel.: (806) 373-1713
Fax: (806) 373-8400

BEFORE ME, the undersigned authority, on March 28, 2019, personally appeared REUBEN L. HANCOCK, who, being by me duly sworn, on oath stated that the information in the foregoing abstract of judgment is true and correct.



Notary Public, State of Texas

After recording, return to:

REUBEN L. HANCOCK
Reuben L. Hancock, P.C.
7480 Golden Pond Place, Suite 200
Amarillo, Texas 79121

STEVEN WEBSTER
Notary Public, State of Texas
Comm. Expires 02-07-2022
Notary ID 12868272-5

FILED FOR RECORD

2019 APR -1 PM 12: 31

MARGARET JORDAN
COUNTY CLERK
WHEELER COUNTY, TEXAS
BY Brenda Mitchell

190168 ABSTRACT OF JUDGMENT (Garner Family Limited Partnership).wpd
C3/0518 08:55                2

VOL 745 PAGE 13        55.686

**NOTICE OF CONFIDENTIALITY RIGHTS: If you are a natural person, you may remove or strike any of the following information from this instrument before it is filed for record in the public records: Your social security number or your drivers license number.**

## DEED OF TRUST

| | |
|---|---|
| **Effective Date:** | March 18, 2019 |
| **Grantor:** | GALMOR FAMILY LIMITED PARTNERSHIP, a Texas limited partnership |
| **Grantors' Mailing Address:** | |

> P.O. Box 349
> Shamrock, Texas 79079

| | |
|---|---|
| **Trustee:** | JOE L. LOVELL |
| **Trustee's Mailing Address:** | |

> Lovell, Lovell, Isern & Farabough, LLP
> 112 West 8th Avenue, Suite 1000
> Amarillo, Texas 79101-2314

| | |
|---|---|
| **Beneficiary:** | LOVELL, LOVELL, ISERN & FARABOUGH, LLP |
| **Beneficiary's Mailing Address:** | |

> 112 West 8th Avenue, Suite 1000
> Amarillo, Texas 79101-2314

**Obligation:**

**Effective Date:** March 18, 2019

**Obligation:** All sums for fees and expenses due to Lovell, Lovell, Newsom & Isern, L.L.P. and Lovell, Lovell, Isern & Farabough, LLP under its March 2019 Power of Attorney and Engagement Agreement with Debtor for legal services and expenses provided to Debtor in connection with Debtor's claims against Leslie Pritchard, and possibly others, regarding Notices Lis Pendens against Debtor's property.

**Maker:** Galmor Family Limited Partnership and its general partner, Galmor Management, LLC

DEED OF TRUST                                                                PAGE 1

VOL. 745 PAGE 14

Payee: LOVELL, LOVELL, ISERN & FARABOUGH, LLP

**Property (including any improvements):**

Surface only to the following tracts of land:

- All of the Southwest Quarter (SW/4) of Section 67, Block 17, H&GN Ry. Co. Survey, Wheeler, County, Texas

- All of Section 59, Block 17, H&GN Ry. Co. Survey, Wheeler County, Texas

- South Half (S/2) of Section 11, Block A-8, H&GN Ry. Co. Survey, Wheeler County, Texas

- All of Section 5, Block A-8, H&GN Ry. Co Survey, Wheeler County, Texas

- All of Section 4, Block A-8, H&GN Ry. Co Survey, Wheeler County, Texas, except the South Half of the Southeast Quarter (S/2 SE/4)

- 100 acres of the East Half (E/2) of the Northwest Quarter (NW/4) of Section 76, Block A-5, H&GN Ry. Co. Survey, Wheeler County, Texas

- A 299.45 acre tract out of the East Half (E/2) of Section 9, Block A-8, H&GN Ry. Co. Survey, Wheeler County, Texas, said tract of land being more specifically described by metes and bounds as follows:

  Survey of a 299.45 acre tract of land out of the E/2 of Section Block A-8, H&GN Ry. Co. Survey, Wheeler County, Texas as described in Vol. 11, Page 100 of the Deed Records of Wheeler County, Texas:

  BEGINNING at a set ½" rebar in the North right-of-way line of FM 592, which bears N. 0° 09' E., a distance of 61.4 feet and N. 89° 51' W., a distance of 688.88 feet from the common corner of Sections 3, 4, 9 and 10 all in said Block A-8;

  THENCE N. 89° 51' W., along the said North right-of-way line a distance of 1212.0 feet to a set ½" rebar with cap for a corner of this tract;

  THENCE N. 00° 09' E., a distance of 10.0 feet to a set ½" rebar with cap in the North right-of-way line of FM 592 for a corner of this tract; (R.O.W. widens 10.0 feet here);

