Kent Ries
State Bar No. 16914050
2700 S. Western St., Suite 300
Amarillo, Texas 79109
(806) 242-7437
(806) 242-7440 – Fax

COUNSEL FOR TRUSTEE

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# AMARILLO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| MICHAEL STEPHEN GALMOR, | § | CASE NO. 18-20209-RLJ-7 |
| | § | |
|    Debtor. | § | |
| | § | |
| And | § | |
| | § | |
| GALMOR'S/G&G STEAM SERVICE, INC., | § | CASE NO. 18-20210-RLJ-7 |
| | § | |
|    Debtor. | § | |
| | § | |
| KENT RIES, Trustee | § | |
| | § | |
| | § | ADVERSARY NO. 19-2006 |
| | § | |
| THE LIQUIDATION OF THE GALMOR FAMILY LIMITED PARTNERSHIP AND GALMOR MANAGEMENT, L.L.C., | § | |

## SUPPLEMENT TO MOTION FOR AUTHORITY TO SELL "MOBEETIE" REAL PROPERTY

TO THE HONORABLE ROBERT L. JONES, BANKRUPTCY JUDGE:

COMES NOW, Kent Ries, Trustee of the referenced Chapter 7 bankruptcy estates and Court appointed liquidator of the Galmor Family Limited Partnership real estate ("Trustee"), and files this Supplement to Motion for Authority to Sell "Mobeetie" Real Property, and in support thereof would respectfully show unto the Court as follows:

1. This Supplement is the Exhibit referred to in the referenced Motion.

Respectfully submitted,

Kent Ries
2700 S. Western St., Suite 300
Amarillo, Texas 79109
(806) 242-7437
(806) 242-7440– Fax

By: /s/ Kent Ries
    Kent Ries
    State Bar No. 16914050

COUNSEL FOR TRUSTEE

## CERTIFICATE OF SERVICE

I hereby certify that no later than by the 29th day of June, 2020, a true and correct copy of the above and foregoing Supplement was sent electronically or mailed in the United States mail, postage prepaid, to the parties listed below and the matrix attached to the Motion.

| | |
|---|---|
| Paul Hathaway<br>8543 FM 48<br>Mobeetie, Texas 79061 | Randy Mark Galmor<br>6355 U.S. Highway 83<br>Shamrock, Texas 79096 |
| Leslie Galmor Pritchard<br>c/o Davor Rukavina<br>Munsch Hardt Kopf & Harr, P.C.<br>500 N. Akard Street, Suite 3800<br>Dallas, Texas 75201-6659 | Lewis Whitaker<br>Whitaker Real Estate<br>4600 I-40 West, Suite 101<br>Amarillo, Texas 79106 |
| Traci Marie Galmor Coleman<br>c/o Kenneth Netardus<br>1030 N. Western<br>Amarillo, Texas 79106 | |

/s/ Kent Ries
Kent Ries

PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)  2-12-18
# FARM AND RANCH CONTRACT



1. **PARTIES:** The parties to this contract are **Kent Ries, Court Appointed Liquidator** (Seller) and **Paul Hathaway** (Buyer). Seller agrees to sell and convey to Buyer and Buyer agrees to buy from Seller the Property defined below.
2. **PROPERTY:** The land, improvements, accessories and crops except for the exclusions and reservations, are collectively referred to as the "Property".
   A. LAND: The land situated in the County of **Wheeler**, Texas, described as follows: **All of the East one hundred (E/100) acres of the NW/4 of Section 76, Block A-5, H&GN Ry. Co. Survey**
   or as described on attached exhibit, also known as **100 ac+/- in NW/4 of Sec 76, Blk A-5, Wheeler Co.,** (address/zip code), together with all rights, privileges, and appurtenances pertaining thereto, including but not limited to: water rights, claims, permits, strips and gores, easements, and cooperative or association memberships.
   B. IMPROVEMENTS:
      (1) FARM and RANCH IMPROVEMENTS: The following **permanently installed and built-in items,** if any: windmills, tanks, barns, pens, fences, gates, sheds, outbuildings, and corrals.
      (2) RESIDENTIAL IMPROVEMENTS: The house, garage, and all other fixtures and improvements attached to the above-described real property, including without limitation, the following **permanently installed and built-in items,** if any: all equipment and appliances, valances, screens, shutters, awnings, wall-to-wall carpeting, mirrors, ceiling fans, attic fans, mail boxes, television antennas, mounts and brackets for televisions and speakers, heating and air-conditioning units, security and fire detection equipment, wiring, plumbing and lighting fixtures, chandeliers, water softener system, kitchen equipment, garage door openers, cleaning equipment, shrubbery, landscaping, outdoor cooking equipment, and all other property owned by Seller and attached to the above described real property.
   C. ACCESSORIES:
      (1) FARM AND RANCH ACCESSORIES: The following described related accessories: (check boxes of conveyed accessories) ☐ portable buildings ☐ hunting blinds ☐ game feeders ☐ livestock feeders and troughs ☐ irrigation equipment ☐ fuel tanks ☒ submersible pumps ☒ pressure tanks ☐ corrals ☐ gates ☐ chutes ☐ other: _____
      (2) RESIDENTIAL ACCESSORIES: The following described related accessories, if any: window air conditioning units, stove, fireplace screens, curtains and rods, blinds, window shades, draperies and rods, door keys, mailbox keys, above ground pool, swimming pool equipment and maintenance accessories, artificial fireplace logs, and controls for:
      (i) garages, (ii) entry gates, and (iii) other improvements and accessories.
   D. CROPS: Unless otherwise agreed in writing, Seller has the right to harvest all growing crops until delivery of possession of the Property.
   E. EXCLUSIONS: The following improvements, accessories, and crops will be retained by Seller and must be removed prior to delivery of possession: **N/A**
   F. RESERVATIONS: Any reservation for oil, gas, or other minerals, water, timber, or other interests is made in accordance with an attached addendum.
3. **SALES PRICE:**
   A. Cash portion of Sales Price payable by Buyer at closing ................ $ **105,000.00**
   B. Sum of all financing described in the attached: ☐ Third Party Financing Addendum, ☐ Loan Assumption Addendum, ☐ Seller Financing Addendum.......... $ **-0-**
   C. Sales Price (Sum of A and B) .......................................... $ **105,000.00**
   D. The Sales Price ☐ will ☒ will not be adjusted based on the survey required by Paragraph 6C. If the Sales Price is adjusted, the Sales Price will be calculated on the basis of $ **N/A** per acre. If the Sales Price is adjusted by more than 10%, either party may terminate this contract by providing written notice to the other party within **N/A** days after the terminating party receives the survey. If neither party terminates this contract or if the variance is 10% or less, the adjustment will be made to the amount in ☐ 3A ☐ 3B ☐ proportionately to 3A and 3B.
4. **LICENSE HOLDER DISCLOSURE:** Texas law requires a real estate license holder who is a party to a transaction or acting on behalf of a spouse, parent, child, business entity in which the license holder owns more than 10%, or a trust for which the license holder acts as a trustee or of which the license holder or the license holder's spouse, parent or child is a beneficiary, to notify the other party in writing before entering into a contract of sale. Disclose if applicable: **N/A**
5. **EARNEST MONEY:** Within 3 days after the Effective Date, Buyer must deliver $ **5,000.00** as earnest money to, **Wheeler Title & Abstract Co.**, as escrow agent, at **112 E Texas Ave, Wheeler, TX 79096** (address). Buyer shall deposit additional earnest money of $ **N/A** with escrow agent within **N/A** days after the Effective Date of this contract. If Buyer fails to deliver the earnest money within the time required, Seller may terminate this contract or exercise Seller's remedies under Paragraph 15, or both, by providing notice to Buyer before Buyer delivers the earnest money. If the last day to deliver the earnest money falls on a Saturday, Sunday, or legal holiday, the time to deliver the earnest money is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. **Time is of the essence for this paragraph.**

