Davor Rukavina, Esq.
Texas Bar No. 24030781
Thomas Berghman, Esq.
Texas Bar No. 24082683
MUNSCH HARDT KOPF & HARR P.C.
500 N. Akard St., Ste. 3800
Dallas, Texas 75201
Telephone: 214-855-7500
Facsimile: 214-855-7584

ATTORNEYS FOR LESLIE PRITCHARD

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| MICHAEL STEPHEN GALMOR, | § | CASE NO. 18-20209-RLJ-7 |
| | § | |
| Debtor. | § | |
| | § | |
| | § | |
| In re: | § | |
| | § | |
| | § | |
| THE LIQUIDATION OF THE GALMOR | § | ADVERSARY NO. 19-2006 |
| FAMILY LIMITED PARTNERSHIP and | § | |
| GALMOR MANAGEMENT, LLC, | § | |

**MOTION OF LESLIE PRITCHARD TO COMPEL TURNOVER
OF PERSONAL PROPERTY BY DEBTOR MICHAEL STEPHEN GALMOR,
DEENA CARTER, AND JUSTIN MICHAEL GALMOR**

TO THE HONORABLE ROBERT L. JONES, U.S. BANKRUPTCY JUDGE:

COMES NOW Leslie Pritchard ("Pritchard"), in her capacity as the co-liquidator of the

Galmor Family Limited Partnership and Galmor Management, LLC, and files this her *Motion to*

*Compel Turnover of Personal Property By Debtor Michael Stephen Galmor, Deena Carter, and*

*Justin Michael Galmor* (the "Motion"), respectfully stating as follows:

## I.     RELIEF REQUESTED

1.     This Adversary Proceeding concerns the liquidation of the Galmor Family Limited

Partnership ("FLP") and its general partner, Galmor Management, LLC ("GM").   At a recent

deposition, debtor Michael Stephen Galmor (the "Debtor") testified that he still has in his personal

possession a large amount of Personalty (defined below) belonging either to the FLP or, if not to the

FLP, then to himself personally, in which case such personalty would be property of his bankruptcy

estate (the "Bankruptcy Estate") being administered by trustee Kent Ries (the "Trustee"). By this

Motion, Pritchard requests the entry of an order:

(i)     commanding the Debtor to turn over to her all such Personalty for inventorying, inspection, photographing, and ultimate disposition;

(ii)    accounting to her for all Personalty no longer in the Debtor's possession, custody, or control;

(iii)   commanding the Debtor to state, as to each item of Personalty, whether he believes such to be his property or the property of the FLP, in which case, if the Debtor claims ownership thereof, the disposition of such property will be subject to further order of the Court;

(iv)    authorizing Pritchard to enter on to the Debtor's premises, including through the use of such agents as she deems appropriate, to make an inspection of and for the Personalty, and commanding the Debtor to cooperate with the same by identifying and locating the same; and

(v)     with respect to Deena Carter ("Carter") and the Debtor's son, Justin Michael Galmor ("J. Galmor"), the Debtor has testified that FLP property is on the property of these individuals, therefore, also commanding these individuals to permit Pritchard and her agents entry on to their properties, and authorizing Pritchard and her agents on to such properties, to locate and identify potential FLP property and permit Pritchard to inventory the same and to remove the same, where there is no ownership dispute, or to otherwise identify if and with respect to which item there is an ownership dispute.

2.      The purpose of this Motion is not to adjudicate the ownership of disputed Personalty.

Rather, it is to locate the Personalty that remains, ascertain which of the Personalty is subject to an

ownership dispute—with respect to which all rights of all parties are preserved—and commence the

process of liquidating undisputed Personalty or adjudicating the ownership of disputed Personalty.

The need for this Motion is simply that the Debtor, despite various orders and the requirements of the

Bankruptcy Code and Texas law, has now for three years failed to do what is required of him, thus

necessitating this Court's intervention.

## II.    **BACKGROUND**

3.      On June 19, 2018 (the "Petition Date"), the Debtor filed his voluntary petition for relief under Chapter 11 of the Bankruptcy Code, thereby creating the Bankruptcy Estate and initiating bankruptcy case number 18-20209.

