Kent Ries
State Bar No. 16914050
2700 S. Western St., Suite 300
Amarillo, Texas 79109
(806) 242-7437
(806) 242-7440 - Fax
COUNSEL FOR TRUSTEE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **MICHAEL STEPHEN GALMOR,** | § | **CASE NO. 18-20209-RLJ-7** |
| | § | |
| Debtor. | § | |
| | § | |
| **And** | § | |
| | § | |
| **GALMOR'S/G&G STEAM SERVICE, INC.,** | § | **CASE NO. 18-20210-RLJ-7** |
| | § | |
| Debtor. | § | |
| | § | |
| **KENT RIES, TRUSTEE,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | **ADVERSARY NO. 19-2006** |
| | § | |
| **MICHAEL STEPHEN GALMOR,** | § | |
| **RANDY MARK GALMOR, LESLIE** | § | |
| **DONNETTE GALMOR PRITCHARD,** | § | |
| **TRACI MARIE GALMOR COLEMAN** | § | |
| **and GALMOR FAMILY LIMITED** | § | |
| **PARTNERSHIP,** | § | |
| | § | |
| Defendants. | § | |

## MOTION TO DECLARE OWNERSHIP OF THE ESTATE IN THE GFLP PROCEEDS

TO THE HONORABLE ROBERT L. JONES, BANKRUPTCY JUDGE:

COMES NOW, Kent Ries, Trustee ("Trustee") of the referenced Chapter 7 bankruptcy estates and Plaintiff in this Adversary Proceeding and files this Motion to Declare Ownership of the Estate in the GFLP proceeds, and in support thereof would respectfully show unto the Court as follows:

1. Michael Stephen Galmor ("MSG") filed for relief under Chapter 11 of the United States Bankruptcy Code on June 19, 2018. His case was converted to a Chapter 7 case on January 8, 2019. Kent Ries was subsequently appointed and qualified to serve as the Trustee in the bankruptcy case.

2. MSG scheduled an ownership of a 25% interest in the Galmor Family Trust and Galmor Family Limited Partnership in his bankruptcy schedules. (Item #32 in pleading number 19 and amended pleading number 94). The scheduled value was described as "unknown". No exemption was claimed for these assets. Therefore, these assets are property of the MSG bankruptcy Estate.

3. After MSG converted his case to a Chapter 7, he and three of his siblings conducted a mediation regarding multiple contested issues, including two state court lawsuits. The Trustee attended, though didn't naturally participate, in the June 11, 2019 mediation. The mediation resulted in a Compromise and Settlement Agreement signed by three of the four siblings (the "Compromise"). A true and correct copy of the Compromise is attached hereto as Exhibit A. The Trustee did not agree to or sign the Compromise, nor has this Court approved the Compromise.

4. Section 4.03 of the Compromise purports to allocate the bankruptcy's Estate's 25% interest in the various Galmor Trusts to fund litigation against the Trustee, with any excess going to the other three siblings, not including MSG. This allocation of the bankruptcy Estate's

interest in the Galmor Trusts should be determined by this Court to be ineffective, as the parties signing the Compromise had no authority to dispose of property of this bankruptcy Estate.

5.      The Galmor Trusts, or the four sibling directly, own the Galmor Family Limited Partnership and its corporate general partner (the "GFLP").  Section 4.05 of the Compromise seeks to liquidate the assets, mainly real estate, of the GFLP.  Any allocation in the Compromise of the bankruptcy Estate's interest in the GFLP should be determined by this Court to be ineffective, as the parties signing the Compromise had no authority to dispose of property of the bankruptcy Estate.

6.      After signing the Compromise, the parties to it were unable to execute the GFLP liquidation procedures.  In October, 2019 the three siblings (not including Rudas Galmor, who also didn't sign the Compromise) signed an Amendment to the Compromise, whereby the Trustee would liquidate the GFLP's real estate.  The Trustee did not sign this Amendment, nor has this Court approved the Amendment.  A true and correct copy of the Amendment is attached hereto as Exhibit B.

7.      On August 30, 2019 the Trustee filed this Adversary Proceeding No. 19-2006 to prevent the imminent foreclosure of GFLP property by a bank and to liquidate the GFLP.  This Court signed an Agreed Order preventing the foreclosure on August 30, 2019.  This Court then entered an Agreed Judgement on the liquidation of the GFLP on April 23, 2020.  That Judgement authorized the Trustee to sell all the GFLP real estate and hold the proceeds pending further Court Order.  The Trustee has completed that directive, and currently holds $1,642,762.50 as the net proceeds of the sales.

8.      The Agreed Judgement retains this Court's exclusive jurisdiction over the liquidation of the GFLP, including any distribution of the liquidation proceeds (Judgement

paragraphs 12 through 14). The Trustee is not requesting a distribution in this Motion, as that would be premature at this time. Creditors of the GFLP must be paid first, inducing the resolution of the Trustee's claim in Adversary Proceeding No. 20-2003. Further, there are potentially income taxes due from the sale of the real estate, and in any event tax returns for the GFLP must be filed by Leslie Pritchard before any distribution from the GFLP proceeds is determined.

9.      The Trustee is requesting in this Motion that the provisions of the Compromise which attempted in any way to divert ownership of the bankruptcy Estate in the Galmor Trusts or GFLP to a "litigation expense fund", or to the other siblings, be declared void by this Court. Further, the Trustee is requesting that the bankruptcy Estate's 25% ownership in the Galmor Trusts and GFLP be judicially recognized for all purposes, including any distribution of the GFLP proceeds under the Agreed Judgement in this Adversary Proceeding.

10.     There appears to be no dispute that MSG (now the MSG bankruptcy Estate) and his three siblings in the Compromise agreement are the proper owners of the GFLP proceeds. The GFLP was owned by the Galmor Trusts until the parents of the four siblings passed away. Those deaths occurred prior to this bankruptcy case, at which time the four siblings became equally entitled to the equity in the GFLP and Trusts.

**WHEREFORE PREMISES CONSIDERED,** Kent Ries, Trustee herein, requests the Court to declare the bankruptcy Estate of MSG owns a 25% interest in the Galmor Trust and GFLP, including all proceeds from the same, and for such further relief, at law or in equity, to which the Trustee may show himself justly entitled.

