Davor Rukavina, Esq.
Texas Bar No. 24030781
Thomas Berghman, Esq.
Texas Bar No. 24082683
MUNSCH HARDT KOPF & HARR P.C.
500 N. Akard St., Ste. 3800
Dallas, Texas 75201
Telephone: 214-855-7500
Facsimile: 214-855-7584

ATTORNEYS FOR LESLIE PRITCHARD

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| § | | |
| MICHAEL STEPHEN GALMOR, § | | CASE NO. 18-20209-RLJ-7 |
| § | | |
| Debtor. § | | |
| § | | |

| | | |
|---|---|---|
| In re: § | | |
| § | | |
| THE LIQUIDATION OF THE GALMOR § | | ADVERSARY NO. 19-2006 |
| FAMILY LIMITED PARTNERSHIP and § | | |
| GALMOR MANAGEMENT, LLC, § | | |

**MOTION OF LESLIE PRITCHARD TO APPROVE MULTI-PARTY SETTLEMENT**

TO THE HONORABLE ROBERT L. JONES, U.S. BANKRUPTCY JUDGE:

COMES NOW Leslie Pritchard ("Pritchard"), in her capacity as the co-liquidator of the Galmor Family Limited Partnership and Galmor Management, LLC, and files this her *Motion to Approve Multi-Party Settlement* (the "Motion"), respectfully stating as follows:

## I.    PROCEDURAL BACKGROUND

1. This Adversary Proceeding concerns the liquidation, under Texas law and not under the Bankruptcy Code, of the Galmor Family Limited Partnership ("FLP") and its general partner, Galmor Management, LLC ("GM"). This Adversary Proceeding was severed from the Debt Adversary (defined below) for the purpose of said liquidation.

2. By its *Agreed Judgment: (i) Ordering Supervised Liquidation of Texas Entities; and (ii) Appointing Managers of the Same; and (iii) Severing Remaining Claims* [docket no. 26] entered on April 24, 2020 (the "Agreed Judgment"), the Court: (i) appointed Kent Ries (the "Trustee") to liquidate the real property held by the FLP; and (ii) appointed Pritchard as the liquidator and manager of the FLP for all other matters, including to liquidate any personal property of the FLP and GM and to defend the FLP and GM against claims. Pritchard files this Motion in her capacity as liquidator and manager of the FLP and GM, but also supports this Motion in her individual capacity as a beneficiary of the FLP and Trusts (defined below).

3. The Court has jurisdiction over this Adversary Proceeding and this Motion under 28 U.S.C. § 1334 because the same are "related to" the Bankruptcy Cases (defined below).

4. Although the Court's jurisdiction is not core under 28 U.S.C. § 157(b)(2), Pritchard and the Trustee have consented to this Court's entry of final judgment and final orders under 28 U.S.C. § 157(c)(2).

## II.     FACTUAL BACKGROUND

5. The FLP is owned 1% by GM, 49% by the Galmor Family Trust and 49% by the Galmor Contribution Trust (such two trusts, the "Trusts"). The Trusts were originally set up by Bobby Don Galmor and Shirley Joe Galmor, who died in 2013 and 2017 respectively, as estate planning vehicles, and the FLP and GM were created to further that purpose.

6. The beneficiaries of the Trusts are Michael Stephen Galmor ("MSG"), Pritchard, Randy Mark "Rudas" Galmor ("RMG"), and Traci Coleman ("Coleman"). Shawn Zaointz ("Zaointz") is a disputed beneficiary of the Trusts. Each of the foregoing persons are the children of Bobby Don Galmor and Shirley Joe Galmor.

7. On June 19, 2018 (the "Petition Date"), MSG filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, thereby initiating Case No. 18-20209 (the "MSG Case")

and creating his bankruptcy estate (the "MSG Estate"), which MSG Case the Court ordered converted to Chapter 7 on January 8, 2019. The Trustee is the Chapter 7 trustee of the MSG Estate.

8. Also on the Petition Date, Galmor's/G&G Steam Services, Inc. ("G&G"), an entity owned by MSG, filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, thereby initiating Case No. 18-20210 (the "G&G Case," with the MSG Case, the "Bankruptcy Cases") and creating its bankruptcy estate (the "G&G Estate"), which G&G Case the Court ordered converted to Chapter 7 on January 8, 2019. The Trustee is the Chapter 7 trustee of the G&G Estate.