  THENCE N. 89° 51' W., along the said North right-of-way line a distance of 744.62 feet tot a set ½" rebar with cap for a corner of this tract;

---

DEED OF TRUST                                                                 PAGE 2

VOL 745 PAGE 15

THENCE N. 00° 09' E., along the ½ section line a distance of 5209.2 feet to a set ½" rebar with cap for a corner of this tract;

THENCE S. 89° 51' E., along the north section line a distance of 2595.5 feet to a set ½" rebar with cap in the West right-of-way line of US Highway 83 for a corner of this tract being 50.0 feet west of the Northeast corner of said Section 9;

THENCE S. 00° 09' W., along the said West right-of-way line a distance of 3360.0 feet to a set ½" rebar with cap for a corner of this tract;

THENCE N. 89° 51' W., a distance of 362.0 feet to a set ½" rebar with cap for a corner of this tract;

THENCE S. 00° 09' W., a distance of 600.0 feet to a set ½" rebar with cap for a corner of this tract;

THENCE S. 89° 51' E., a distance of 362.0 feet to a set ½" rebar with cap in the West right-of-way line of US Highway 83 for a corner of this tract and being 50.0 feet west of the east section line of said Section 9 for a corner of this tract;

THENCE S. 00° 09' W., along the said West right-of-way line a distance of 660.0 feet to a set ½" rebar with cap for a corner of this tract;

THENCE N. 89° 51' W., a distance of 214.0 feet to a set ½" rebar with cap for a corner of this tract;

THENCE S. 00° 09' W., a distance of 247.5 feet to a set ½" rebar with cap for a corner of this tract;

THENCE N. 89° 51' W., distance of 424.88 feet to a set ½" rebar with cap for a corner of this tract;

THENCE S. 00° 09' W., a distance of 351.7 feet to the place of beginning and containing 299.45 acres of land. Basis of bearing for this survey is US Highway 83.

- A 293.68 acre tract of land out of the West Half (W/2) of Section 10, Block A-8, H&GN Ry. Co. Survey, Wheeler County, Texas, said tract of land being more specifically described by metes and bounds as follows:

Survey of a 293.68 acre tract of land out of the W/2 of Section 10, Block A-8, H&GN Ry. Co. Survey, Wheeler County, Texas, as described in Volume 12, Page 107 of the Deed Records of Wheeler County, Texas:

---

VOL 745 PAGE 16

BEGINNING at a set ½" rebar in the East right-of-way line of US 83, which bears
N. 0° 09' E., a distance of 50.0 feet from the common corner of Sections 3, 4, 9 and
10 all in said Block A-8;

THENCE N. 00° 09' E., along the said East right-of-way line a distance of 3825.8
feet to a set ½" rebar with cap for the northwest corner of this tract and being 50.0
feet east of the northwest corner of Section 10;

THENCE S. 89° 51' E., along the said north line of Section 10, a distance of 2599.5
feet to a set ½" rebar with cap for the northeast corner of this tract;

THENCE S. 00° 09' W., along the ⅓ section line a distance   of 5229.7 feet to a set
½" rebar with cap in the North right-of-way line of FM 592 for the southeast corner
of this tract;

THENCE N. 89° 51' W., a long the said right-of-way line a distance of 1266.6 feet
tot a set ½" rebar with cap for a corner of this tract;

THENCE N. 00° 09' E., a distance of 259.7 feet to a set ½" rebar with cap for a
corner of this tract;

THENCE N. 89° 51' W., a distance of 852.5 feet to a set ½" rebar with cap for a
corner of this tract;

THENCE S. 00° 09' W., a distance of 40.0 feet to a set ½" rebar with cap for a
corner of this tract;

THENCE N. 89° 51' W., a distance of 63.0 feet to a set ½" rebar with cap for a
corner of this tract;

THENCE N. 00° 09' E., a distance of 1043.8 feet to a set ½" rebar with cap for a
corner of this tract;

THENCE N. 89° 09' W., a distance of 208.7 feet to a set ½" rebar with cap for a
corner of this tract;

THENCE N. 00° 09' E., a distance of 104.4 feet to a set ½" rebar with cap for a
corner of this tract;

THENCE N. 89° 51' W., a distance of 208.7 feet to the place of beginning and
containing 293.68 acres of land.   Basis of bearing for this survey is US Highway
83.

VOL. **745** PAGE **17**

**Prior Lien(s) (including recording information):**

None.

**Other Exceptions to Conveyance and Warranty:**

All previously recorded leases, easements and reservations of record

For value received and to secure full payment of the Obligation, Grantor conveys all Grantor's interest in the Property to Trustee in trust. Grantor warrants and agrees to defend the title to the Property. If Grantor performs all the covenants and pay the Obligation according to their terms, this Deed of Trust shall have no further effect, and Beneficiary shall release it at Beneficiary's expense.