TXR 1701  Initialed for identification by Buyer **P.H.** _____ and Seller _____  TREC NO. 25-12

Contract Concerning ____**100 ac+/- in NW/4 of Sec 76,Blk A-5, Wheeler Co.**____ Page 2 of 10    2-12-18
(Address of Property)

**6. TITLE POLICY AND SURVEY:**

A. TITLE POLICY: Seller shall furnish to Buyer at [X] Seller's [ ] Buyer's expense an owner policy of title insurance (Title Policy) issued by: ____**Wheeler Title & Abstract Co.**____ (Title Company) in the amount of the Sales Price, dated at or after closing, insuring Buyer against loss under the provisions of the Title Policy, subject to the promulgated exclusions (including existing building and zoning ordinances) and the following exceptions:
   (1) The standard printed exception for standby fees, taxes and assessments.
   (2) Liens created as part of the financing described in Paragraph 3.
   (3) Reservations or exceptions otherwise permitted by this contract or as may be approved by Buyer in writing.
   (4) The standard printed exception as to marital rights.
   (5) The standard printed exception as to waters, tidelands, beaches, streams, and related matters.
   (6) The standard printed exception as to discrepancies, conflicts, shortages in area or boundary lines, encroachments or protrusions, or overlapping improvements:
   [X] (i) will not be amended or deleted from the title policy; or
   [ ] (ii) will be amended to read, "shortages in area" at the expense of [ ] Buyer [ ] Seller.
   (7) The exception or exclusion regarding minerals approved by the Texas Department of Insurance.

B. COMMITMENT: Within 20 days after the Title Company receives a copy of this contract, Seller shall furnish to Buyer a commitment for title insurance (Commitment) and, at Buyer's expense, legible copies of restrictive covenants and documents evidencing exceptions in the Commitment (Exception Documents) other than the standard printed exceptions. Seller authorizes the Title Company to deliver the Commitment and Exception Documents to Buyer at Buyer's address shown in Paragraph 21. If the Commitment and Exception Documents are not delivered to Buyer within the specified time, the time for delivery will be automatically extended up to 15 days or 3 days before the Closing Date, whichever is earlier. If the Commitment and Exception Documents are not delivered within the time required, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

C. SURVEY: The survey must be made by a registered professional land surveyor acceptable to the Title Company and Buyer's lender(s). (Check one box only):
   [ ] (1) Within ____**N/A**____ days after the Effective Date of this contract, Seller shall furnish to Buyer and Title Company Seller's existing survey of the Property and a Residential Real Property Affidavit promulgated by the Texas Department of Insurance (T-47 Affidavit). **If Seller fails to furnish the existing survey or affidavit within the time prescribed, Buyer shall obtain a new survey at Seller's expense no later than 3 days prior to Closing Date.** The existing survey [ ] will [ ] will not be recertified to a date subsequent to the Effective Date of this contract at the expense of [ ] Buyer [ ] Seller. If the existing survey is not approved by the Title Company or Buyer's lender(s), a new survey will be obtained at the expense of [ ] Buyer [ ] Seller no later than 3 days prior to Closing Date.
   [ ] (2) Within ____**N/A**____ days after the Effective Date of this contract, Buyer shall obtain a new survey at Buyer's expense. Buyer is deemed to receive the survey on the date of actual receipt or the date specified in this paragraph, whichever is earlier.
   [ ] (3) Within ____**N/A**____ days after the Effective Date of this contract, Seller, at Seller's expense shall furnish a new survey to Buyer.
   [X] (4) No survey is required.

D. OBJECTIONS: Buyer may object in writing to (i) defects, exceptions, or encumbrances to title disclosed on the survey other than items 6A(1) through (5) above; or disclosed in the Commitment other than items 6A(1) through (7) above; (ii) any portion of the Property lying in a special flood hazard area (Zone V or A) as shown on the current Federal Emergency Management Agency map; or (iii) any exceptions which prohibit the following use or activity: **N/A**

Buyer must object the earlier of (i) the Closing Date or (ii) ____**7**____ days after Buyer receives the Commitment, Exception Documents, and the survey. Buyer's failure to object within the time allowed will constitute a waiver of Buyer's right to object; except that the requirements in Schedule C of the Commitment are not waived by Buyer. Provided Seller is not obligated to incur any expense, Seller shall cure any timely objections of Buyer or any third party lender within 15 days after Seller receives the objections (Cure Period) and the Closing Date will be extended as necessary. If objections are not cured within the Cure Period, Buyer may, by delivering notice to Seller within 5 days after the end of the Cure Period: (i) terminate this contract and the earnest money will be refunded to Buyer; or (ii) waive the objections. If Buyer does not terminate within the time required, Buyer shall be deemed to have waived the objections. If the Commitment or Survey is revised or any new Exception Document(s) is delivered, Buyer may object to any new matter revealed in the revised Commitment or Survey or new Exception Document(s) within the same time stated in this paragraph to make objections beginning when the revised Commitment, Survey, or Exception Document(s) is delivered to Buyer.