4.      On January 8, 2019, the Court ordered the conversion of the Bankruptcy Case to Chapter 7.  The Trustee is the duly appointed trustee of the Bankruptcy Estate.

5.      Prior to the Petition Date, and after, the Debtor managed the FLP.  The FLP was created by the Debtor's parents, and was funded with various items of personal property and real property, for the purpose of providing for their children after their deaths.  The FLP was managed by GM, as its general partner, the sole manager of which was the Debtor after the parents' deaths.  Thus, the Debtor managed the FLP and had physical possession and control of its assets.

6.      Upon the Petition Date, the Debtor's interest in the FLP became property of the Bankruptcy Estate.  For this reason and others, including extensive disputes between the Debtor and his siblings regarding the management of the FLP, the Trustee commenced this Adversary Proceeding seeking to liquidate the FLP and, after payment of its debts (including alleged debts to the Bankruptcy Estate), to distribute its proceeds to its limited partners/beneficiaries.

7.      Pritchard is the Debtor's sister and daughter of their parents.  Pritchard is also a beneficiary of the FLP, as are other siblings.  Pritchard timely contested the relief requested by the Trustee in this Adversary Proceeding.  Ultimately, after extensive negotiations, Pritchard and the Trustee agreed that the FLP should be liquidated and that the two of them would jointly liquidate the FLP: the Trustee liquidating all real property, and Pritchard liquidating all other property.

8.      Thus, by its *Agreed Judgment: (i) Ordering Supervised Liquidation of Texas Entities; and (ii) Appointing Managers of the Same; and (iii) Severing Remaining Claims* [docket no. 26] entered on April 24, 2020 (the "Agreed Judgment"), the Court: (i) appointed the Trustee to liquidate

the real property held by the FLP; and (ii) appointed Pritchard as the liquidator and manager of the

FLP for all other matters, including to liquidate any personal property of the FLP. The Agreed

Judgment further provides that:

(i)     Pritchard may "seek[] the Court's assistance as would otherwise be appropriate under the Texas Business Organizations Code, all other applicable statutes, and equity," Judgment at p. 5;

(ii)     Pritchard may "assemble, take, marshal, and keep all property of GFLP and GMLLC, including all books and records, bank accounts, accounts receivable, land records, tax records, credit card files, and privileges, further including all, passwords, and to compel the same through subpoena duces tecum or through subsequent order of the Court"; Judgment at p. 6;

(iii)     Pritchard may "seek such assistance from this Court, by way of injunction and otherwise, in the fulfillment of her duties as may be appropriate"; Judgment p. 6; and

(vi)     that "all persons are commanded to provide Pritchard and/or the Trustee any books and records of GFLP and GMLLC, or of MSG, or regarding any property of GFLP and GMLLC, as may be appropriate and necessary to enable Pritchard and/or the Trustee to carry out their duties under this Judgment." Judgment at p. 9.

9.     Pritchard files this Motion in her capacity as the liquidator of the FLP and pursuant to

the authority and provisions of the Judgment cited above.

10.     The Court has jurisdiction over this Motion under 28 U.S.C. § 1334. Such jurisdiction

is core under 28 U.S.C. § 157(b)(2) because this Motion involves identifying and locating property

of the Bankruptcy Estate, because Pritchard and the Trustee have consented to this Court's entry of

final judgments and orders, and because the Debtor, by virtue of having filed a voluntary petition for

relief from this Court, likewise consented to this Court's entry of final judgments and orders.

## III.   <u>THE PERSONALTY</u>

11.     Pritchard deposed the Debtor on March 24, 2021 in a related adversary proceeding.

During that deposition, Pritchard introduced the FLP's tax returns, which were approved and

authorized by (and presumably signed by) the Debtor. These tax returns contained listings of various

assets owned by the FLP on depreciation schedules appended to the returns. For example, the 2017 tax return and depreciation schedule lists multiple items of personal property (collectively, with the guns and Gin Yard personal property discussed below, the "Personalty"), including: (i) numerous automobiles, trucks, and trailers; (ii) various grain bins, barns, and mobile homes; (iii) many cattle pens, fences, pumps, and office furniture; (iv) plows, trailers, irrigation equipment, hoes, front end loaders, and tractors; and (v) hundreds of heads of cattle. *See* Exhibit "A" attached hereto. That same tax return lists the "cost basis" of the Personalty at $2,146,587 and remaining depreciated assets at $1,617,185.