Respectfully submitted,

Kent Ries, Attorney at Law
2700 S. Western St., Suite 300
Amarillo, Texas 79109
(806) 242-7437
(806) 242-7440-Fax

By:  /s/ Kent Ries                                    
        Kent Ries
        State Bar No. 16914050

COUNSEL FOR TRUSTEE

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 29th day of October, 2021, a true and correct copy of the

Motion was sent either electronically via ECF or mailed in the United States mail, postage

prepaid, to the parties listed below:

Pat Swindell, Attorney for Michael Stephen Galmor
106 S.W. 7th Avenue
Amarillo, Texas
79101

Davor Rukavina, Attorney for Leslie Pritchard
Munsch, Hardt, Kopf & Harr
500 N. Akard Street, Suite 3800
Dallas, Texas 75201-6659

Scott Flow, Attorney for Rudas Galmor
Flow Law Firm, PLLC
800 S.W. 9th Ave
Amarillo, Texas 79105

Kenneth Netardus, Attorney for Traci Coleman
Stockard J B & N
1030 N. Western St.
Amarillo, Texas 79106

 /s/  Kent Ries                                    
Kent Ries

**MOTION TO DECLARE OWNERSHIP OF THE ESTATE IN THE GFLP PROCEEDS -PAGE 5**

# EXHIBIT "A"

## COMPROMISE AND SETTLEMENT AGREEMENT

### I.    Parties

The following are the parties (collectively, the "Parties") to this Compromise, Settlement, and Release Agreement.

1.01    Michael Stephen Galmor, a natural person ("MSG");

1.02    Traci Marie Galmor Wilson ("Traci");

1.03    Randy Mark "Rudas" Galmor ("Rudas");

1.04    Leslie Donnette Galmor Pritchard ("Pritchard");

1.05    The Galmor Trusts, as defined below, by and through Michael Stephen Galmor, Trustee;

1.06    Estate of Shirley Jo Galmor, Deceased;

1.07    Galmor Family Limited Partnership, a Texas limited partnership ("GFLP");

1.08    Galmor Management, LLC, a Texas limited liability company ("Galmor GP").

### II.    Rules of Construction and Definitions

2.01    Party names and terms are defined under Article I of this Agreement.

2.02    All exhibits referenced and described in this Agreement are incorporated by reference herein as if fully set forth verbatim.

2.03    Defined terms which are not a proper noun need not be capitalized in order to carry the meaning provided in this Article II of this Agreement.

2.04    Unless otherwise defined herein, word shall have the same meaning as used in Code § 101 (as "Code" is defined below).

2.05    "Adversary Proceeding" shall mean and refer to Adv. No. 18-02010, *Leslie Pritchard, Individually and/or Derivatively on behalf of Estate of Shirley Jo Galmor, Galmor Family Limited Partnership, Galmor Management LLC, Bobby Don and Shirley Jo Galmor Living Trust, Galmor Family Trust, and Galmor Contribution Trust, Plaintiff(s)    v. Michael Stephen Galmor and Galmor's/G&G Steam Service, Inc.,* in the in the United States Bankruptcy Court for the Northern District of Texas, Amarillo Division, and including if and when applicable any appeals or derivative proceedings.

2.06    "Agreement" shall mean and refer to this Compromise, Settlement, and Release Agreement.

2.07    "<u>Bankruptcy Cases</u>" shall mean and refer to the MSG Case and the G&G Case.

2.08    "<u>Bankruptcy Court</u>" shall mean and refer to the United States Bankruptcy Court for the Northern District of Texas, Amarillo Division, which Court presided over the Bankruptcy Cases.

2.09    "<u>Claim</u>" or "<u>Claims</u>" shall mean and refer to any "claim" as defined in Code § 101(5)[1] and includes any Setoff, right, remedy, fact, issue, or defense with respect to any such Claim.

2.10    "<u>Code</u>" shall mean and refer to the United States Bankruptcy Code, Title 11 of the United States code, 11 U.S.C. § 101 et seq.

2.11    "<u>Combined Assets</u>" shall mean and refer to all property, Claims, and/or interests of any kind or nature of the Probate Estates, the Galmor Trusts, GFLP, and Galmor GP.

2.12    "<u>Combined Interests</u>" shall mean and refer to the Combined Assets, the Probate Estates, the Galmor Trusts, GFLP, and Galmor GP.

2.13    "<u>Designated Auctioneer</u>" shall mean and refer to Assiter Auctioneers.

2.14    "<u>Designated Broker</u>" shall mean and refer to the broker to which the parties agree by August 12, 2019.

2.15    "<u>Document</u>" shall mean and refer to shall mean and include all documents and tangible things to the very broadest extent included within the scope of the Rules, including, but not limited to, the originals and all drafts and copies, together with any annotations or highlighted copies containing all or part of the information requested, in the possession, custody or control of a party, a party's attorneys, representative, employees, agents, or any other natural person or business or legal entity acting or purporting to act for or on a party's behalf, or their respective Personnel as the case may be. Also, the term "Document" or "writing" means any medium whatsoever, including all electronic, recorded and digital media of any kind, upon which intelligence or information can be recorded, or retrieved, and includes, without limitation, the original and each copy, regardless of origin and location, of any written material, correspondence, electronic mail, text or SMS messages, chat sessions, note file, book, pamphlet, printout, chart, record, report, periodical, letter, memorandum, (including any memorandum or report of a meeting or conversation), invoice, bill, order form, receipt, financial statement, accounting entry, diary, draft, working paper,

---

[1] Code § 101(5) defines "claim" as:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

chart, paper, print, drawing, sketch, graph, index, list, and any written, recorded, transcribed, punched, taped, filmed or graphic matter whatsoever, however produced or reproduced, which is in your possession, custody, or control or which was, but is no longer, in Your possession, custody, or control. The term "Document" or "writing" shall also include all copies or drafts of Documents by whatever means made, including specifically but not exclusively, those copies bearing commentary or notations not appearing on the original.

2.16    "Effective Date" shall mean and refer to the first date of execution of this Agreement by all Parties to this Agreement.

2.17    "External Claims" shall mean and refer to any Claims of any party asserted against the Combined Assets or the Combined Interests, or any combination or subset thereof, including any Claims relating to or asserted against the G&G Estate and/or the MSG Estate that relate to and/or could affect in any way the Combined Assets and/or the Combined Interests.

2.18    "G&G Case" shall mean and refer to Case No. 18-20210, *In re Galmor's/G&G Steam Service, Inc.*, pending in the Bankruptcy Court.