9. Both MSG and G&G alleged that they held claims for breach of contract, debt, *quantum meruit*, and similar claims against the FLP, which claims became property of the MSG Estate and the G&G Estate, respectively. Namely, MSG alleged that the FLP owed him, and therefore the MSG Estate, $1,310,807.00 (the "MSG Alleged Debt"). G&G alleged that the FLP owed it, and therefore the G&G Estate, $1,096,051.32 (the "G&G Alleged Debt"). The basis of the MSG Alleged Debt and the G&G Alleged Debt is that MSG and G&G had been providing goods and services to the FLP, funding the FLP by paying its expenses, and deferring wage claims, for years prior to the Petition Date.

10. To collect on the MSG Alleged Debt and the G&G Alleged Debt, on August 30, 2019, the Trustee filed his complaint, subsequently amended, against the FLP and GM, thereby initiating Adversary Proceeding No. 20-2003 before this Court (the "Debt Adversary").[1] Pritchard, for the FLP and GM, answered the Trustee's complaint and denied any liability of the FLP and GM to the Trustee or otherwise.

11. Pritchard asserted counterclaims against the Trustee in the Debt Adversary. Specifically, the MSG Estate held two interests against the FLP: (i) the MSG Alleged Debt; and

---

[1] The Trustee's original complaint initiated Adversary Proceeding No. 19-02006, the same as this Adversary Proceeding. However, the Trustee's monetary claims were subsequently severed and the Debt Adversary, No. 20-2003, was thus commenced.

MOTION OF LESLIE PRITCHARD TO APPROVE MULTI-PARTY SETTLEMENT—Page 3

(ii) MSG's rights to a distribution from the Trusts, and therefore indirectly from the FLP. Pritchard claimed that MSG's right, and therefore the MSG Estate's right, to any such distribution should be forfeited due to MSG's alleged breaches of fiduciary duty to the FLP, mismanagement of the FLP, and self-dealing from the FLP. The Trustee answered said counterclaims and denied any liability.

12. Extensive discovery ensued in the Debt Adversary, with the parties taking eight (8) depositions, exchanging tens of thousands of pages of document discovery, and with Pritchard retaining an expert. Additionally, the Trustee filed a motion for summary judgment, which was withdrawn in part and denied by the Court as to the balance. Pritchard filed a cross-motion for partial summary judgment, which she subsequently withdrew. During these proceedings, the Trustee withdrew his claims for the MSG Alleged Debt, without prejudice to the G&G Alleged Debt, which claims remained for trial, as did Pritchard's counterclaims.

13. The Court set the trial of the Debt Adversary for March 21 and 22, 2022, with a potential continued date of April 4, 2022. After extensive negotiations lasting weeks, and additionally involving RMG's counsel, the Trustee, Pritchard, and RMG reached the Proposed Settlement (defined below) on literally the eve of trial, that being the Friday before trial was set to commence. Thereafter, the Trust Trustee, Coleman, and Zaointz joined the Proposed Settlement. Pritchard, the Trustee, and RMG read the Proposed Settlement into the record on March 21, 2022, subject to definitive documentation.

14. Through prior proceedings and orders entered in this Adversary Proceeding, the Trustee sold the FLP's real property and, after making such payments and distributions as approved by this Court, the Trustee is holding net proceeds from such sales of approximately $1,601,619.18, exclusive of ongoing interest (the "Real Estate Proceeds").

15. Separately, the FLP owns various personal property. Pritchard has taken possession of some and is in the process of liquidating other personal property. Additionally, the FLP has claims to ownership of a sizable number of vehicles, trucks, tractors, trailers, and farm and ranch machinery and equipment (the "Farm and Ranch Personalty"). The Farm and Ranch Personalty is listed on depreciation schedules to tax returns filed by the FLP. However, after investigating whether and where the Farm and Ranch Personalty may be located, or whether it was sold, MSG and others that Pritchard interviewed have informed her that most of the Farm and Ranch Personalty was previously sold or no longer exists. Pritchard does not know whether this is accurate but, despite extensive efforts, she has not been able to locate most of the Farm and Ranch Personalty. She therefore does not know what the value of the same is, but she is concerned that expending additional resources on continued searches will not be fruitful and will lead to diminishing results.