**Grantor's Duties:**

Grantor agrees to:

1. pay all taxes and assessments on the Property, when due;

2. defend title to the Property subject to the Other Exceptions and Conveyances to Warranty and preserve the lien's priority as it is established in this Deed of Trust;

3. if this is not a first lien, pay all prior lien notes that Grantor is personally liable to pay and abide by all prior lien instruments;

4. not grant any liens or interests in the Property which are not expressly made subordinate to Secured Party's liens;

5. pay all debts and liabilities reasonably necessary to prevent foreclosure or seizure of the Property; and

6. If the Property is sold or refinanced, all sums due to Beneficiary by Grantor shall then become due and payable.

**Beneficiary's Rights:**

1. Beneficiary may appoint in writing a substitute or successor Trustee, succeeding to all rights and responsibilities of Trustee.

2. If the proceeds of the Property or Liens are used to pay any debt secured by prior liens, Beneficiary is subrogated to all of the rights and liens of the holders of any debt so paid.

DEED OF TRUST                                                                                           PAGE 5

VOL 745 PAGE 18

3. Notwithstanding Obligation terms to the contrary, and unless applicable law prohibits, all payments received by Beneficiary from Grantor under the Obligation or this Deed of Trust may, at Beneficiary's discretion, be applied first to amounts payable under this Deed of Trust and then to amounts due and payable to Beneficiary under the Obligation, to be applied to late charges, principal, or interest in the order Beneficiary in its discretion determines.

4. If Grantor fails to perform any of Grantor's Obligations, Beneficiary may perform those Obligations and be reimbursed by Grantor on demand at the place where the Obligations are payable for any sums so paid, including reasonable attorneys' fees, plus interest on those sums from the dates of payment at the rate stated in the Obligation for matured, unpaid amounts. The sum to be reimbursed shall be secured by this Deed of Trust.

5. If Grantor defaults on the Obligation or fails to perform any of Grantor's Obligations, or if default occurs on a prior lien note or other instrument or liability, and the default continues after Beneficiary gives Grantor notice of the default and the time within which it must be cured, as may be required by law or by written agreement, then Beneficiary may:

a. declare the unpaid principal balance and earned interest on the Obligation immediately due;

b. request Trustee to foreclose this lien, in which case Beneficiary or Beneficiary's agent shall give notice of the foreclosure sale as provided by the Texas Property Code as then amended;

c. foreclose upon the entire interest of Debtor in the item of collateral; and

d. purchase the Property at any foreclosure sale by offering the highest bid and then have the bid credited on the Obligation.

6. Beneficiary may remedy any default without waiving it and may waive any default without waiving any prior or subsequent default.

**Default defined:**

"Default" is defined as a material breach of the Obligation by the Grantor. The Obligations described on page 1 hereof consists of sums to be earned and expenses to be advanced pursuant to the Attorneys' Employment Agreement between Grantors and Beneficiary dated March ___, 2019.

**Trustee's Duties:**

If requested by Beneficiary to foreclose this lien, Trustee shall:

1. either personally or by agent give notice of the foreclosure sale as required by the Texas Property Code as then amended;

DEED OF TRUST                                                                                   PAGE 6

VOL 745 PAGE 19

2.   sell and convey all or part of the Property to the highest bidder for cash with a general warranty binding Grantor, subject to prior liens and to other exceptions to conveyance and warranty; and

3.   from the proceeds of the sale, pay, in this order:

a.     expenses of foreclosure, including a reasonable hourly fee to the Trustee;

b.     to Beneficiary, the full amount of principal, interest, attorneys' fees, and other charges due and unpaid;

c.     any amounts required by law to be paid before payment to Grantor; and

d.     to Grantor, any balance.

**General Provisions:**

1.     If any of the Property is sold under this Deed of Trust, Grantor shall immediately surrender possession to the purchaser.  If Grantor fails to do so, Grantor shall become a tenant at sufferance of the purchaser, subject to an action for forcible detainer.

2.     Recitals in any Trustee's deed conveying the Property will be presumed to be true.

3.     Proceeding under this Deed of Trust, filing suit for foreclosure, or pursuing any other remedy will not constitute an election of remedies.

4.     This lien shall remain superior to liens later created even if the time of payment of all or part of the Obligation is extended or part of the Property is released.

5.     If any portion of the Obligation cannot be lawfully secured by this Deed of Trust, payments shall be applied first to discharge that portion.