E. EXCEPTION DOCUMENTS: Prior to the execution of the contract, Seller has provided Buyer with copies of the Exception Documents listed below or on the attached exhibit. Matters reflected in the Exception Documents listed below or on the attached exhibit will be permitted exceptions in the Title Policy and will not be a basis for objection to title:

TXR 1701    Initialed for identification by Buyer _P.H._ _____ and Seller _____    TREC NO. 25-12

Contract Concerning __100 ac+/- in NW/4 of Sec 76,Blk A-5, Wheeler Co.__ Page 3 of 10  2-12-18
(Address of Property)

| Document | Date | Recording Reference |
|---|---|---|
| **None have been provided.** | | |
| | | |
| | | |

F. SURFACE LEASES: Prior to the execution of the contract, Seller has provided Buyer with copies of written leases and given notice of oral leases (Leases) listed below or on the attached exhibit. The following Leases will be permitted exceptions in the Title Policy and will not be a basis for objection to title: **N/A**

G. TITLE NOTICES:
  (1) ABSTRACT OR TITLE POLICY: Broker advises Buyer to have an abstract of title covering the Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or obtain a Title Policy. If a Title Policy is furnished, the Commitment should be promptly reviewed by an attorney of Buyer's choice due to the time limitations on Buyer's right to object.
  (2) STATUTORY TAX DISTRICTS: If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services, Chapter 49, Texas Water Code, requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fee of the district prior to final execution of this contract.
  (3) TIDE WATERS: If the Property abuts the tidally influenced waters of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included in the contract. An addendum containing the notice promulgated by TREC or required by the parties must be used.
  (4) ANNEXATION: If the Property is located outside the limits of a municipality, Seller notifies Buyer under §5.011, Texas Property Code, that the Property may now or later be included in the extraterritorial jurisdiction of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and extraterritorial jurisdiction. To determine if the Property is located within a municipality's extraterritorial jurisdiction or is likely to be located within a municipality's extraterritorial jurisdiction, contact all municipalities located in the general proximity of the Property for further information.
  (5) PROPERTY LOCATED IN A CERTIFICATED SERVICE AREA OF A UTILITY SERVICE PROVIDER: Notice required by §13.257, Water Code: The real property, described in Paragraph 2, that you are about to purchase may be located in a certificated water or sewer service area, which is authorized by law to provide water or sewer service to the properties in the certificated area. If your property is located in a certificated area there may be special costs or charges that you will be required to pay before you can receive water or sewer service. There may be a period required to construct lines or other facilities necessary to provide water or sewer service to your property. You are advised to determine if the property is in a certificated area and contact the utility service provider to determine the cost that you will be required to pay and the period, if any, that is required to provide water or sewer service to your property. The undersigned Buyer hereby acknowledges receipt of the foregoing notice at or before the execution of a binding contract for the purchase of the real property described in Paragraph 2 or at closing of purchase of the real property.
  (6) PUBLIC IMPROVEMENT DISTRICTS: If the Property is in a public improvement district, §5.014, Property Code, requires Seller to notify Buyer as follows: As a purchaser of this parcel of real property you are obligated to pay an assessment to a municipality or county for an improvement project undertaken by a public improvement district under Chapter 372, Local Government Code. The assessment may be due annually or in periodic installments. More information concerning the amount of the assessment and the due dates of that assessment may be obtained from the municipality or county levying the assessment. The amount of the assessments is subject to change. Your failure to pay the assessments could result in a lien on and the foreclosure of your property.
  (7) TEXAS AGRICULTURAL DEVELOPMENT DISTRICT: The Property ☐ is ☒ is not located in a Texas Agricultural Development District. For additional information contact the Texas Department of Agriculture.
  (8) TRANSFER FEES: If the Property is subject to a private transfer fee obligation, §5.205, Property Code, requires Seller to notify Buyer as follows: The private transfer fee obligation may be governed by Chapter 5, Subchapter G of the Texas Property Code.
  (9) PROPANE GAS SYSTEM SERVICE AREA: If the Property is located in a propane gas system service area owned by a distribution system retailer, Seller must give Buyer written notice as required by §141.010, Texas Utilities Code. An addendum containing the notice approved by TREC or required by the parties should be used.
  (10) NOTICE OF WATER LEVEL FLUCTUATIONS: If the Property adjoins an impoundment of water, including a reservoir or lake, constructed and maintained under Chapter 11, Water Code,

TXR 1701   Initialed for identification by Buyer _P.M._ and Seller _VL_   TREC NO. 25-12
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com   MOBEETIE

| Contract Concerning | 100 ac+/- in NW/4 of Sec 76, Blk A-5, Wheeler Co. | Page 4 of 10 | 2-12-18 |
|---|---|---|---|
| | (Address of Property) | | |

that has a storage capacity of at least 5,000 acre-feet at the impoundment's normal operating level, Seller hereby notifies Buyer: "The water level of the impoundment of water adjoining the Property fluctuates for various reasons, including as a result of: (1) an entity lawfully exercising its right to use the water stored in the impoundment; or (2) drought or flood conditions."