12. The Debtor confirmed at his deposition that much, if not most, of this Personalty still exists and is in his possession. For example, he confirmed that several vehicles still exists which are the property of the FLP, while he confirmed that other vehicles also still exist which allegedly are not property of the FLP. *See* Exhibit "B" at 258:1-261:14 & 80:14-82-2. He confirmed that an International grain truck is still there at his house, *id*. at 82:6-8; Ford dually, *id*. at 82:22-83:2; several grain trucks and a fuel truck, *id*. at 83:3-13; cone grain bins, *id*. at 82:14-21; and various trucks and combines. *Id*. at 96:1-100:9. However, with respect to certain items, like Kubota tractor, the Debtor testified that he owned some tractors, his son owned some tractors, and the FLP owned some tractors, and it cannot be ascertained which is which without reviewing the serial numbers. *Id*. at 96:1-99:9. He confirmed that some tractors are on J. Galmor's property. *Id*. at 96:6-17.

13. Separately, at his deposition, the Debtor confirmed that he still has approximately 20 of his parents' guns in his personal possession, which should be property of the FLP. 253:4-254:16. The Debtor did not schedule these guns as either his property or as someone else's property in his possession. Separately, during the Bankruptcy Case, the Trustee sold certain real property called the "Gin Yard." That real property had a large number of personal items on it, which the Debtor removed

to Carter's property and which appears to be FLP property. *Id*. at 84:4-85:8. Finally, there are certificates of deposit worth $600,000, upon information and belief, that need to be accounted for.

14.     On April 20, 2021, counsel for Pritchard communicated with counsel for the Debtor requesting that the parties cooperate on taking an inventory and permitting Pritchard's agents on to the property for that purpose, geared towards a potentially consensual resolution of ownership and other issues. Pritchard has not heard back from the Debtor. However, at his deposition, the Debtor was also asked "[a]nd if it's true that it's family partnership property as opposed to your own property, would you have any problem with surrendering that to the family partnership," to which the Debtor answered: "No, sir." Exhibit "B" at 80:23-81:2.

## IV.     DISCUSSION

15.     The Debtor has admitted under oath that much of the Personalty remains, that it is not of inconsequential value, and that some of it is in his possession and some in the possession of Carter and J. Galmor. The only legitimate question is who owns the Personalty, except for those instances where the Debtor has already admitted under oath that the FLP owns the Personalty. This question, in turn, cannot be addressed or answered until it is first known what all of the Personalty is and where it is; *i.e.* until it is marshalled and inventoried. And, as years have gone by already, and as additional time goes by, the Personalty will likely lose still more value as it is machinery that it is used, or vehicles that may rust, or items that may be lost or stolen.

16.     In sum, issues concerning the Personalty need to be promptly addressed and, as the Debtor would not do so consensually, it is the Court that should address these issues and supervise the matter. To be clear, it is the Debtor who is at fault here. The Debtor was required to, but failed to, schedule various items of the Personalty as either items that he owned or that he was in possession of for third parties. The Debtor was required under section 542(a) of the Bankruptcy Code to deliver the Personalty that he owned to the Trustee as property of the Bankruptcy Estate, but he failed to do

so. The Debtor was required to deliver property of the FLP to the new manager when he was removed as manager, and he was commanded by the Court's Judgment to do so, yet he failed again. So, as the Court considers this Motion, the Court should begin with the understanding that Pritchard is now forced to act to clean up the Debtor's own mess.

17.      The relief requested in this Motion may be brought by motion, as opposed to adversary proceeding, and is appropriate, for the following reasons. First, to the extent that the Debtor owns the Personalty, then he has failed in his obligation to turn the same over to the Bankruptcy Estate, and a turnover against a debtor may be sought by motion practice. *See* Fed. R. Bankr. P. 7001(1). Second, the purpose of an adversary proceeding with a summons is to obtain personal jurisdiction over the parties. The Court obviously has personal jurisdiction over the Debtor, whose Bankruptcy Case remains pending. Third, because the FLP is being liquidated by liquidators under Texas law, albeit subject to this Court controlling that process instead of a state court, Texas law permits Pritchard to proceed by way of motion instead of adversary proceeding because Texas law permits this Court to "make any other order, direction, or inquiry that the circumstances may require" as it supervises the liquidation of the FLP. TEX. BUS. ORG. CODE ANN. § 11.054.