2.19    "G&G Estate" shall mean and refer to bankruptcy estate created under the Code with respect to Galmor's/G&G Steam Service, Inc. and/or the G&G Case.

2.20    "Galmor GP" shall mean and refer to Galmor Management, LLC, a Texas limited liability company and the general partner of GFLP.

2.21    "Galmor Trusts" shall mean and refer to the (i) The Bobby Don and Shirley Jo Galmor Living Trust, created by trust instrument dated July 20, 2005, and as amended by amendments on February 2, 2007, December 20, 2010, and October 28, 2011; (ii) The Galmor Family Trust created on April 3, 2013, upon the death of Bobby Don Galmor, pursuant to Part Three, Article Second of the Trust Instrument of the Living Trust as Amended; (iii) The Galmor Contribution Trust created on April 3, 2013, upon the death of Bobby Don Galmor, pursuant to Part Three, Article Second of the Trust Instrument of the Living Trust as Amended, and as set forth in the Exhibits to the Original Complaint; and any other trust created pursuant to The Bobby Don and Shirley Jo Galmor Living Trust, as amended.

2.22    "Galmor Trust Mineral Interests" shall mean and refer to any Mineral Interests owned by the Galmor Trusts.

2.23    "GFLP" shall mean and refer to Galmor Family Limited Partnership, a Texas limited partnership, and when the context requires shall also include and/or mean and refer to its general partner, Galmor Management, LLC, a Texas limited liability company.

2.24    "GFLP Mineral Interests" shall mean and refer to any Mineral Interests owned by GFLP.

2.25    "Homeplace" shall mean and refer to certain real property consisting of a 175 acre tract of land and improvements thereon and commonly referred to as 6535 Highway 83, Shamrock, Texas 79079.

2.26    "Homeplace Debt" shall mean and refer to that debt owed by MSG to the Galmor Trusts arising from his purchase of an interest in the Homeplace, secured by the December 10, 2014 Deed of Trust recorded at Volume 697, Pages 92-99 of the Wheeler County Texas property records.

2.27    "Lis Pendens Suit" shall mean and refer to Cause No. 13854, *Galmor Family Limited Partnership v. Leslie Pritchard,* in the 31st District Court, in and for Wheeler County, Texas

2.28    "Mineral Interests" shall mean and refer to any interest in any severed mineral interest or severed oil and gas interest including any lease, royalty, well, working interest, well bore interest, overriding royalty interest, or equity position and all current receivables arising from such interests.

2.29    "MSG Case" shall mean and refer to Case No. 18-20209, *In re Michael Stephen Galmor*, pending in the Bankruptcy Court.

2.30    "MSG Estate" shall mean and refer to bankruptcy estate created under the Code with respect to Michael Stephen Galmor and/or the MSG Case.

2.31    "MSG" shall mean and refer to Michael Stephen Galmor.

2.32    "MSG Mineral Interests" shall mean and refer to any Mineral Interests devised or distributed to MSG by the Galmor Trusts or the Estate of Shirley Jo Galmor, Deceased, or devised to MSG by the Last Will and Testament of Shirley Jo Galmor dated June 14, 2014 under a power of appointment.

2.33    "Original Complaint" shall mean and refer to Docket No. 1 in the Adversary Proceeding.

2.34    "Petition Date" shall mean and refer to June 19, 2019, the date that both Bankruptcy Cases commenced.

2.35    "Post-Petition" or "Postpetition" shall refer to the individual rights and interests of MSG existing after the Petition Date.

2.36    "PPOC" or "PPOCs" shall mean and refer to the proofs of claims filed by Pritchard in the MSG Case (Proof of Claim No. 15) and the G&G Case (Proof of Claim No. 32), and any amendments and/or supplements thereto.

2.37    "Pritchard Parties" shall mean and refer to (i) Pritchard, (ii) Traci, and (iii) Leslie Pritchard on behalf of decedent Shirley Jo Galmor, and individually and/or derivatively on behalf of the behalf of Estate of Shirley Jo Galmor, Deceased, Galmor Family Limited Partnership, a Texas limited partnership, Galmor Management LLC,

a Texas limited liability company, the Bobby Don and Shirley Jo Galmor Living Trust, the Galmor Family Trust, and the Galmor Contribution Trust.

2.38 "Probate" shall mean and refer to Cause No. 13,507, *In the Estate of Shirley Jo Galmor, Deceased*, pending in the 31st District Court of Wheeler County, TX.

2.39 "Probate Estates" shall mean the decedent estates of Bobby Don Galmor and/or Shirley Jo Galmor.

2.40 "Quarry Property" shall mean and refer to all interest in real property and locations from which the Combined Interests at any time prior to the Effective Date have extracted rock, sand, gravel, and other materials including particularly the rock quarry property in Wheeler County legally described as "All of Section Five (5), Block A-8, H&GN Ry. Co. Survey, Wheeler County, Texas."

2.41 "Released Parties" shall mean and refer to MSG, Pritchard, Traci, Rudas, the Probate Estates, the Galmor Trusts, GFLP, Galmor GP, and the G&G Estate and each of their respective successors and assigns, partners, parents, subsidiaries, affiliates, agents, attorneys, representatives, servants, officers, directors, employees, heirs, personal representatives, and all persons, natural or corporate, in privity with each or any thereof (whether or not specifically listed by name herein).

2.42 "Releasing Parties" shall mean and refer to MSG, Pritchard, Traci, Rudas, the Probate Estates, the Galmor Trusts, GFLP, and Galmor GP, and each of their respective successors and assigns. For the avoidance of doubt, the Parties agree that MSG is authorized to effectuate the releases herein on behalf of the Probate Estates, the Galmor Trusts, GFLP, and Galmor GP.

2.43 "Rule" shall mean and refer to the Federal Rules of Bankruptcy Procedure or a rule under the Federal Rules of Bankruptcy Procedure.

2.44 "Setoff" shall mean and refer to any Claim, counterclaim, crossclaim, third party claim, recoupment, setoff, or any other matter which may be used to reduce any External Claim.

2.45 "Subject Litigation" shall mean and refer to the Probate, the Will Contest, the Trustee Removal Action, the Adversary Proceeding, and the Lis Pendens Suit.

2.46 "Subject Mineral Interests" shall mean and refer to the MSG Mineral Interests, GFLP Mineral Interests, and Galmor Trusts Mineral Interests.

2.47 "Subject Real Property" shall mean and refer to the tracts of real property of the GFLP referenced and described in **Exhibit 001** attached hereto and incorporated by reference herein.