### III.   THE PROPOSED SETTLEMENT

16. By this Motion, Pritchard requests that the Court approve, and authorize her to enter into, into a multi-party settlement (the "Proposed Settlement"), pursuant to that certain *Mutual Settlement and Release Agreement* (the "Agreement") attached hereto as Exhibit "A." The parties to the Settlement (collectively, the "Parties") are Pritchard, the Trustee, the Trusts Trustee, RMG, Coleman, and Zaointz. The Proposed Settlement is designed to address all disputes and issues existing between the Parties concerning the FLP and GM, and also to facilitate a distribution from the FLP and the Trusts to the beneficiaries, while still providing resources to finalize the liquidation of the FLP and address potential unknown claims and contingencies. To that end, the Proposed Settlement and the Agreement are summarized as follows, although the terms of the Agreement control in all events:

- From the Real Estate Proceeds, (i) $750,758.99 is paid to the G&G Estate (the "G&G Payment") on account of its debt claims against the FLP and not on account of any indirect distribution right that the MSG Estate may have through the Trusts; and (ii) $850,860.19 is paid to the FLP (the "FLP Payment").

- The G&G Payment is distributed as follows: (i) $545,758.99 to the G&G Estate, free and clear of all claims, liens, interests, and encumbrances assertable by any other Party (excepting the Trustee's right to compensation therefrom), for the Trustee to subsequently administer as is otherwise appropriate; and (ii) $205,000.00 to RMG free and clear of all claims, liens, interests, and encumbrances assertable by any other Party.

- The FLP Payment is distributed as follows: (i) $150,000.00 to Coleman; (ii) $150,000.00 to Zaointz; and (iii) $150,000.00 to Pritchard, which payments shall be deemed to have been made through the Trusts as distributions to beneficiaries. Additionally, Pritchard shall receive from the FLP Payment $400,860.19 (the "Supplemental Pritchard Payment").

- Pritchard shall use the Supplemental Pritchard Payment to pay for attorney's fees and expenses incurred in the Debt Adversary and this Adversary Proceeding, to continue liquidating the FLP, and to address potential third party claims. Any portion of the Supplemental Pritchard Payment shall be retained by Pritchard to compensate her for her prior attorney's fees and expenses incurred in litigating against SMG and to compensate her for her time.

- The Farm and Ranch Personalty shall be transferred, without warranty and on an "as is, where is" basis, to the Trustee for the G&G Estate, but any airplane that may be owned by the MSG Estate, the FLP, GM, or the Trusts shall be transferred (if not already owned) to the FLP for subsequent liquidation. The Trustee and RMG shall divide the Farm and Ranch Personalty as they mutually agree and the FLP shall have no obligation to assist them with locating any of the Farm and Ranch Personalty.

- The Parties mutually release each other with respect to the Debt Adversary, this Adversary Proceeding, and distributions from the FLP or the Trusts, and the Trustee and RMG waive and release any claims they may have to any present or future distribution therefrom, while Coleman, Pritchard, and Zaointz retain such rights. Additionally, RMG and the Trustee assign any interests in the Trusts to Coleman, Pritchard, and Zaointz, such that any distributions from the FLP or the Trusts shall flow only to Coleman, Pritchard, and Zaointz.

- The Trustee is released from his duties as co-liquidator of the FLP and is exculpated, and is indemnified by the FLP and from the Pritchard Supplemental Payment.

- The Proposed Settlement and the Agreement are subject to the Court's approval both in this Adversary Proceeding and in the G&G Case.

### IV.    DISCUSSION

17.    As this Adversary Proceeding is effectuating a liquidation of the FLP under Texas law, and not the Bankruptcy Code, Bankruptcy Rule 9019 and the Bankruptcy Code have no application. Texas law does not appear to define the standards governing the approval of a liquidator's proposed settlement. However, as the liquidation proceedings are fundamentally equitable, Pritchard submits that general principles of equity should control and that her reasoned business judgment should be granted the same significant weight that a bankruptcy trustee's reasoned business judgment would be given under Bankruptcy Rule 9019.

18.    Here, the Proposed Settlement and the Agreement are supported by the following facts and considerations:

- The Proposed Settlement is the result of extensive, contentious arm's length negotiations lasting weeks, primarily through legal counsel involved. There are no undisclosed agreements.