6.     Grantor assigns to Beneficiary all sums payable to or received by Grantor from condemnation of all or part of the Property, from private sale in lieu of condemnation, and from damages caused by public works or construction on or near the Property.  After deducting any expenses incurred, including reasonable attorneys' fees, Beneficiary may release any remaining sums to the Grantor or apply such sums to reduce the unpaid balance of the Obligation. Beneficiary shall not be liable for failure to collect or to exercise diligence in collecting any such sums.

7.     Grantor assigns to Beneficiary, as collateral, and not absolutely, but subject to the terms of payment, all present and future receivables, royalty, bonus and other income and receipts from the Property.  This assignment shall become absolute upon default by Grantor in the performance of the Obligation hereby secured without further action by Beneficiary other than to

DEED OF TRUST                                                                                    PAGE 7

VOL 785 PG 20

give written notice to the respective Grantor of such default. Leases, receivables, and executive rights are hereby assigned. Grantor will apply any receivable proceeds, royalty, bonus and other income and receipts by it to payment of the Obligation and performance of this Deed of Trust, according to the terms of payment, but if the receivable proceeds, royalty, bonus and other income and receipts from the Property exceed the full amount finally due under the Obligation and Deed of Trust, Grantor may retain the excess. If Grantor defaults in payment of the Obligation or performance of this Deed of Trust, Beneficiary may terminate Grantor's license to collect and then as Grantor's agent may collect all receivable proceeds, royalty, bonus and other income accruing from the Property to Grantor's interest. Beneficiary neither has nor assumes any duties as lessor or landlord with respect to any occupant or lessee of the Property. Beneficiary may exercise Beneficiary's rights and remedies under this paragraph without taking possession of the Property. Beneficiary shall apply all receivable proceeds, royalty, bonus and other income and receipts collected under this paragraph first to expenses incurred in exercising Beneficiary's rights and remedies and then to each Grantor's duties under the Obligation and this Deed of Trust in the order determined by Beneficiary. Beneficiary is not required to act under this paragraph, and acting under this paragraph does not waive any of Beneficiary's other rights or remedies, nor shall it act as an election of remedies. If Grantor files a voluntary petition in bankruptcy, or if an order for relief is granted for an involuntary petition in bankruptcy against Grantor, Beneficiary's filing a proof of claim in bankruptcy will be tantamount to the appointment of a receiver under Texas law.

8.      Interest on the debt secured by this Deed of Trust shall not exceed the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged or received under law; any interest in excess of that maximum amount shall be credited on the principal of the debt or, if that has been paid, refunded. On any acceleration or required or permitted prepayment, any such excess shall be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal of the debt or, if the principal of the debt has been paid, refunded. This provision overrides other provisions in this and all other instruments concerning the debt.

9.      In no event may this Deed of Trust secure payment of any debt subject to chapters 342, 343, 345 or 346 of the Texas Finance Code or create a lien otherwise prohibited by law.

10.     When the context requires, singular nouns and pronouns include the plural.

11.     The term *Obligation* includes all extensions, additions and renewals of the June 5, 2013 fee agreement and all amounts secured by this Deed of Trust.

12.     Grantor may not transfer or hypothecate the Property without Beneficiary's prior written consent.

13.     This Deed of Trust shall bind, inure to the benefit of, and be exercised by successors in interest of all parties.

14.     If "Grantor" and "Borrower" are not the same person, the term Grantor includes each Borrower, whether singular or plural.

---

DEED OF TRUST                                                                                        PAGE 8

VOL. 745 PAGE 21

15.    Beneficiary shall give Grantor written notice of default before exercising any of Beneficiary's Remedies under the Security Agreement or this Deed of Trust, and each Grantor shall have ten days after notice is given in which to cure such default.  If the default is not cured within such ten day period, Grantor and each surety, endorser, and guarantor of the Obligation waive all demand for payment, presentation for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, protest, and notice of protest, to the extent permitted by law.

16.    Grantor agrees to pay reasonable attorney's fees, trustee's fees, and reasonable or necessary court costs and other costs of enforcing Beneficiary's rights under this Deed of Trust if this Deed of Trust is placed in the hands of an attorney for enforcement.

17.    If any provision of this Deed of Trust is determined to be invalid or unenforceable, the validity or enforceability of any other provision will not be affected.

GALMOR FAMILY LIMITED PARTNERSHIP, a Texas
limited partnership
By: Galmor Management, LLC, its General Partner

By: _____
Michael Stephen Galmor, its President

### ACKNOWLEDGMENT

STATE OF TEXAS            )
                          : ss
COUNTY OF POTTER          )

The foregoing instrument was acknowledged before me on the 18th day of March, 2019, by Michael Stephen Galmor, President of Galmor Management, LLC, a Texas limited liability company, General Partner of Galmor Family Limited Partnership, a Texas limited partnership, on behalf of said limited partnership.