7. **PROPERTY CONDITION:**
   A. ACCESS, INSPECTIONS AND UTILITIES: Seller shall permit Buyer and Buyer's agents access to the Property at reasonable times. Buyer may have the Property inspected by inspectors selected by Buyer and licensed by TREC or otherwise permitted by law to make inspections. Any hydrostatic testing must be separately authorized by Seller in writing. Seller at Seller's expense shall immediately cause existing utilities to be turned on and shall keep the utilities on during the time this contract is in effect.
   **NOTICE:** Buyer should determine the availability of utilities to the Property suitable to satisfy Buyer's needs.
   B. SELLER'S DISCLOSURE NOTICE PURSUANT TO §5.008, TEXAS PROPERTY CODE (Notice):
      (Check one box only)
      ☐ (1) Buyer has received the Notice.
      ☐ (2) Buyer has not received the Notice. Within **N/A** days after the Effective Date of this contract, Seller shall deliver the Notice to Buyer. If Buyer does not receive the Notice, Buyer may terminate this contract at any time prior to the closing and the earnest money will be refunded to Buyer. If Seller delivers the Notice, Buyer may terminate this contract for any reason within 7 days after Buyer receives the Notice or prior to the closing, whichever first occurs, and the earnest money will be refunded to Buyer.
      ☒ (3) The Texas Property Code does not require this Seller to furnish the Notice.
   C. SELLER'S DISCLOSURE OF LEAD-BASED PAINT AND LEAD-BASED PAINT HAZARDS is required by Federal law for a residential dwelling constructed prior to 1978.
   D. ACCEPTANCE OF PROPERTY CONDITION: "As Is" means the present condition of the Property with any and all defects and without warranty except for the warranties of title and the warranties in this contract. Buyer's agreement to accept the Property As Is under Paragraph 7D (1) or (2) does not preclude Buyer from inspecting the Property under Paragraph 7A, from negotiating repairs or treatments in a subsequent amendment, or from terminating this contract during the Option Period, if any.
      (Check one box only)
      ☒ (1) Buyer accepts the Property As Is.
      ☐ (2) Buyer accepts the Property As Is provided Seller, at Seller's expense, shall complete the following specific repairs and treatments: **N/A**
      (Do not insert general phrases, such as "subject to inspections," that do not identify specific repairs and treatments.)
   E. COMPLETION OF REPAIRS: Unless otherwise agreed in writing: (i) Seller shall complete all agreed repairs and treatments prior to the Closing Date; and (ii) all required permits must be obtained, and repairs and treatments must be performed by persons who are licensed to provide such repairs or treatments or, if no license is required by law, are commercially engaged in the trade of providing such repairs or treatments. At Buyer's election, any transferable warranties received by Seller with respect to the repairs will be transferred to Buyer at Buyer's expense. If Seller fails to complete any agreed repairs prior to the Closing Date, Buyer may exercise remedies under Paragraph 15 or extend the Closing Date up to 5 days if necessary for Seller to complete repairs.
   F. LENDER REQUIRED REPAIRS AND TREATMENTS: Unless otherwise agreed in writing, neither party is obligated to pay for lender required repairs, which includes treatment for wood destroying insects. If the parties do not agree to pay for the lender required repairs or treatments, this contract will terminate and the earnest money will be refunded to Buyer. If the cost of lender required repairs and treatments exceeds 5% of the Sales Price, Buyer may terminate this contract and the earnest money will be refunded to Buyer.
   G. ENVIRONMENTAL MATTERS: Buyer is advised that the presence of wetlands, toxic substances, including asbestos and wastes or other environmental hazards, or the presence of a threatened or endangered species or its habitat may affect Buyer's intended use of the Property. If Buyer is concerned about these matters, an addendum promulgated by TREC or required by the parties should be used.
   H. SELLER'S DISCLOSURES: Except as otherwise disclosed in this contract, Seller has no knowledge of the following:
      (1) any flooding of the Property which has had a material adverse effect on the use of the Property;
      (2) any pending or threatened litigation, condemnation, or special assessment affecting the Property;
      (3) any environmental hazards that materially and adversely affect the Property;
      (4) any dumpsite, landfill, or underground tanks or containers now or previously located on the Property;
      (5) any wetlands, as defined by federal or state law or regulation, affecting the Property; or
      (6) any threatened or endangered species or their habitat affecting the Property.

TXR 1701    Initialed for identification by Buyer **P. H.** _____ and Seller **VC** _____    TREC NO. 25-12
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com    MOBEETIE

Contract Concerning __100 ac+/- in NW/4 of Sec 76,Blk A-5, Wheeler Co.__ Page 5 of 10  2-12-18
(Address of Property)

I. **RESIDENTIAL SERVICE CONTRACTS:** Buyer may purchase a residential service contract from a residential service company licensed by TREC. If Buyer purchases a residential service contract, Seller shall reimburse Buyer at closing for the cost of the residential service contract in an amount not exceeding $ **N/A**_____ . Buyer should review any residential service contract for the scope of coverage, exclusions and limitations. **The purchase of a residential service contract is optional. Similar coverage may be purchased from various companies authorized to do business in Texas.**

J. **GOVERNMENT PROGRAMS:** The Property is subject to the government programs listed below or on the attached exhibit: **N/A**_____.
Seller shall provide Buyer with copies of all governmental program agreements. Any allocation or proration of payment under governmental programs is made by separate agreement between the parties which will survive closing.

8. **BROKERS' FEES:** All obligations of the parties for payment of brokers' fees are contained in separate written agreements.

9. **CLOSING:**
   A. The closing of the sale will be on or before _____**July 31**_____, **2020**_____ , or within 7 days after objections made under Paragraph 6D have been cured or waived, whichever date is later (Closing Date). If either party fails to close the sale by the Closing Date, the non-defaulting party may exercise the remedies contained in Paragraph 15.
   B. At closing:
      (1) Seller shall execute and deliver a general warranty deed conveying title to the Property to Buyer and showing no additional exceptions to those permitted in Paragraph 6, an assignment of Leases, and furnish tax statements or certificates showing no delinquent taxes on the Property.
      (2) Buyer shall pay the Sales Price in good funds acceptable to the escrow agent.
      (3) Seller and Buyer shall execute and deliver any notices, statements, certificates, affidavits, releases, loan documents and other documents reasonably required for the closing of the sale and the issuance of the Title Policy.
      (4) There will be no liens, assessments, or security interests against the Property which will not be satisfied out of the sales proceeds unless securing the payment of any loans assumed by Buyer and assumed loans will not be in default.
      (5) If the Property is subject to a residential lease, Seller shall transfer security deposits (as defined under §92.102, Property Code), if any, to Buyer. In such an event, Buyer shall deliver to the tenant a signed statement acknowledging that the Buyer has acquired the Property and is responsible for the return of the security deposit, and specifying the exact dollar amount of the security deposit.