18.      With respect to Carter and J. Galmor, the Debtor has testified that property of the FLP is apparently located on their properties. Under Federal Rule of Civil Procedure 34, as made applicable by Fed. R. Bankr. P. 2004 and 7034, the Court may "permit entry onto designated land . . . so that the requesting party may inspect, measure, survey, photograph, test, sample the property or any designated object or operation on it." FED. R. CIV. P. 34(a)(2). And, under 11 U.S.C. § 542(a), the Court may order any person in possession of property of the Bankruptcy Estate, and under section 11.054 of the Texas Code, any person in possession of property of the FLP, to turn the same over to the Trustee or to Pritchard. Thus, the Court may order Carter and J. Galmor to submit their properties

to inspection to locate the Personalty and, where there is no dispute as to ownership, to immediately turn the same over to the Trustee or the FLP.

19. Pritchard understands the general rule that ownership disputes should not be adjudicated in the context of a turnover action. Nothing herein is intended to violate that rule or prejudice any ownership issue. If the Debtor believes that he owns any of the Personalty to the exclusion of the Trustee and the FLP, then he can so state and this Court will adjudicate that issue in due course. However, nothing can commence, and the Personalty cannot be monetized, as the Debtor continues to sit there, for three years now, and not disclose what the Personalty is, where it is, and who owns it, except by being compelled to do so at his deposition and by orders of this Court.

## V. **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Pritchard respectfully requests that the Court enter an order: (i) granting this Motion; (ii) commanding the Debtor to permit Pritchard and her agents on to his properties and to locate and marshal all of the Personalty, and to permit the inspection, inventorying, and photographing of the same; (iii) commanding the Debtor to turn over to Pritchard all of the Personalty that the Debtor does not claim the ownership of; (iv) commanding Carter to permit Pritchard and her agents on to her properties and to locate and marshal all of the Personalty, and to permit the inspection, inventorying, and photographing of the same, and ordering her to turn over to Pritchard all of such property that neither she nor the Debtor claim ownership of; (v) commanding J. Galmor to permit Pritchard and her agents on to his properties and to locate and marshal all of the Personalty, and to permit the inspection, inventorying, and photographing of the same, and ordering him to turn over to Pritchard all of such property that neither she nor the Debtor claim ownership of; (vi) authorizing the issuance of such writs to the U.S. Marshals as may be necessary and appropriate to enforce said order; and (vii) granting Pritchard such other and further relief to which she may be justly entitled.

RESPECTFULLY SUBMITTED this 18th day of June, 2021.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/  Davor Rukavina

Davor Rukavina, Esq.
Texas Bar No. 24030781
Thomas Berghman, Esq.
Texas Bar No. 24082683
3800 Ross Tower
500 North Akard St.
Dallas, Texas  75201
Telephone: (214) 855-7500
Facsimile: (214) 978-4375

**ATTORNEYS FOR LESLIE PRITCHARD**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on this the 18th day of June, 2021, he caused true and correct copies of this document, with all exhibits hereto, to be served, on the persons listed below and by the means listed below:

Kent Ries, Esq., by e-mail at Kent@kentries.com

Matt Sherwood, counsel for Debtor, by e-mail at: msherwood@bf-law.com

Debtor, by Federal Express overnight and U.S. first class mail, postage prepaid, at:

> Stephen Michal Galmor
> #7
> 6535 US-83
> Shamrock, TX 79079

Carter:

Denna Carter, by Federal Express overnight and U.S. first class mail, postage prepaid, at:

> Deena Carter
> 7010 U.S. Hwy 83
> Twitty, TX 79079

Justin Michael Galmor, by Federal Express overnight and U.S. first class mail, postage prepaid, at:

> Justin Michael Galmor
> 320 Mary Drive
> Elk City, Oklahoma 73644

By: /s/ Davor Rukavina
Davor Rukavina, Esq.