2.48 "Trustee Removal Action" shall mean and refer to Cause No. 13,765, *Leslie Pritchard, Individually and on behalf of Shirley Jo Galmor v. Michael Stephen Galmor, as Trustee of The Bobby Don and Shirley Jo Galmor Living Trust, as Trustee*

*of The Galmor Family Trust, and as Trustee of Galmor Contribution Trust* pending in the 31st District Court of Wheeler County, Texas.

2.49 "Trustee Ries" shall mean and refer to Kent Ries, the Chapter 7 Trustee under the Code appointed in the MSG Case and the G&G Case, and any successor trustee(s) who may be appointed in the either Bankruptcy Case

2.50 "Will Contest" shall mean and refer to the First Amended Answer and General Denial and Opposition to Issuance for Letters Testamentary, and claims therein, filed in Cause No. 13,507, *In the Estate of Shirley Jo Galmor, Deceased*, pending in the 31st District Court of Wheeler County, TX.

## III. Recitals

3.01 This Agreement is the result of a mediation that occurred in Amarillo, Texas on June 11, 2019. Although each Party wishes to include and could include voluminous recitals, in the interest of time in effectively memorializing the substantive agreements reached at mediation, and in light of the substantial procedural history, the Parties have limited the Recitals.

3.02 The Parties wish to resolve all past and present disputes regarding the Combined Interests as set forth herein.

## IV. Acknowledgments and Agreement

NOW THEREFORE, in consideration of the promises and agreements set forth in this Agreement, the Parties hereby agree to the following.

4.01. **Disposition of Subject Litigation**

a. ***Dismissal of Will Contest and the Trustee Removal Action, and Disposition of the Probate and the Estate of Shirley Jo Galmor***. The Parties shall enter this Agreement into the Will Contest, the Probate, and the Trustee Removal Action as a family settlement agreement and cause the dismissal with prejudice of the Will Contest and the Trustee Removal Action. The Parties agree that the Combined Interests will be distributed as if the Will Contest had never been filed, and pursuant to the terms herein rather than pursuant to any Will of Shirley Jo Galmor offered for probate.

b. ***Family Settlement Agreement Offered in Lieu of Probate of Will***. The parties agree that no administration of the Estate is necessary and that the Last Will and Testament of Shirley Jo Galmor dated June 14, 2014, shall <u>not</u> be admitted to probate.

    i. As an alternate plan of distribution, the parties agree that the rest, residue, and remainder of the Estate of Shirley Jo Galmor shall be distributed in accordance with the terms of the Last Will and Testament of Shirley Jo Galmor dated June 14, 2014 as though set forth herein, with the sole

exception that any Mineral Interests shall be distributed to the Trustee of the Galmor Trusts as though in accordance with a valid Will of Shirley Jo Galmor admitted to probate and no testamentary power of appointment will be given effect as to Mineral Interests.

ii. The Parties to this Agreement expressly agree to not probate any other Will or Codicil of Shirley Jo Galmor other than the Last Will and Testament of Shirley Jo Galmor dated July 20, 2005 and the First Codicil thereto dated May 19, 2009, as may be necessary to effectuate the distribution of Mineral Interests to the Trustee of the Galmor Trusts in accordance with this Agreement or the Last Will and Testament of Shirley Jo Galmor dated June 14, 2014 as may be necessary to effectuate the distribution of property other than the Mineral Interests in accordance with this Agreement.

c. ***Dismissal of Adversary Proceeding.*** Pritchard and/or the Pritchard Parties shall take the steps necessary and dismiss the Adversary Proceeding with prejudice and to amend the PPOCs consistent with this Agreement and the approval of the Parties. Pritchard will withdraw or dismiss any objections to discharge, objections to exemptions, or other filings in the Bankruptcy Cases, all with prejudice, except for the amendment of the PPOCs as set forth above.

d. ***Removal of notices of Lis Pendens and Nonsuit of Lis Pendens Suit.*** Pritchard and/or the Pritchard Parties as applicable shall promptly remove any previously filed notice of lis pendens relating to the Subject Litigation, including but not limited to those notices of lis pendens recorded in vol. 741 page 214-216 of the Wheeler County property records. The parties will cause the dismissal with prejudice of the Lis Pendens Suit.

4.02. **Disposition of Homeplace Debt.**

a. In full and final satisfaction of the Homeplace Debt, MSG assigns, without recourse, to the Galmor Trusts the following: (1) any interest he may have in said Galmor Trusts, save for any interest received as a result of the Family Settlement Agreement contained within this Agreement; (2) any interest he may have in the MSG Mineral Interests; (3) any interest he may have in the GFLP; and (4) any Post-Petition claim he may have for compensation or reimbursement from the Galmor Trusts or GFLP, except as otherwise provided for in this Agreement. In the event any spendthrift provision in the Galmor Trusts prevents the above assignment of MSG's interest in the Galmor Trusts from being effective, MSG agrees to assign and does assign any distribution he receives from the Galmor Trusts back to the Galmor Trusts.

b. To whatever extent is necessary, the Parties authorize MSG to execute and record any deed to record his ownership of the Homeplace or release of liens necessary to release any liens of the Galmor Trusts in, to, and/or against the Homeplace, and hereby ratify MSG's actions on behalf of the Galmor Trusts in that regard. The

Parties shall execute any power of attorney reasonably requested by MSG to effectuate such releases.

c. The Parties shall not seek to charge MSG or the Homeplace for any External Claims asserted or sustained against the Combined Interests. The Pritchard Parties do not dispute that the Homeplace is the property and homestead of MSG.

d. The Parties need not defend nor indemnify MSG and/or the Homeplace with respect to any External Claims.

4.03. **Disposition of Trust Assets.** Upon full execution of the transactions provided for herein, all assets presently belonging to the Galmor Trusts, including such assets acquired by the Galmor Trusts pursuant to this Agreement and less any assets disposed of by the Galmor Trusts pursuant to this Agreement, are to then be immediately distributed to the beneficiaries of the Trusts as follows.

| 25% | Pritchard |
|-----|-----------|
| 25% | Rudas |
| 25% | Traci |
| 25% | Used by the Pritchard Parties for purposes of the defending and/or funding of a settlement of any External Claims, including any External Claims asserted by Trustee Ries, and any remainder of such 25% shall be distributed equally to Pritchard, Rudas, and Traci, and, if necessary, prosecuting any Claims against any third parties who are not Parties to this Agreement, with remaining funds being distributed equally to Pritchard, Traci, and Rudas. |

The Parties agree that due to MSG's assignment of any present or future interest he may have in the Galmor Trusts back to the Galmor Trusts, and his agreement to assign any distribution he receives back to the Galmor Trusts, the eventual distribution of the remaining ownership interest in the Galmor Trusts will be equally between Pritchard, Traci, and Rudas. This interest is subject to an External Claim that such trust interest is property of the MSG Estate and is to be defended by Pritchard and/or any of the Pritchard Parties pursuant to the following section of this Agreement.