- All of the known creditors and direct (the Trusts) and indirect equity holders and beneficiaries of the FLP agree on the Proposed Settlement and Agreement. Pritchard is not aware of any other potential or alleged creditor of the FLP. Thus, everyone known to have an interest in the liquidation of the FLP agrees to the Proposed Settlement and is a party to the Agreement.[2]

- At its core, the G&G Alleged Debt claims depend on the credibility of MSG. Pritchard believes that he has no credibility and she has extensive evidence that MSG fabricated the G&G Alleged Debt, which she is prepared to present at trial. However, the Court may find MSG credible and there is some support in the FLP's financial records for a portion of the G&G Alleged Debt. These are questions of fact and Pritchard is not aware of any legal principle on which the Court could deny the whole of the G&G Alleged Debt and, as with any question of fact, Pritchard cannot know how the Court will rule. If the Court finds MSG credible at trial, then the Court would likely allow the whole of the G&G Alleged Debt *and* the MSG Estate would be entitled to a 25% distribution of the FLP's assets through the Trusts.

- Compromising the Trustee's claims of $1,096,051.32, and tens if not hundreds of thousands of dollars more in attorney's fees, for a payment of $750,758.99, is reasonable and prudent. While Pritchard does not believe that the Trustee would

---

[2] Pritchard is not seeking any finding to the effect that there are no other creditors of the FLP, and this Motion, and any order of the Court granting this Motion, are wholly without prejudice to any such potential claims, and to all defenses to any such potential claims.

recover any of the G&G Alleged Debt at trial, the MSG Estate does have a claim for a distribution through the Trusts which, if there are no debt claims against the FLP, would result in a payment of approximately $400,000 from the Real Estate Proceeds, together with potential future distributions. The likelihood that the Court would forfeit this distribution at trial is uncertain and, while Pritchard believes the facts support such a forfeiture, the law may not be on her side. At best, she believes it to be a 50-50 proposition. RMG would be entitled to the same distribution as the MSG Estate on account of his beneficiary interests, and Pritchard is not aware of any basis on which that interest can be disputed or not paid. Thus, the true amount of the compromise from the FLP's perspective is that debt *and* equity claims of at least $1.9 million, and probably in excess of $2.2 million, are being compromised for $750,758.99.

- The Debt Adversary is dismissed with prejudice, with each party bearing its own fees and expenses therein (subject to compensation and reimbursement from their respective estates). While Pritchard believes that she would prevail against the G&G Alleged Debt Claims and may prevail on her counterclaims, there is no certainty of that. And, even if she prevailed, years of costly and uncertain appeals are likely, through two layers of appeal. All the while, none of the direct or indirect claimants to the Real Estate Proceeds would have the benefit or use of those funds. And, because Pritchard is unlikely to recover her attorney's fees from the G&G Estate even if she prevails, her and the FLP's continuing attorney's fees would erode any future benefit to the Trusts and the beneficiaries.

- The Proposed Settlement and Agreement also bring to finality the competing interests and distributions from the FLP. The MSG Estate and RMG are not paid out as beneficiaries and will not share in any distributions, leaving only the three sisters: Coleman, Pritchard, and Zaointz, as beneficiaries. RMG is paid out of the G&G Estate and has an immediate benefit, while the three sisters likewise have an immediate benefit, something that likely would not happen for years through a trial of the Debt Adversary and inevitable appeals, and also collateral disputes regarding distribution rights. This also permits a settlement of Zaointz's disputed claim to being a beneficiary of the Trusts, and the remaining sisters support the FLP's and Trusts' recognition and allowance of her interests. While RMG receives a distribution greater than the three sisters, the sisters have consented to such higher distribution in exchange for RMG assigning any future distributions to them.

- With respect to Pritchard receiving the $400,860.19 Supplemental Pritchard Payment, which is in addition to her equal distribution with her sisters, this is fair, equitable, and appropriate. The remaining beneficiaries—who are the only real parties-in-interest—agree with and support this additional payment. This additional payment compensates Pritchard for the hundreds of thousands of dollars in FLP and related attorney's fees and expenses she has personally advanced, and potentially for her time as well. And, it provides a reserve such that, should other debt claims be made against the FLP and potentially the Trusts. Pritchard, for the FLP, will have available funds to pay the same (neither Pritchard nor the Trusts

        Trustee are aware of any such claims, except potentially tax claims against the Trusts, which their preliminary analysis suggests will be minor, if at all)..