_____
Notary Public, State of Texas

AFTER RECORDING RETURN TO:

Joe L. Lovell
LOVELL, LOVELL, ISERN & FARABOUGH, LLP
112 West 8th Avenue, Suite 1000
Amarillo, Texas 79101-2314

DEED OF TRUST        FILED FOR RECORD                         PAGE 9

1919 MAR 29  AM 11: 22

MARGARET FERGUSON
COUNTY CLERK
WHEELER COUNTY TEXAS

VOL 745 PAGE 13    55686

**NOTICE OF CONFIDENTIALITY RIGHTS:** If you are a natural person, you may remove or strike any of the following information from this instrument before it is filed for record in the public records: Your social security number or your drivers license number.

## DEED OF TRUST

**Effective Date:**    March 18, 2019

**Grantor:**    GALMOR FAMILY LIMITED PARTNERSHIP, a Texas limited partnership

**Grantors' Mailing Address:**

    P.O. Box 349
    Shamrock, Texas 79079

**Trustee:**    JOE L. LOVELL

**Trustee's Mailing Address:**

    Lovell, Lovell, Isern & Farabough, LLP
    112 West 8th Avenue, Suite 1000
    Amarillo, Texas 79101-2314

**Beneficiary:**    LOVELL, LOVELL, ISERN & FARABOUGH, LLP

**Beneficiary's Mailing Address:**

    112 West 8th Avenue, Suite 1000
    Amarillo, Texas 79101-2314

**Obligation:**

    Effective Date: March 18, 2019

    Obligation:    All sums for fees and expenses due to Lovell, Lovell, Newsom & Isern, L.L.P. and Lovell, Lovell, Isern & Farabough, LLP under its March ___, 2019 Power of Attorney and Engagement Agreement with Debtor for legal services and expenses provided to Debtor in connection with Debtor's claims against Leslie Pritchard, and possibly others, regarding Notices Lis Pendens against Debtor's property.

    Maker:    Galmor Family Limited Partnership and its general partner, Galmor Management, LLC

---

DEED OF TRUST    PAGE 1

VOL 745 PAGE 14

Payee:       LOVELL, LOVELL, ISERN & FARABOUGH, LLP

**Property (including any improvements):**

Surface only to the following tracts of land:

* All of the Southwest Quarter (SW/4) of Section 67, Block 17, H&GN Ry. Co. Survey, Wheeler, County, Texas

* All of Section 59, Block 17, H&GN Ry. Co. Survey, Wheeler County, Texas

* South Half (S/2) of Section 11, Block A-8, H&GN Ry. Co. Survey, Wheeler County, Texas

* All of Section 5, Block A-8, H&GN Ry. Co Survey, Wheeler County, Texas

* All of Section 4, Block A-8, H&GN Ry. Co Survey, Wheeler County, Texas, except the South Half of the Southeast Quarter (S/2 SE/4)

* 100 acres of the East Half (E/2) of the Northwest Quarter (NW/4) of Section 76, Block A-5, H&GN Ry. Co. Survey, Wheeler County, Texas

* A 299.45 acre tract out of the East Half (E/2) of Section 9, Block A-8, H&GN Ry. Co. Survey, Wheeler County, Texas, said tract of land being more specifically described by metes and bounds as follows:

Survey of a 299.45 acre tract of land out of the E/2 of Section Block A-8, H&GN Ry. Co. Survey, Wheeler County, Texas as described in Vol. 11, Page 100 of the Deed Records of Wheeler County, Texas:

BEGINNING at a set ½" rebar in the North right-of-way line of FM 592. which bears N. 0° 09' E., a distance of 61.4 feet and N. 89° 51' W., a distance of 688.88 feet from the common corner of Sections 3, 4, 9 and 10 all in said Block A-8;

THENCE N. 89° 51' W., along the said North right-of-way line a distance of 1212.0 feet to a set ½" rebar with cap for a corner of this tract;

THENCE N. 00° 09' E., a distance of 10.0 feet to a set ½" rebar with cap in the North right-of-way line of FM 592 for a corner of this tract; (R.O.W. widens 10.0 feet here);

THENCE N. 89° 51' W., along the said North right-of-way line a distance of 744.62 feet tot a set ½" rebar with cap for a corner of this tract;

DEED OF TRUST                                                                      PAGE 2

VOL 745 PAGE 15

THENCE N. 00° 09' E., along the ½ section line a distance of 5209.2 feet to a set ½" rebar with cap for a corner of this tract;