10. **POSSESSION:**
    A. Buyer's Possession: Seller shall deliver to Buyer possession of the Property in its present or required condition, ordinary wear and tear excepted: [X] upon closing and funding [ ] according to a temporary residential lease form promulgated by TREC or other written lease required by the parties. Any possession by Buyer prior to closing or by Seller after closing which is not authorized by a written lease will establish a tenancy at sufferance relationship between the parties. **Consult your insurance agent prior to change of ownership and possession because insurance coverage may be limited or terminated. The absence of a written lease or appropriate insurance coverage may expose the parties to economic loss.**
    B. Leases:
       (1) After the Effective Date, Seller may not execute any lease (including but not limited to mineral leases) or convey any interest in the Property without Buyer's written consent.
       (2) If the Property is subject to any lease to which Seller is a party, Seller shall deliver to Buyer copies of the lease(s) and any move-in condition form signed by the tenant within 7 days after the Effective Date of the contract.

11. **SPECIAL PROVISIONS:** (Insert only factual statements and business details applicable to the sale. TREC rules prohibit license holders from adding factual statements or business details for which a contract addendum or other form has been promulgated by TREC for mandatory use.)
**This contract is subject to bankruptcy Court approval for it to be binding on the seller. Such approval includes the opportunity for third parties to bid a higher price on the same terms as are in this contract. If such a bid occurs, all potential buyers may participate in a bidding process as described in the motion and order approving the sale. The motion to sell has a 21 day notice period before the bankruptcy Court will consider approval.**

TXR 1701   Initialed for identification by Buyer _P.H._ _____ and Seller _____   TREC NO. 25-12
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com   MOBEETIE

Contract Concerning __100 ac+/- in NW/4 of Sec 76, Blk A-5, Wheeler Co.__ Page 6 of 10    2-12-18
                                        (Address of Property)

**12. SETTLEMENT AND OTHER EXPENSES:**
   A. The following expenses must be paid at or prior to closing:
      (1) Expenses payable by Seller (Seller's Expenses):
         (a) Releases of existing liens, including prepayment penalties and recording fees; release of Seller's loan liability; tax statements or certificates; preparation of deed; one-half of escrow fee; and other expenses payable by Seller under this contract.
         (b) Seller shall also pay an amount not to exceed $ **N/A** to be applied in the following order: Buyer's Expenses which Buyer is prohibited from paying by FHA, VA, Texas Veterans Land Board or other governmental loan programs, and then to other Buyer's Expenses as allowed by the lender.
      (2) Expenses payable by Buyer (Buyer's Expenses) Appraisal fees; loan application fees; origination charges; credit reports; preparation of loan documents; interest on the notes from date of disbursement to one month prior to dates of first monthly payments; recording fees; copies of easements and restrictions; loan title policy with endorsements required by lender; loan-related inspection fees; photos; amortization schedules; one-half of escrow fee; all prepaid items, including required premiums for flood and hazard insurance, reserve deposits for insurance, ad valorem taxes and special governmental assessments; final compliance inspection; courier fee; repair inspection; underwriting fee; wire transfer fee; expenses incident to any loan; Private Mortgage Insurance Premium (PMI), VA Loan Funding Fee, or FHA Mortgage Insurance Premium (MIP) as required by the lender; and other expenses payable by Buyer under this contract.
   B. If any expense exceeds an amount expressly stated in this contract for such expense to be paid by a party, that party may terminate this contract unless the other party agrees to pay such excess. Buyer may not pay charges and fees expressly prohibited by FHA, VA, Texas Veterans Land Board or other governmental loan program regulations.

**13. PRORATIONS AND ROLLBACK TAXES:**
   A. PRORATIONS: Taxes for the current year, interest, maintenance fees, assessments, dues and rents will be prorated through the Closing Date. The tax proration may be calculated taking into consideration any change in exemptions that will affect the current year's taxes. If taxes for the current year vary from the amount prorated at closing, the parties shall adjust the prorations when tax statements for the current year are available. If taxes are not paid at or prior to closing, Buyer shall pay taxes for the current year. Rentals which are unknown at time of closing will be prorated between Buyer and Seller when they become known.
   B. ROLLBACK TAXES: If this sale or Buyer's use of the Property after closing results in the assessment of additional taxes, penalties or interest (Assessments) for periods prior to closing, the Assessments will be the obligation of Buyer. If Assessments are imposed because of Seller's use or change in use of the Property prior to closing, the Assessments will be the obligation of Seller. Obligations imposed by this paragraph will survive closing.

**14. CASUALTY LOSS:** If any part of the Property is damaged or destroyed by fire or other casualty after the Effective Date of this contract, Seller shall restore the Property to its previous condition as soon as reasonably possible, but in any event by the Closing Date. If Seller fails to do so due to factors beyond Seller's control, Buyer may (a) terminate this contract and the earnest money will be refunded to Buyer, (b) extend the time for performance up to 15 days and the Closing Date will be extended as necessary or (c) accept the Property in its damaged condition with an assignment of insurance proceeds, if permitted by Seller's insurance carrier, and receive credit from Seller at closing in the amount of the deductible under the insurance policy. Seller's obligations under this paragraph are independent of any other obligations of Seller under this contract.

**15. DEFAULT:** If Buyer fails to comply with this contract, Buyer will be in default, and Seller may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money as liquidated damages, thereby releasing both parties from this contract. If Seller fails to comply with this contract for any other reason, Seller will be in default and Buyer may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money, thereby releasing both parties from this contract.

**16. MEDIATION:** It is the policy of the State of Texas to encourage resolution of disputes through alternative dispute resolution procedures such as mediation. Any dispute between Seller and Buyer related to this contract which is not resolved through informal discussion will be submitted to a mutually acceptable mediation service or provider. The parties to the mediation shall bear the mediation costs equally. This paragraph does not preclude a party from seeking equitable relief from a court of competent jurisdiction.

**17. ATTORNEY'S FEES:** A Buyer, Seller, Listing Broker, Other Broker, or escrow agent who prevails in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding.