4.04. **Continued Administration of the Combined Interests.**

a. ***Resignation of MSG from capacities within Combined Interests.*** Once all transactions provided for in this Agreement have been fully closed and executed, MSG shall resign and withdraw from his capacity as trustee of the Galmor Trusts, manager, partner, officer and/or director of GFLP, manager and/or officer of

Galmor GP, and any and all other similar capacities with respect to the Combined Interests.

b. ***Management of Combined Interests.*** MSG, Pritchard, Traci, and Rudas agree to the terms of the governing documents of GFLP and Galmor GP and, but to the extent such governing documents conflict with this Agreement this Agreement shall control, and MSG, Pritchard, Traci, and Rudas amend such governing documents as necessary to comply with the terms of this Agreement. MSG, Pritchard, Traci, and Rudas agree that until the liquidation and winding up of the Combined Interests is accomplished, the Combined Interests will be managed in accordance with this Agreement. Pritchard is appointed as Manager of Galmor GP with the limited authority to take actions required under this Agreement. Pritchard is authorized and directed to wind up the GFLP and Galmor GP, and effectuate the distributions and transactions required under this Agreement.

c. ***Management and Defense of Claims.*** Pritchard is authorized and in her business judgment may investigate, defend, and/or compromise any Claims and/or External Claims asserted by any party against any of the Combined Interests and/or Combined Assets, and may investigate, prosecute , and/or compromise any Claims against any third parties who are not Parties to this Agreement. Any proposed settlement of such Claims and/or External Claims must be unanimously approved by Pritchard, Traci, and Rudas, and authorization for Pritchard to undertake any other actions not authorized herein must be unanimously granted by Pritchard, Traci, and Rudas.

d. ***Books and Records of the Combined Interests.*** All Documents, books, records, computers, and other information of or relating to the Combined Interests shall be made available and/or turned over to Pritchard, including particularly without limitations all such things that have been or that currently exist at the Quarry Property. MSG hereby authorizes any party in possession of any books and records of or relating to the Combined Interests to provide such books and records to Pritchard. MSG will execute any documents necessary for any third parties to release Documents and information to Pritchard.

e. ***Records Relating to Subject Mineral Interests.*** By this agreement, MSG authorizes and directs all operators and similar parties to provide to Pritchard and/or otherwise cause Pritchard to receive any and all books, records, and Documents relating to the Subject Mineral Interests. MSG will execute any documents necessary for any third parties to release Documents and information to Pritchard.

f. ***Notice of Claims Against the Combined Interest, etc.***

   i. Promptly upon learning of any lawsuit or other legal action against the Combined Interests, formally or informally, MSG shall notify the other parties herein of any lawsuit or other action or proceeding that is

commenced against or relating any of the Combined Interests, the Subject Real Property, and/or the Subject Mineral Interests.

ii. MSG warrants and represents that to date MSG has disclosed to Pritchard any pending lawsuits relating to Combined Interests, the Subject Real Property, and/or the Subject Mineral Interests known by MSG as of the Effective Date hereto.

g. ***Global Cooperation of MSG.***

i. MSG shall cooperate with Pritchard and/or the Pritchard Parties in the investigation and/or defense of the External Claims.

ii. MSG shall continue to perform any duties required of MSG under the Code with respect to the Bankruptcy Cases and/or the Bankruptcy Estates. These duties take precedence over MGS's cooperation with Pritchard in the event of a conflict.

4.05. **Disposition of GFLP and Galmor GP Assets.** It is agreed by the Parties that the GFLP and Galmor GP shall wind up and terminate. Net proceeds of such winding up will be distributed to the interest-holders of GFLP and Galmor GP as such interest-holders exist after distribution of the property of the Galmor Trusts in accordance with this Agreement. Such distribution will be in accordance with their interests and governing documents for GFLP and Galmor GP. Assets of GFLP and Galmor GP will be disposed of in the following manner:

a. ***Disposition of Subject Real Property.***

i. The Designated Broker shall market and seek to sell the Subject Real Property for a period of six (6) months from the Effective Date (the "Marketing Period"), except for properties among the Subject Real Property for which a buyer has been identified prior to the Effective Date.

ii. Any contract presented by the Designated Broker to the Parties may be rejected only upon the combined veto of both MSG and Pritchard expressed in writing to the Designated Broker within five (5) calendar days of the presentation of any contract to MSG and Pritchard (the "Veto Procedures").

iii. If either, but not both, of MSG or Pritchard object to the contract presented by the Designated Broker, the Designated Broker may only proceed with the contract if the Designated Broker, in the Designated Broker's sole discretion, determines that such sale is commercially reasonable.

iv. Upon conclusion of the Marketing Period, any Subject Property not otherwise sold under this Agreement shall be submitted to the Designated Auctioneer for Auction according to the discretion of the auctioneer to

maximize value of the property, provided however, the Veto Procedures shall apply to any actions of the Designated Auctioneer.

v. MSG and Pritchard are designated as the co-representatives of the GFLP to execute and conclude any contracts between the GFLP and the Designated Broker and/or the Designated Auctioneer as are necessary to fulfill this Agreement.

vi. **<u>Neither MSG nor Pritchard may separately contract or execute any instrument without the other.  THUS, EACH CONTRACT AND ANY OTHER INSTRUMENT RELATING TO THE SUBJECT REAL PROPERTY MUST INCLUDE THE SIGNATURES OF BOTH MSG AND PRITCHARD TO BE VALID AND BINDING.</u>**

vii. ***IN THE EVENT OF ANY DISAGREEMENT AS TO THE ACCEPTANCE OF ANY BONA FIDE AND GOOD FAITH OFFERS AS TO ANY OF THE SUBJECT PROPERTY, THEN THE DESIGNATED BROKER SHALL CAST A TIE-BREAKING VOTE AND DECIDE THE QUESTION AS BETWEEN MSG AND PRITCHARD.***

viii. Should either the Designated Broker and/or the Designated Auctioneer resign or otherwise cease performance of their roles, MSG and Leslie, through their attorneys, shall appoint a replacement.