- Thus, even though funds are being distributed to the indirect beneficiaries in the form of Coleman, Pritchard, and Zaointz (the Trustee is being paid as a creditor from the FLP, and his payment of a portion of the G&G Payment to RMG is therefore likewise not an equity distribution) before the FLP is finally liquidated, sufficient funds will remain with Pritchard to handle any reasonable contingency. Nor does the Proposed Settlement prejudice any potential creditor claim against the FLP, except any such claim of the Trustee and RMG.

- With respect to the release and exculpation of the Trustee regarding his duties to the FLP as co-liquidator of its real property, Pritchard is not aware of any claims or causes of action that the FLP may have against the Trustee with respect to the same.[3]

- With respect to the transfer of the Farm and Ranch Personalty to the G&G Estate, Pritchard believes that that property is not worth the costs and burdens to locate and liquidate, if it even exists and can be located. Indeed, Pritchard believes, and has evidence, that MSG has intentionally secreted that property on vast tracts of ranch land owned by his friends. Pritchard has already incurred tens of thousands of dollars in fees and expenses searching for the same, despite this Court's turnover order against MSG and others. Unravelling a potential fraud or concealment by close family members or friends, involving thousands of acres of inaccessible ranch property, is an extremely expensive proposition, if it can even be done, and if the Farm and Ranch Personalty even still exists. It is Pritchard's business judgment that, if the Farm and Ranch Personalty can be used as partial consideration to the Trustee and RMG in return for the benefits of the Proposed Settlement, then that is the highest and best use of that property.

- The FLP retains all rights with respect to any other property that it may own, disclosed or otherwise, except with respect to the Farm and Ranch Personalty. And, the FLP obtains an airplane, which it believes it or the Trusts own (but which has not been located). The value of the airplane is not known but, if it can be located and if it is in decent condition (the airplane is from the early 1960s), it may be worth $20,000.

19.    In the end, the Proposed Settlement kills multiple birds with one stone: it resolves the costly, contentious, and uncertain Debt Adversary; it resolves issues related to the identity of beneficiaries of the FLP and Trusts, and it provides for immediate payments of debt and distributions

---

[3] The Trustee and Pritchard are aware of potential additional real property owned by the FLP which the Trustee has not liquidated. This real property appears to be of questionable value and real property taxes may exceed any economic benefit to the FLP. However, said property will remain with the FLP and Pritchard will decide what the FLP should or should not do with respect to the same.

of equity, while reserving funds for future liquidation and against unknown contingencies. All of this materially advances the liquidation of the FLP and GM towards finality. And, the Proposed Settlement is supported by literally everyone with a known interest against the FLP. As such, the Court should approve the Proposed Settlement and authorize Pritchard to execute the Agreement and perform all of its obligations.

## V.    PRAYER

WHEREFORE, PREMISES CONSIDERED, Pritchard respectfully requests that the Court enter an order: (i) granting this Motion; (ii) approving the Agreement; (iii) authorizing Pritchard to execute the Agreement and carry out each of its provisions; and (iv) granting Pritchard such other and further relief to which she may be justly entitled.

RESPECTFULLY SUBMITTED this 24th day of May, 2022.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/  Davor Rukavina
    Davor Rukavina, Esq.
    Texas Bar No. 24030781
    Thomas Berghman, Esq.
    Texas Bar No. 24082683
    3800 Ross Tower
    500 North Akard St.
    Dallas, Texas  75201
    Telephone: (214) 855-7500
    Facsimile: (214) 978-4375

**ATTORNEYS FOR LESLIE PRITCHARD**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this the 24th day of May, 2022, true and correct copies of this Motion, the exhibits thereto, and the proposed order thereon, were electronically served by the Court's ECF system on parties entitled to notice thereof and that, additionally, on the same date he caused true and correct copies of this Motion, the exhibits thereto, and the proposed order thereon, to be served by U.S. first class mail, postage prepaid, on the parties listed on the attached Service List.

By: /s/ Davor Rukavina
Davor Rukavina, Esq.