THENCE S. 89° 51' E., along the north section line a distance of 2595.5 feet to a set ½" rebar with cap in the West right-of-way line of US Highway 83 for a corner of this tract being 50.0 feet west of the Northeast corner of said Section 9;

THENCE S. 00° 09' W., along the said West right-of-way line a distance of 3360.0 feet to a set ½" rebar with cap for a corner of this tract;

THENCE N. 89° 51' W., a distance of 362.0 feet to a set ½" rebar with cap for a corner of this tract;

THENCE S. 00° 09' W., a distance of 600.0 feet to a set ½" rebar with cap for a corner of this tract;

THENCE S. 89° 51' E., a distance of 362.0 feet to a set ½" rebar with cap in the West right-of-way line of US Highway 83 for a corner of this tract and being 50.0 feet west of the east section line of said Section 9 for a corner of this tract;

THENCE S. 00° 09' W., along the said West right-of-way line a distance of 660.0 feet to a set ½" rebar with cap for a corner of this tract;

THENCE N. 89° 51' W., a distance of 214.0 feet to a set ½" rebar with cap for a corner of this tract;

THENCE S. 00° 09' W., a distance of 247.5 feet to a set ½" rebar with cap for a corner of this tract;

THENCE N. 89° 51' W., distance of 424.88 feet to a set ½" rebar with cap for a corner of this tract;

THENCE S. 00° 09' W., a distance of 351.7 feet to the place of beginning and containing 299.45 acres of land. Basis of bearing for this survey is US Highway 83.

* A 293.68 acre tract of land out of the West Half (W/2) of Section 10, Block A-8, H&GN Ry. Co. Survey, Wheeler County, Texas, said tract of land being more specifically described by metes and bounds as follows:

Survey of a 293.68 acre tract of land out of the W/2 of Section 10, Block A-8, H&GN Ry. Co. Survey, Wheeler County, Texas, as described in Volume 12, Page 107 of the Deed Records of Wheeler County, Texas:

---

DEED OF TRUST                                                                                    PAGE 3

VOL **745** PAGE **16**

BEGINNING at a set ½" rebar in the East right-of-way line of US 83, which bears N. 0° 09' E., a distance of 50.0 feet from the common corner of Sections 3, 4, 9 and 10 all in said Block A-8;

THENCE N. 00° 09' E., along the said East right-of-way line a distance of 3825.8 feet to a set ½" rebar with cap for the northwest corner of this tract and being 50.0 feet east of the northwest corner of Section 10;

THENCE S. 89° 51' E., along the said north line of Section 10, a distance of 2599.5 feet to a set ½" rebar with cap for the northeast corner of this tract;

THENCE S. 00° 09' W., along the ½ section line a distance of 5229.7 feet to a set ½" rebar with cap in the North right-of-way line of FM 592 for the southeast corner of this tract;

THENCE N. 89° 51' W., a long the said right-of-way line a distance of 1266.6 feet tot a set ½" rebar with cap for a corner of this tract;

THENCE N. 00° 09' E., a distance of 259.7 feet to a set ½" rebar with cap for a corner of this tract;

THENCE N. 89° 51' W., a distance of 852.5 feet to a set ½" rebar with cap for a corner of this tract;

THENCE S. 00° 09' W., a distance of 40.0 feet to a set ½" rebar with cap for a corner of this tract;

THENCE N. 89° 51' W., a distance of 63.0 feet to a set ½" rebar with cap for a corner of this tract;

THENCE N. 00° 09' E., a distance of 1043.8 feet to a set ½" rebar with cap for a corner of this tract;

THENCE N. 89° 09' W., a distance of 208.7 feet to a set ½" rebar with cap for a corner of this tract;

THENCE N. 00° 09' E., a distance of 104.4 feet to a set ½" rebar with cap for a corner of this tract;

THENCE N. 89° 51' W., a distance of 208.7 feet to the place of beginning and containing 293.68 acres of land. Basis of bearing for this survey is US Highway 83.

---

DEED OF TRUST                                                                PAGE 4

VOL. **745** PAGE **17**

**Prior Lien(s) (including recording information):**

None.

**Other Exceptions to Conveyance and Warranty:**

All previously recorded leases, easements and reservations of record

For value received and to secure full payment of the Obligation, Grantor conveys all Grantor's interest in the Property to Trustee in trust. Grantor warrants and agrees to defend the title to the Property. If Grantor performs all the covenants and pay the Obligation according to their terms, this Deed of Trust shall have no further effect, and Beneficiary shall release it at Beneficiary's expense.