TXR 1701    Initialed for identification by Buyer _P. H._ and Seller _____    TREC NO. 25-12
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com    MOBEETIE

Contract Concerning _____100 ac+/- in NW/4 of Sec 76,Blk A-5, Wheeler Co._____  Page 7 of 10    2-12-18
(Address of Property)

18. **ESCROW:**
   A. **ESCROW:** The escrow agent is not (i) a party to this contract and does not have liability for the performance or nonperformance of any party to this contract, (ii) liable for interest on the earnest money and (iii) liable for the loss of any earnest money caused by the failure of any financial institution in which the earnest money has been deposited unless the financial institution is acting as escrow agent.
   B. **EXPENSES:** At closing, the earnest money must be applied first to any cash down payment, then to Buyer's Expenses and any excess refunded to Buyer. If no closing occurs, escrow agent may: (i) require a written release of liability of the escrow agent from all parties, (ii) require payment of unpaid expenses incurred on behalf of a party, and (iii) only deduct from the earnest money the amount of unpaid expenses incurred on behalf of the party receiving the earnest money.
   C. **DEMAND:** Upon termination of this contract, either party or the escrow agent may send a release of earnest money to each party and the parties shall execute counterparts of the release and deliver same to the escrow agent. If either party fails to execute the release, either party may make a written demand to the escrow agent for the earnest money. If only one party makes written demand for the earnest money, escrow agent shall promptly provide a copy of the demand to the other party. If escrow agent does not receive written objection to the demand from the other party within 15 days, escrow agent may disburse the earnest money to the party making demand reduced by the amount of unpaid expenses incurred on behalf of the party receiving the earnest money and escrow agent may pay the same to the creditors. If escrow agent complies with the provisions of this paragraph, each party hereby releases escrow agent from all adverse claims related to the disbursal of the earnest money.
   D. **DAMAGES:** Any party who wrongfully fails or refuses to sign a release acceptable to the escrow agent within 7 days of receipt of the request will be liable to the other party for (i) damages; (ii) the earnest money; (iii) reasonable attorney's fees; and (iv) all costs of suit.
   E. **NOTICES:** Escrow agent's notices will be effective when sent in compliance with Paragraph 21. Notice of objection to the demand will be deemed effective upon receipt by escrow agent.

19. **REPRESENTATIONS:** All covenants, representations and warranties in this contract survive closing. If any representation of Seller in this contract is untrue on the Closing Date, Seller will be in default. Unless expressly prohibited by written agreement, Seller may continue to show the Property and receive, negotiate and accept back up offers.

20. **FEDERAL TAX REQUIREMENTS:** If Seller is a "foreign person," as defined by Internal Revenue Code and its regulations, or if Seller fails to deliver an affidavit or a certificate of non-foreign status to Buyer that Seller is not a "foreign person," then Buyer shall withhold from the sales proceeds an amount sufficient to comply with applicable tax law and deliver the same to the Internal Revenue Service together with appropriate tax forms. Internal Revenue Service regulations require filing written reports if currency in excess of specified amounts is received in the transaction.

21. **NOTICES:** All notices from one party to the other must be in writing and are effective when mailed to, hand-delivered at, or transmitted by fax or electronic transmission as follows:

| **To Buyer** | **To Seller** |
|---|---|
| at: __8543 FM 48__ | at: __2700 S. Western St, Suite 300__ |
| __Mobeetie, TX 79061__ | __Amarillo, TX 79109__ |
| Phone: __(806)669-8708__ | Phone: __(806)242-7437__ |
| Fax: | Fax: |
| E-mail: | E-mail: __kent@kentries.com__ |

TXR 1701   Initialed for identification by Buyer _P.H._ _____ and Seller _[initials]_ _____    TREC NO. 25-12
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com    MOBEETIE

Contract Concerning __100 ac+/- in NW/4 of Sec 76,Blk A-5, Wheeler Co.__ Page 8 of 10  2-12-18
(Address of Property)

**22. AGREEMENT OF PARTIES:** This contract contains the entire agreement of the parties and cannot be changed except by their written agreement. Addenda which are a part of this contract are (check all applicable boxes):

- ☐ Third Party Financing Addendum
- ☐ Seller Financing Addendum
- ☐ Addendum for Property Subject to Mandatory Membership in a Property Owners Association
- ☐ Buyer's Temporary Residential Lease
- ☐ Loan Assumption Addendum
- ☐ Addendum for Sale of Other Property by Buyer
- ☐ Addendum for "Back-Up" Contract
- ☐ Addendum for Coastal Area Property
- ☐ Addendum for Authorizing Hydrostatic Testing
- ☐ Addendum Concerning Right to Terminate Due to Lender's Appraisal
- ☐ Addendum for Reservation of Oil, Gas and Other Minerals
- ☐ Environmental Assessment, Threatened or Endangered Species and Wetlands Addendum
- ☐ Seller's Temporary Residential Lease
- ☐ Short Sale Addendum
- ☐ Addendum for Property Located Seaward of the Gulf Intracoastal Waterway
- ☒ Addendum for Seller's Disclosure of Information on Lead-based Paint and Lead-based Paint Hazards as Required by Federal Law
- ☐ Addendum for Property in a Propane Gas System Service Area
- ☒ Other (list): **Information About On-Site Sewer Facility**

**23. TERMINATION OPTION:** For nominal consideration, the receipt of which is hereby acknowledged by Seller, and Buyer's agreement to pay Seller $ **N/A** (Option Fee) within 3 days after the Effective Date of this contract, Seller grants Buyer the unrestricted right to terminate this contract by giving notice of termination to Seller within **N/A** days after the Effective Date of this contract (Option Period). Notices under this paragraph must be given by 5:00 p.m. (local time where the Property is located) by the date specified. If no dollar amount is stated as the Option Fee or if Buyer fails to pay the Option Fee to Seller within the time prescribed, this paragraph will not be a part of this contract and Buyer shall not have the unrestricted right to terminate this contract. If Buyer gives notice of termination within the time prescribed, the Option Fee will not be refunded; however, any earnest money will be refunded to Buyer. The Option Fee ☐ will ☐ will not be credited to the Sales Price at closing. **Time is of the essence for this paragraph and strict compliance with the time for performance is required.**

**24. CONSULT AN ATTORNEY BEFORE SIGNING:** TREC rules prohibit real estate license holders from giving legal advice. READ THIS CONTRACT CAREFULLY.

Buyer's Attorney is: _____  Seller's Attorney is: _____

Phone: _____  Phone: _____

Fax: _____  Fax: _____

E-mail: _____  E-mail: _____

EXECUTED the __9th__ day of __June__, __2020__ (EFFECTIVE DATE).
(BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)

Buyer  **Paul Hathaway**  Seller  **Kent Ries, Court Ordered Liquidator**

Buyer  Seller



The form of this contract has been approved by the Texas Real Estate Commission. TREC forms are intended for use only by trained real estate license holders. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, (512) 936-3000 (http://www.trec.texas.gov) TREC NO. 25-12. This form replaces TREC NO. 25-11.