ix. MSG shall undertake any and all reasonable actions in order to obtain a forbearance of any action by any secured lender, lien holder, and/or judgment holder from taking any further action against any of the GFLP and/or the Subject Real Property in order to permit the disposition of the Subject Real Property under this Agreement. The Parties acknowledge that MSG has no control over the parties who might bring such claims or actions and that he makes no guarantees regarding what forbearance might be obtained.

x. Before any sales proceeds from the sale of the Subject Real Property are distributed to the parties herein, Great Plains Bank shall receive all available proceeds of the sale of the Subject Real Property until principal, interest, and late fees are paid in full for Notes 8411, 6145, 9900, and 3447, as more fully described in the Notice of Foreclosure Sale letter, dated July 15, 2019, from Johnathan H. Hinders, counsel for Great Plains Bank.  Great Plains Bank's right to such proceeds from the sale of the Subject Real Property includes proceeds from the sale of all Subject Real Property and is not limited to Subject Real Property securing Notes 8411, 6145, 9900, and 3447.

     b. ***Disposition of Cash of the Combined Interests.*** Cash currently in the possession of the Combined Interests may be used for the following purposes (the "Cash Distributions").

          i. An additional $25,000 to pay and fully satisfy any and all remaining attorney's fees owed or potentially owed, after the application of any retainer, by any of the Combined Interests to Lovell, Lovell, Isern & Farabough, LLP ("LLIF"). MSG is authorized to make this distribution. Any and all additional and/or subsequent attorney's fees of LLIF and/or Patrick Swindell relating to MSG and/or the matters addressed herein shall be the sole and exclusive individual responsibility of MSG. Upon receipt of this additional $25,000, LLIF agrees to release any liens on property of the Combined Interests. LLIF agrees to cooperate in any sale of property and satisfaction of prior liens.

          ii. $9,000 to MSG relating to activities of GFLP from March 18, 2019 to June 1, 2019. MSG is authorized to make this distribution.

          iii. A fee of three dollars per head per month to MSG cost to care for cattle on the gain currently situated on GFLP property, for the period from June 1, 2019 until the cessation of such cattle operation or August 31, 2019, whichever occurs first. Pritchard will cause the GFLP to make this distribution to MSG within 15 days of his submission of an invoice for this labor.

          iv. **AFTER AND BEYOND THE EXPENDITURES AUTHORIZED ABOVE, ANY AND ALL OTHER PRESENT OR FUTURE CASH, PROCEEDS, AND/OR OTHER FUNDS OR ASSETS OF THE COMBINED INTERESTS MAY BE USED ONLY IN ACCORDANCE WITH THIS AGREEMENT.**

     c. **Disposition of GFLP Mineral Interests.** The GFLP Mineral Interests shall be distributed in-kind. Any distribution of such GFLP Mineral Interests distributed to Galmor GP shall also be distributed in kind.

     d. **Letter Jackets.** MSG warrants that he does not possess or know the location of the high school letter jackets of Bobby Don Galmor and Shirley Jo Galmor. MSG agrees that should these jackets be found, he will give them to the Pritchard Parties.

4.06. **Releases.** Each of the Releasing Parties hereby releases and forever discharges each of the Released Parties from any and all Claims, demands, debts, liabilities, accounts, costs, expenses, liens, causes of action, verdicts and judgments of any kind whatsoever, at common law or in equity, statutory, or otherwise, known or unknown, that each of the Releasing Parties have or might have, prior to the Effective Date against the Released Parties; *provided*, however,

a. the Releasing Parties do not hereby waive, relinquish, or release any rights or any of the obligations of the Released Parties arising out of this Agreement or any instruments executed in connection with this Agreement; and

b. **Notwithstanding the above releases or any other part of this Agreement, the Parties specifically agree that the facts on which the Subject Litigation was based remain in dispute, that this Agreement does not preclude any Party from asserting any legal or factual defense against any External Claim, and does not preclude any Party from asserting that any External Claim is, in whole or in part, invalid or subject to recoupment. Except as otherwise stated herein, this Agreement does not ratify any prior actions that may have been taken by any of the Parties on behalf of another Party. The above release is limited in scope to the extent necessary to make the provisions of this paragraph effective among the Parties only.**

4.07. **Notices.** Any notices that are required by this Agreement or that may otherwise be given regarding the subject matter of the Agreement shall be given to each of the parties at each party's last known addresses and to their respective attorney(s). Any notice to the attorneys may accomplished by email if also accompanied by a writing sent by fax and/or regular mail.

4.08. **Binding Effect**. This Agreement is fully integrated and contains the entire agreement of the parties with respect to the subject matter addressed herein and may not be contradicted except by a writing signed by the parties. The parties acknowledge that this Agreement is executed after negotiations between and among representatives of the parties hereto. The parties agree that: (a) each party and its attorneys have conducted their own investigation concerning the facts surrounding the matters covered by this Agreement and in voluntarily choosing to execute this Agreement, have relied upon their own analyses of such facts and not on any information furnished by any other party or their representatives; (b) there are no oral or other written agreements concerning the subject matter of this Agreement; and (c) any right to rely on any oral or written statement of any party or any failure of any party to state any fact is expressly waived and released, it being the intent of the parties hereto to waive any claims for fraudulent inducement. If an ambiguity or question of intent or interpretation arises, the Agreement will be construed as if drafted jointly by the parties and no presumption or burden of proof will arise favoring or disfavoring any party because of the authorship of any provision of the Agreement. This Agreement is binding upon and inures to the benefit of each of the parties and their respective partners, parents, subsidiaries, affiliates, agents, attorneys, representatives, servants, officers, directors, employees, heirs, and personal representatives. This Agreement and the releases hereby granted are personal to the parties hereto and are not intended to create any right in any person who is not a party to this Agreement, except as otherwise set forth herein. The parties are legally competent to execute this Agreement.