**Grantor's Duties:**

Grantor agrees to:

1. pay all taxes and assessments on the Property, when due;

2. defend title to the Property subject to the Other Exceptions and Conveyances to Warranty and preserve the lien's priority as it is established in this Deed of Trust;

3. if this is not a first lien, pay all prior lien notes that Grantor is personally liable to pay and abide by all prior lien instruments;

4. not grant any liens or interests in the Property which are not expressly made subordinate to Secured Party's liens;

5. pay all debts and liabilities reasonably necessary to prevent foreclosure or seizure of the Property; and

6. If the Property is sold or refinanced, all sums due to Beneficiary by Grantor shall then become due and payable.

**Beneficiary's Rights:**

1. Beneficiary may appoint in writing a substitute or successor Trustee, succeeding to all rights and responsibilities of Trustee.

2. If the proceeds of the Property or Liens are used to pay any debt secured by prior liens, Beneficiary is subrogated to all of the rights and liens of the holders of any debt so paid.

DEED OF TRUST

VOL **745** PAGE **18**

3. Notwithstanding Obligation terms to the contrary, and unless applicable law prohibits, all payments received by Beneficiary from Grantor under the Obligation or this Deed of Trust may, at Beneficiary's discretion, be applied first to amounts payable under this Deed of Trust and then to amounts due and payable to Beneficiary under the Obligation, to be applied to late charges, principal, or interest in the order Beneficiary in its discretion determines.

4. If Grantor fails to perform any of Grantor's Obligations, Beneficiary may perform those Obligations and he reimbursed by Grantor on demand at the place where the Obligations are payable for any sums so paid, including reasonable attorneys' fees, plus interest on those sums from the dates of payment at the rate stated in the Obligation for matured, unpaid amounts. The sum to be reimbursed shall be secured by this Deed of Trust.

5. If Grantor defaults on the Obligation or fails to perform any of Grantor's Obligations, or if default occurs on a prior lien note or other instrument or liability, and the default continues after Beneficiary gives Grantor notice of the default and the time within which it must be cured, as may be required by law or by written agreement, then Beneficiary may:

    a. declare the unpaid principal balance and earned interest on the Obligation immediately due;

    b. request Trustee to foreclose this lien, in which case Beneficiary or Beneficiary's agent shall give notice of the foreclosure sale as provided by the Texas Property Code as then amended;

    c. foreclose upon the entire interest of Debtor in the item of collateral; and

    d. purchase the Property at any foreclosure sale by offering the highest bid and then have the bid credited on the Obligation.

6. Beneficiary may remedy any default without waiving it and may waive any default without waiving any prior or subsequent default.

**Default defined:**

"Default" is defined as a material breach of the Obligation by the Grantor. The Obligations described on page 1 hereof consists of sums to be earned and expenses to be advanced pursuant to the Attorneys' Employment Agreement between Grantors and Beneficiary dated March ___, 2019.

**Trustee's Duties:**

If requested by Beneficiary to foreclose this lien, Trustee shall:

    1. either personally or by agent give notice of the foreclosure sale as required by the Texas Property Code as then amended;

---

DEED OF TRUST                         PAGE 6

VOL 745 PAGE 19

2.  sell and convey all or part of the Property to the highest bidder for cash with a general warranty binding Grantor, subject to prior liens and to other exceptions to conveyance and warranty; and

3.  from the proceeds of the sale, pay, in this order:

    a.  expenses of foreclosure, including a reasonable hourly fee to the Trustee;

    b.  to Beneficiary, the full amount of principal, interest, attorneys' fees, and other charges due and unpaid;

    c.  any amounts required by law to be paid before payment to Grantor; and

    d.  to Grantor, any balance.

**General Provisions:**

1.  If any of the Property is sold under this Deed of Trust, Grantor shall immediately surrender possession to the purchaser. If Grantor fails to do so, Grantor shall become a tenant at sufferance of the purchaser, subject to an action for forcible detainer.

2.  Recitals in any Trustee's deed conveying the Property will be presumed to be true.

3.  Proceeding under this Deed of Trust, filing suit for foreclosure, or pursuing any other remedy will not constitute an election of remedies.

4.  This lien shall remain superior to liens later created even if the time of payment of all or part of the Obligation is extended or part of the Property is released.

5.  If any portion of the Obligation cannot be lawfully secured by this Deed of Trust, payments shall be applied first to discharge that portion.

6.  Grantor assigns to Beneficiary all sums payable to or received by Grantor from condemnation of all or part of the Property, from private sale in lieu of condemnation, and from damages caused by public works or construction on or near the Property. After deducting any expenses incurred, including reasonable attorneys' fees, Beneficiary may release any remaining sums to the Grantor or apply such sums to reduce the unpaid balance of the Obligation. Beneficiary shall not be liable for failure to collect or to exercise diligence in collecting any such sums.