Contract Concerning __100 ac+/- in NW/4 of Sec 76,Blk A-5, Wheeler Co.__   Page 9 of 10    2-12-18
(Address of Property)

## RATIFICATION OF FEE

Listing Broker has agreed to pay Other Broker _____N/A_____ of the total Sales Price when Listing Broker's fee is received. Escrow Agent is authorized and directed to pay Other Broker from Listing Broker's fee at closing.

Other Broker:             Listing Broker:
By: _____      By: _____

### BROKER INFORMATION AND AGREEMENT FOR PAYMENT OF BROKERS' FEES

| | | | |
|---|---|---|---|
| **N/A** | **N/A** | **Lewis Whitaker Real Estate, LLC** | **9009284** |
| Other Broker | License No. | Listing or Principal Broker | License No. |
| **N/A** | **N/A** | **DBA Whitaker Real Estate** | |
| Associate's Name | License No. | Listing Associate's Name | License No. |
| **N/A** | | **lewis@whitakerrealestate.com** | **(806)356-6100** |
| Associate's Email Address | Phone | Listing Associate's Email Address | Phone |
| **N/A** | | **Lewis Whitaker** | **0194719** |
| Licensed Supervisor of Associate | License No | Licensed Supervisor of Listing Associate | License No. |
| | | **4600 W I-40, Suite 101** | **(806)356-6100** |
| Other Broker's Office Address | Phone | Listing Broker's Office Address | Phone |
| **N/A** | | **Amarillo**    **TX** | **79106** |
| City   State   Zip | | City   State | Zip |

represents    ☐ Buyer only as Buyer's agent
               ☐ Seller as Listing Broker's subagent

_____    _____
Selling Associate          License No.

_____    _____
Selling Associate's Email Address    Phone

_____    _____
Licensed Supervisor of Selling Associate   License No.

_____
Selling Associate's Office Address

_____
City       State      Zip

represents    ☒ Seller Only
             ☐ Buyer Only
             ☐ Seller and Buyer as an intermediary

Upon closing of the sale by Seller to Buyer of the Property described in the contract to which this fee agreement is attached: (a) ☐ Seller ☐ Buyer will pay Listing/Principal Broker ☐ a cash fee of $ **N/A** _____ or ☐ __**N/A**__ % of the total Sales Price; and (b) ☐ Seller ☐ Buyer will pay Other Broker ☐ a cash fee of $ **N/A**_____ or ☐ __**N/A**__ % of the total Sales Price. Seller/Buyer authorizes and directs Escrow Agent to pay the brokers from the proceeds at closing.

> Brokers' fees are negotiable. Brokers' fees or the sharing of fees between brokers are not fixed, controlled, recommended, suggested or maintained by the Texas Real Estate Commission.

_____             _____
Seller                                                Buyer

_____             _____
Seller                                                Buyer

==Do not sign if there is a separate written agreement for payment of Brokers' fees.==

TXR 1701                                                                                                   TREC NO. 25-12
            Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                 MOBEETIE

Contract Concerning __**100 ac+/- in NW/4 of Sec 76,Blk A-5, Wheeler Co.**__ Page 10 of 10     2-12-18
(Address of Property)

## OPTION FEE RECEIPT

Receipt of $**N/A**_____ (Option Fee) in the form of _____**N/A**_____
is acknowledged.

_____
Seller or Listing Broker                                                                                                     Date

## EARNEST MONEY RECEIPT

Receipt of $**5,000.00**_____ Earnest Money in the form of  Ck# 5914
is acknowledged.
**Wheeler Title & Abstract Co.**   Chalene Shelley   chefley@sheltontitleco.com  6/11/2020
Escrow Agent                             Received by           Email Address                          Date/Time

**PO Box 506 or 112 E Texas Ave**                    **(806)826-3526**
Address                                                                                                                          Phone

**Wheeler**                         **TX**          **79096**         **(806)826-5013**
City                                     State              Zip                                                                  Fax

## CONTRACT RECEIPT

Receipt of the Contract is acknowledged.
**Wheeler Title & Abstract Co.**   Chalene Shelley   chefley@sheltontitleco.com  6/11/2020
Escrow Agent                             Received by           Email Address                               Date

**PO Box 506 or 112 E Texas Ave**                    **(806)826-3526**
Address                                                                                                                          Phone

**Wheeler**                         **TX**          **79096**         **(806)826-5013**
City                                     State              Zip                                                                  Fax

## ADDITIONAL EARNEST MONEY RECEIPT

Receipt of $**N/A**_____ additional Earnest Money in the form of _____**N/A**_____
is acknowledged.
**N/A**
Escrow Agent                             Received by           Email Address                          Date/Time
**N/A**
**N/A**
Address                                                                                                                          Phone
**N/A**
City                                     State              Zip                                                                  Fax

TXR 1701                                                                                                               TREC NO. 25-12
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com       MOBEETIE

APPROVED BY THE TEXAS REAL ESTATE COMMISSION 10-10-11
**ADDENDUM FOR SELLER'S DISCLOSURE OF INFORMATION ON LEAD-BASED PAINT AND LEAD-BASED PAINT HAZARDS AS REQUIRED BY FEDERAL LAW**

CONCERNING THE PROPERTY AT **100 ac+/- in NW/4 of Sec 76, Blk A-5** **Wheeler Co.**
(Street Address and City)

A. **LEAD WARNING STATEMENT:** "Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-paint hazards is recommended prior to purchase."
**NOTICE: Inspector must be properly certified as required by federal law.**

B. **SELLER'S DISCLOSURE:**
1. PRESENCE OF LEAD-BASED PAINT AND/OR LEAD-BASED PAINT HAZARDS (check one box only):
   - [ ] (a) Known lead-based paint and/or lead-based paint hazards are present in the Property (explain): **N/A**
   - [X] (b) Seller has no actual knowledge of lead-based paint and/or lead-based paint hazards in the Property.
2. RECORDS AND REPORTS AVAILABLE TO SELLER (check one box only):
   - [ ] (a) Seller has provided the purchaser with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the Property (list documents): **N/A**
   - [X] (b) Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the Property.