4.09. **Miscellaneous.** Each Party shall bear, pay, and discharge all of their own expenses (including, but not limited to, attorneys' fees, court costs and other expenses) incurred

in connection with, arising from and relating to the disputes, litigation referenced herein, the additional transactions referenced in this Agreement, and the negotiation, execution, and performance of this Agreement. Each of the parties shall execute and deliver (and shall cooperate in the execution and delivery of) all the documents reasonably necessary to evidence or perfect the terms of this Agreement.  This Agreement shall be construed under and governed by the laws of the State of Texas. Venue for any dispute arising out of this Agreement shall be the Courts of Wheeler County, Texas.  This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which shall constitute one Agreement. The parties further agree that copies of this Agreement and any of the attached Exhibits, including any facsimile copies or .pdf file copies with signatures, shall be binding and treated as original agreements.  The paragraph headings contained in this Agreement are for convenience only.  Whenever appropriate, the masculine gender may include the feminine or neuter, the singular, the plural, and vice versa.  Should any portion(s) of this Agreement be declared to be illegal or unenforceable by a court of competent jurisdiction, then the remaining portions of this Agreement not affected by such judicial declaration shall remain in full force and effect and thereby bind the parties.  Any deadline falling on a Saturday, Sunday, or state or federal legal holiday shall be extended to the immediate next day which is not a Saturday, Sunday, or legal holiday.

4.10.  **Attorneys' Fees in Future Disputes.**  Notwithstanding anything herein to the contrary, the parties acknowledge and agree that should any party to this Agreement be required to institute legal proceedings to enforce or interpret any of the provisions of this Agreement, the prevailing party in such legal proceeding shall recover from the non-prevailing party reasonable attorneys' fees, including fees on appeal, as well as court costs and expenses.

4.11.  **Further Assurances.**  Following the execution of this Agreement, the Parties covenant and agree to execute such other and further documents as may be necessary to evidence, fulfill, implement, and/or execute the obligations of this Agreement.

4.12.  The terms of this Agreement are contractual and are not mere recitals.

*{continued on following sheet}*

MICHAEL STEPHEN GALMOR

_____

Dated: **8/5/19**_____, 2019

LESLIE GALMOR PRITCHARD

TRACI MARIE GALMOR WILSON

_____

Dated: _____, 2019

_____

Dated: _____, 2019

RANDY MARK "RUDAS" GALMOR

_____

Dated: _____, 2019

*{continued on following sheet}*

GALMOR FAMILY LIMITED PARTNERSHIP, a
Texas limited partnership

BY:  GALMOR MANAGEMENT, LLC, a Texas
limited liability company, its General Partner

By: _____

Title: _Manager/Managing Member___

Dated: _8/5/19_____, 2019

GALMOR MANAGEMENT, LLC, a Texas limited
liability company

By: _____

Title: _Manager/Managing Member___

Dated: _8/5/19_____, 2019

THE BOBBY DON AND SHIRLEY JO
GALMOR LIVING TRUST

By: _____

Title: _Trustee___

Dated: _8/5/19_____, 2019

THE GALMOR FAMILY TRUST

By: _____

Title: _Trustee___

Dated: _8/5/19_____, 2019

THE GALMOR CONTRIBUTION TRUST

By: _____

Title: _Trustee___

Dated: _8/5/19_____, 2019

*{continued on following sheet}*

**MICHAEL STEPHEN GALMOR**

_____

Dated: _____, 2019

**LESLIE GALMOR PRITCHARD**

**TRACI MARIE GALMOR WILSON**

Dated: ___8/3/19___, 2019

Dated: _____, 2019

**RANDY MARK "RUDAS" GALMOR**

_____

Dated: _____, 2019

*{continued on following sheet}*

**DRAFT SUBJECT TO REVIEW, REVISION, WITHDRAWAL, AND CLIENT APPROVAL**

**MICHAEL STEPHEN GALMOR**

By: _____

Title: _____

Dated: _____, 2018

**LESLIE GALMOR PRITCHARD**

By: _____

Title: _____

Dated: _____, 2018

**RANDY MARK "RUDAS" GALMOR**

By: _____

Title: _____

Dated: _____, 2018

**TRACI MARIE GALMOR WILSON** *Coleman*

By: _Traci Galmor Coleman_

Title: _____

Dated: _8-7-19_____, 2018

*{continued on following sheet}*

**Michael Stephen Galmor**

_____

Dated: _____, 2019

**Leslie Galmor Pritchard**

**Traci Marie Galmor Wilson**

_____

Dated: _____, 2019

_____

Dated: _____, 2019

**Randy Mark "Rudas" Galmor**

_____

Dated: _____, 2019

_{continued on following sheet}_

**EXHIBIT 001 — SCHEDULE OF SUBJECT REAL PROPERTY**

Section 4, Block A-8 (560 acres, "The Flats)
Section 5, Block A-8 (640 acres, "The Flats")
North of Twitty: Section 9, Block A-8 (299.45 acres, "North of Twitty") in and in
Section 10, Block A-8 (283.88 acres, "North of Twitty")
Section 11, Block A-8 (318 acres, "The Pitcock")
Section 59, Block 17 (640 acres, "The Bradley")
Section 67, Block A-5 (160 acres, "The Turnbow")
Section 76, Block A-5 (100 acres, "Mobeetie Property"

# EXHIBIT "B"

# AMENDMENT AND RATIFICATION
## COMPROMISE AND SETTLEMENT AGREEMENT

The undersigned agree to amend and supplement the Compromise and Settlement Agreement ("Settlement Agreement") originally signed over August 3-7, 2019, attached hereto, as follows:

1. The Settlement Agreement will be binding on and fully effective between and among the undersigned parties who signed the Settlement Agreement between August 3-7, 2019, who agree to this Amendment and Ratification;

2. The undersigned parties agree that the Settlement Agreement is amended to delete any and all references to Randy Mark "Rudas" Galmor in the Settlement Agreement including but not limited to in the following Sections of the Settlement Agreement: 1.03; 2.41; 2.42; 4.04b, 4.04c; however, Rudas shall retain his right to an equal distribution as a remaining beneficiary of the Galmor Trusts under Section 4.03;

3. The Effective Date of the Settlement Agreement and this Amendment and Ratification shall be September 13, 2019;

4. The releases in the Settlement Agreement are effective between the parties as of the Effective Date in this affirmation. The releases in the Settlement Agreement shall apply to and fully release the parties' for acts, omissions, claims and causes of action arising after the original signing of the Settlement Agreement and up to the Effective Date;

5. All the transactions that are to be accomplished by the Settlement Agreement itself are effective as of the Effective Date in this affirmation;

6. Effective as of the signing of this Affirmation by Leslie Pritchard and Traci Coleman, Michael Stephen Galmor resigns as manager of Galmor Management, LLC and from his other capacities as stated in the Settlement Agreement;