7.  Grantor assigns to Beneficiary, as collateral, and not absolutely, but subject to the terms of payment, all present and future receivables, royalty, bonus and other income and receipts from the Property. This assignment shall become absolute upon default by Grantor in the performance of the Obligation hereby secured without further action by Beneficiary other than to

VOL 745 PAGE 20

give written notice to the respective Grantor of such default.   Leases, receivables, and executive rights are hereby assigned.   Grantor will apply any receivable proceeds, royalty, bonus and other income and receipts by it to payment of the Obligation and performance of this Deed of Trust, according to the terms of payment, but if the receivable proceeds, royalty, bonus and other income and receipts from the Property exceed the full amount finally due under the Obligation and Deed of Trust, Grantor may retain the excess.   If Grantor defaults in payment of the Obligation or performance of this Deed of Trust, Beneficiary may terminate Grantor's license to collect and then as Grantor's agent may collect all receivable proceeds, royalty, bonus and other income accruing from the Property to Grantor's interest.   Beneficiary neither has nor assumes any duties as lessor or landlord with respect to any occupant or lessee of the Property.   Beneficiary may exercise Beneficiary's rights and remedies under this paragraph without taking possession of the Property. Beneficiary shall apply all receivable proceeds, royalty, bonus and other income and receipts collected under this paragraph first to expenses incurred in exercising Beneficiary's rights and remedies and then to each Grantor's duties under the Obligation and this Deed of Trust in the order determined by Beneficiary.   Beneficiary is not required to act under this paragraph, and acting under this paragraph does not waive any of Beneficiary's other rights or remedies, nor shall it act as an election of remedies.   If Grantor files a voluntary petition in bankruptcy, or if an order for relief is granted for an involuntary petition in bankruptcy against Grantor, Beneficiary's filing a proof of claim in bankruptcy will be tantamount to the appointment of a receiver under Texas law.

8.    Interest on the debt secured by this Deed of Trust shall not exceed the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged or received under law; any interest in excess of that maximum amount shall be credited on the principal of the debt or, if that has been paid, refunded.   On any acceleration or required or permitted prepayment, any such excess shall be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal of the debt or, if the principal of the debt has been paid, refunded. This provision overrides other provisions in this and all other instruments concerning the debt.

9.    In no event may this Deed of Trust secure payment of any debt subject to chapters 342, 343, 345 or 346 of the Texas Finance Code or create a lien otherwise prohibited by law.

10.    When the context requires, singular nouns and pronouns include the plural.

11.    The term *"Obligation"* includes all extensions, additions and renewals of the June 5, 2013 fee agreement and all amounts secured by this Deed of Trust.

12.    Grantor may not transfer or hypothecate the Property without Beneficiary's prior written consent.

13.    This Deed of Trust shall bind, inure to the benefit of, and be exercised by successors in interest of all parties.

14.    If "Grantor" and "Borrower" are not the same person, the term Grantor includes each Borrower, whether singular or plural.

---

DEED OF TRUST                                                                                            PAGE 8

745   21

15.    Beneficiary shall give Grantor written notice of default before exercising any of Beneficiary's Remedies under the Security Agreement or this Deed of Trust, and each Grantor shall have ten days after notice is given in which to cure such default.  If the default is not cured within such ten day period, Grantor and each surety, endorser, and guarantor of the Obligation waive all demand for payment, presentation for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, protest, and notice of protest, to the extent permitted by law.

16.    Grantor agrees to pay reasonable attorney's fees, trustee's fees, and reasonable or necessary court costs and other costs of enforcing Beneficiary's rights under this Deed of Trust if this Deed of Trust is placed in the hands of an attorney for enforcement.

17.    If any provision of this Deed of Trust is determined to be invalid or unenforceable, the validity or enforceability of any other provision will not be affected.

GALMOR FAMILY LIMITED PARTNERSHIP, a Texas limited partnership
By: Galmor Management, LLC, its General Partner

By:_____
Michael Stephen Galmor, its President

### ACKNOWLEDGMENT

STATE OF TEXAS                    )
                                              : ss
COUNTY OF POTTER      )

The foregoing instrument was acknowledged before me on the 18th day of March, 2019,  by Michael Stephen Galmor, President of Galmor Management, LLC, a Texas limited liability company, General Partner of Galmor Family Limited Partnership, a Texas limited partnership, on behalf of said limited partnership.

_____
Notary Public, State of Texas

AFTER RECORDING RETURN TO:

Joe L. Lovell
LOVELL, LOVELL, ISERN & FARABOUGH, LLP
112 West 8th Avenue, Suite 1000
Amarillo, Texas 79101-2314

DEED OF TRUST          FILED FOR RECORD                                    PAGE 9

2019 MAR 29  AM 11: 22