C. **BUYER'S RIGHTS** (check one box only):
- [X] 1. Buyer waives the opportunity to conduct a risk assessment or inspection of the Property for the presence of lead-based paint or lead-based paint hazards.
- [ ] 2. Within ten days after the effective date of this contract, Buyer may have the Property inspected by inspectors selected by Buyer. If lead-based paint or lead-based paint hazards are present, Buyer may terminate this contract by giving Seller written notice within 14 days after the effective date of this contract, and the earnest money will be refunded to Buyer.

D. **BUYER'S ACKNOWLEDGMENT** (check applicable boxes):
- [ ] 1. Buyer has received copies of all information listed above.
- [X] 2. Buyer has received the pamphlet *Protect Your Family from Lead in Your Home*.

E. **BROKERS' ACKNOWLEDGMENT:** Brokers have informed Seller of Seller's obligations under 42 U.S.C. 4852d to: (a) provide Buyer with the federally approved pamphlet on lead poisoning prevention; (b) complete this addendum; (c) disclose any known lead-based paint and/or lead-based paint hazards in the Property; (d) deliver all records and reports to Buyer pertaining to lead-based paint and/or lead-based paint hazards in the Property; (e) provide Buyer a period of up to 10 days to have the Property inspected; and (f) retain a completed copy of this addendum for at least 3 years following the sale. Brokers are aware of their responsibility to ensure compliance.

F. **CERTIFICATION OF ACCURACY:** The following persons have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

*Paul Hathaway* 6-9-20 _____ 6/9/20
Buyer                Date        Seller                Date
**Paul Hathaway**               **Kent Ries, Court Appointed Liquidator**

_____ Date    *Lewis Whitaker* 6-9-2020
Buyer                     Seller                Date
                          Listing Broker
                          **Lewis Whitaker**

_____ Date
Other Broker

The form of this addendum has been approved by the Texas Real Estate Commission for use only with similarly approved or promulgated forms of contracts. Such approval relates to this contract form only. TREC forms are intended for use only by trained real estate licensees. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not suitable for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, 512-936-3000 (http://www.trec.texas.gov)

(TXR 1906) 10-10-11 **TREC No. OP-L**



## INFORMATION ABOUT ON-SITE SEWER FACILITY

USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS®, INC. IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc., 2004

**CONCERNING THE PROPERTY AT** __100 ac+/- in NW/4 of Sec 76, Blk A-5 Wheeler Co.,__

### A. DESCRIPTION OF ON-SITE SEWER FACILITY ON PROPERTY:

(1) Type of Treatment System: ☐ Septic Tank ☐ Aerobic Treatment ☒ Unknown

(2) Type of Distribution System: _____ ☒ Unknown

(3) Approximate Location of Drain Field or Distribution System: _____ ☒ Unknown

(4) Installer: _____ ☒ Unknown

(5) Approximate Age: _____ ☒ Unknown

### B. MAINTENANCE INFORMATION:

(1) Is Seller aware of any maintenance contract in effect for the on-site sewer facility? ☐ Yes ☒ No
If yes, name of maintenance contractor: _____
Phone: _____ contract expiration date: _____
*Maintenance contracts must be in effect to operate aerobic treatment and certain non-standard" on-site sewer facilities.)*

(2) Approximate date any tanks were last pumped? _____

(3) Is Seller aware of any defect or malfunction in the on-site sewer facility? ☐ Yes ☒ No
If yes, explain: _____

(4) Does Seller have manufacturer or warranty information available for review? ☐ Yes ☒ No

### C. PLANNING MATERIALS, PERMITS, AND CONTRACTS:

(1) The following items concerning the on-site sewer facility are attached:
☐ planning materials ☐ permit for original installation ☐ final inspection when OSSF was installed
☐ maintenance contract ☐ manufacturer information ☐ warranty information ☐ _____

(2) "Planning materials" are the supporting materials that describe the on-site sewer facility that are submitted to the permitting authority in order to obtain a permit to install the on-site sewer facility.

(3) **It may be necessary for a buyer to have the permit to operate an on-site sewer facility transferred to the buyer.**

(TXR-1407) 1-7-04    Initialed for Identification by Buyer _P.H._, _____ and Seller _/L_, _____    Page 1 of 2

Whitaker Real Estate, 4600 I-40 West Ste.101 Amarillo TX 79106    Phone: (806) 356-6100    Fax:    MOBEETIE
L. Whitaker    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Information about On-Site Sewer Facility concerning **100 ac+/- in NW/4 of Sec 76,Blk A-5 Wheeler Co.,**

**D. INFORMATION FROM GOVERNMENTAL AGENCIES:** Pamphlets describing on-site sewer facilities are available from the Texas Agricultural Extension Service. Information in the following table was obtained from Texas Commission on Environmental Quality (TCEQ) on 10/24/2002. The table estimates daily wastewater usage rates. Actual water usage data or other methods for calculating may be used if accurate and acceptable to TCEQ.

| Facility | Usage (gal/day) without water-saving devices | Usage (gal/day) with water-saving devices |
|---|---|---|
| Single family dwelling (1-2 bedrooms; less than 1,500 sf) | 225 | 180 |
| Single family dwelling (3 bedrooms; less than 2,500 sf) | 300 | 240 |
| Single family dwelling (4 bedrooms; less than 3,500 sf) | 375 | 300 |
| Single family dwelling (5 bedrooms; less than 4,500 sf) | 450 | 360 |
| Single family dwelling (6 bedrooms; less than 5,500 sf) | 525 | 420 |
| Mobile home, condo, or townhouse (1-2 bedroom) | 225 | 180 |
| Mobile home, condo, or townhouse (each add'l bedroom) | 75 | 60 |

This document is not a substitute for any inspections or warranties. This document was completed to the best of Seller's knowledge and belief on the date signed. Seller and real estate agents are not experts about on-site sewer facilities. Buyer is encouraged to have the on-site sewer facility inspected by an inspector of Buyer's choice.

_[signed]_  6/8/20
Signature of Seller    Date
**Kent Ries, Court Appointed Liquidator**

Signature of Seller    Date

Receipt acknowledged by:

_Paul Hathaway_  6-9-20
Signature of Buyer    Date
**Paul Hathaway**

Signature of Buyer    Date