7. The undersigned consent to Kent Ries managing the liquidation of GFLP property in the manner described in the Settlement Agreement under the supervision of the Bankruptcy Court and consent to Kent Ries executing any documents necessary to close such sales of GFLP property

_____          Date: 10-30-19

Michael Stephen Galmor,
In all his capacities under the Settlement Agreement


_____          Date: _____

Leslie Pritchard


_____          Date: 10-8-19

Traci Coleman

# AMENDMENT AND RATIFICATION OF
## COMPROMISE AND SETTLEMENT AGREEMENT

The undersigned agree to amend and supplement the Compromise and Settlement Agreement ("Settlement Agreement") originally signed over August 3-7, 2019, attached hereto, as follows:

1  The Settlement Agreement will be binding on and fully effective between and among the undersigned parties who signed the Settlement Agreement between August 3-7, 2019, who agree to this Amendment and Ratification;

2  The undersigned parties agree that the Settlement Agreement is amended to delete any and all references to Randy Mark "Rudas" Galmor in the Settlement Agreement including but not limited to in the following Sections of the Settlement Agreement: 1.03; 2.41; 2.42; 4.04b, 4.04c; however, Rudas shall retain his right to an equal distribution as a remaining beneficiary of the Galmor Trusts under Section 4.03;

3  The Effective Date of the Settlement Agreement and this Amendment and Ratification shall be September 13, 2019;

4  The releases in the Settlement Agreement are effective between the parties as of the Effective Date in this affirmation. The releases in the Settlement Agreement shall apply to and fully release the parties' for acts, omissions, claims and causes of action arising after the original signing of the Settlement Agreement and up to the Effective Date;

5  All the transactions that are to be accomplished by the Settlement Agreement itself are effective as of the Effective Date in this affirmation;

6  Effective as of the signing of this Affirmation by Leslie Pritchard and Traci Coleman, Michael Stephen Galmor resigns as manager of Galmor Management, LLC and from his other capacities as stated in the Settlement Agreement;

7  The undersigned consent to Kent Ries managing the liquidation of GFLP property in the manner described in the Settlement Agreement under the supervision of the Bankruptcy Court and consent to Kent Ries executing any documents necessary to close such sales of GFLP property

_____                    Date: 10-30-19
Michael Stephen Galmor,
In all his capacities under the Settlement Agreement

_____                    Date: 10|8|19
Leslie Pritchard

_____                    Date: _____
Traci Coleman

## **AMENDMENT AND RATIFICATION OF**
## **COMPROMISE AND SETTLEMENT AGREEMENT**

The undersigned agree to amend and supplement the Compromise and Settlement Agreement ("Settlement Agreement") originally signed over August 3-7, 2019, attached hereto, as follows:

1    The Settlement Agreement will be binding on and fully effective between and among the undersigned parties who signed the Settlement Agreement between August 3-7, 2019, who agree to this Amendment and Ratification;

2    The undersigned parties agree that the Settlement Agreement is amended to delete any and all references to Randy Mark "Rudas" Galmor in the Settlement Agreement including but not limited to in the following Sections of the Settlement Agreement: 1.03; 2.41; 2.42; 4.04b, 4.04c; however, Rudas shall retain his right to an equal distribution as a remaining beneficiary of the Galmor Trusts under Section 4.03;

3    The Effective Date of the Settlement Agreement and this Amendment and Ratification shall be September 13, 2019;

4    The releases in the Settlement Agreement are effective between the parties as of the Effective Date in this affirmation. The releases in the Settlement Agreement shall apply to and fully release the parties' for acts, omissions, claims and causes of action arising after the original signing of the Settlement Agreement and up to the Effective Date;

5    All the transactions that are to be accomplished by the Settlement Agreement itself are effective as of the Effective Date in this affirmation;

6    Effective as of the signing of this Affirmation by Leslie Pritchard and Traci Coleman, Michael Stephen Galmor resigns as manager of Galmor Management, LLC and from his other capacities as stated in the Settlement Agreement;

7    The undersigned consent to Kent Ries managing the liquidation of GFLP property in the manner described in the Settlement Agreement under the supervision of the Bankruptcy Court and consent to Kent Ries executing any documents necessary to close such sales of GFLP property

_____                              Date: _____
Michael Stephen Galmor,
In all his capacities under the Settlement Agreement

_____                              Date: 10/8/19
Leslie Pritchard

_____                              Date: _____
Traci Coleman

## AMENDMENT AND RATIFICATION OF
## COMPROMISE AND SETTLEMENT AGREEMENT

The undersigned agree to amend and supplement the Compromise and Settlement Agreement ("Settlement Agreement") originally signed over August 3-7, 2019, attached hereto, as follows:

1   The Settlement Agreement will be binding on and fully effective between and among the undersigned parties who signed the Settlement Agreement between August 3-7, 2019, who agree to this Amendment and Ratification;

2   The undersigned parties agree that the Settlement Agreement is amended to delete any and all references to Randy Mark "Rudas" Galmor in the Settlement Agreement including but not limited to in the following Sections of the Settlement Agreement: 1.03; 2.41; 2.42; 4.04b, 4.04c; however, Rudas shall retain his right to an equal distribution as a remaining beneficiary of the Galmor Trusts under Section 4.03;

3   The Effective Date of the Settlement Agreement and this Amendment and Ratification shall be September 13, 2019;

4   The releases in the Settlement Agreement are effective between the parties as of the Effective Date in this affirmation. The releases in the Settlement Agreement shall apply to and fully release the parties' for acts, omissions, claims and causes of action arising after the original signing of the Settlement Agreement and up to the Effective Date;

5   All the transactions that are to be accomplished by the Settlement Agreement itself are effective as of the Effective Date in this affirmation;

6   Effective as of the signing of this Affirmation by Leslie Pritchard and Traci Coleman, Michael Stephen Galmor resigns as manager of Galmor Management, LLC and from his other capacities as stated in the Settlement Agreement;

7   The undersigned consent to Kent Ries managing the liquidation of GFLP property in the manner described in the Settlement Agreement under the supervision of the Bankruptcy Court and consent to Kent Ries executing any documents necessary to close such sales of GFLP property

_____          Date: _____
Michael Stephen Galmor,
In all his capacities under the Settlement Agreement

_____          Date: _____
Leslie Pritchard

_____          Date: 10-8-19
Traci Coleman